# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Cruise Connections Charter Management 1, LP, Cruise Connections Charter Management GP, Inc. <br>     1418 South Stratford Road <br>     Winston-Salem, NC  27103 <br><br>     Plaintiffs, <br><br> vs. <br><br> Attorney General of Canada, representing the Royal Canadian Mounted Police; <br>     Ministry of the Attorney General <br>     McMurtry-Scott Building <br>     720 Bay Street, 11th Floor <br>     Toronto, Ontario <br>     Canada <br>     M5G 2K1 <br><br> Royal Canadian Mounted Police, an agency of the Ministry of Public Safety Canada; and <br>     11411 No. 5 Road <br>     Richmond, B.C. <br>     V7A 4E8 <br><br> Her Majesty the Queen in Right of Canada, the Government of Canada, Royal Canadian Mounted Police, representing the Vancouver 2010 Integrated Security Unit, <br>     440 Coventry Road <br>     Ottawa, Ontario <br>     Canada <br>     K1A 0R2 <br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | <br><br><br><br><br><br><br><br><br> Civil Action No. _____ |

**COMPLAINT**

Come now plaintiffs, Cruise Connections Charter Management GP, Inc., and Cruise Connections Charter Management 1, LP, (collectively hereinafter, "Cruise Connections") and allege as follows:

## NATURE OF ACTION

This is an action by a North Carolina limited partnership against the Royal Canadian Mounted Police (RCMP) seeking damages for the RCMP's breach of contract and its violation of the North Carolina Unfair and Deceptive Trade Practices Act. This action arises out of an approximately $55 (Canadian) million contract between Cruise Connections and the RCMP, pursuant to which Cruise Connections was to provide housing on multiple cruise ships in Vancouver Harbor for security forces that will protect the public during 2010 Winter Olympic Games.

On November 17, 2008, just three and a half months after awarding the contract to Cruise Connections, the RCMP, without legitimate justification and in knowing and intentional breach of its contractual obligations, purported to unilaterally terminate the contract. Until that time, Cruise Connections had honored all of its obligations under the contract. The RCMP intentionally breached the contract so that it could resubmit the contract for public bidding. Due to the world-wide financial crisis arising in the late summer and early fall of 2008, and the resultant global economic slowdown, the RCMP believed that it could obtain a better price for the cruise ships by repudiating the contractual obligations it owed to Cruise Connections, and then seeking a new bid to provide the ships. Indeed, the RCMP announced almost immediately after its intentional breach that it would seek new bids. The RCMP's conduct constitutes a bad faith breach of contract and an unfair trade practice.

## VENUE AND JURISDICTION

1.      Cruise Connections Charter Management 1, LP is a North Carolina limited partnership with its principal place of business located in Winston-Salem, North Carolina.

2.      Cruise Connections Charter Management GP, Inc. is a North Carolina corporation and is the general partner of Cruise Connection Charter Management 1, LP.

3.      The Royal Canadian Mounted Police is the Canadian national police service and is an agency of the Ministry of Public Safety Canada which is a department of the federal government of Canada.  Her Majesty the Queen in Right of Canada, the Government of Canada, Royal Canadian Mounted Police, representing the Vancouver 2010 Integrated Security Unit is or represents the Federal Government of Canada.  The Attorney General of Canada representing the Royal Canadian Mounted Police, represents the Crown for lawsuits against the Royal Canadian Mounted Police pursuant to Canada law, RS 1985 c.C-50 s. 23.  Defendants will be collectively referred to as "RCMP".

4.      This Court has subject matter jurisdiction for this action pursuant to 28 USC § 1330(a) because the RCMP is an agency of Canada, a foreign state.

5.      Personal jurisdiction is proper pursuant to 28 USC § 1605(a)(2) because this action is based on acts outside the United States in connection with commercial activity of the RCMP elsewhere and those acts caused a direct effect in the United States.

6.      Venue is proper in the United States District Court for the District of Columbia pursuant to 28 USC § 1391(f)(4).

**FACTS**

7.      The 2010 Winter Olympic and Paralympic Games will be held in Vancouver and Whistler, British Columbia, Canada from February 12 through February 28, 2010.

8. The RCMP is responsible for planning and managing security operations and services for the Vancouver 2010 Winter Olympic Games and Paralympic Games (the Games).

9. In order to have sufficient accommodations to house security forces, the RCMP determined it would need ships berthed in Vancouver Harbor during the Games. Accordingly, the RCMP published a Request for Proposal on April 7, 2008 entitled, "Services for Charterer to Provide Vessel Accommodations for RCMP 2010 Integrated Security Unit, Solicitation # 2008 - 00147- ISU." [Request for Proposal attached at Tab 2]

10. Cruise Connections is a North Carolina limited partnership that specializes in providing chartered cruise ships for large events. Cruise Connections submitted its response (Response) to the Request for Proposal on May 23, 2008. [Response, Tab 1(d)]

11. Cruise Connections was advised that it won the bid on May 30, 2008 and contract negotiations took place in June and July, 2008.

12. On July 31, 2008, Cruise Connections was awarded a $54,165,672 (Canadian)[1] contract (the Contract) to provide vessel accommodations for the RCMP and entered into a Contract with Her Majesty the Queen in Right of Canada, the Government of Canada, Royal Canadian Mounted Police, representing the Vancouver 2010 Integrated Security Unit. The Contract was signed by "Authorized Representatives of the Government of Canada, RCMP" and representatives of Cruise Connections. The "Authorized Representatives of the Government of Canada, RCMP" who signed the Contract were Kelly Meikle, Manager-Contracting, and Michael W. Day, Regional Director-Contracting.

13. The Contract documents consist of the following documents in order of priority. The Contract documents are attached hereto and incorporated herein by reference.

---

[1] Unless otherwise stated, all references to dollars refer to Canadian dollars.

      (a)    Articles of Agreement;
      (b)    9676 (2007/11/30) General Conditions- Services;
      (c)    Annex, Statement of Work;
      (d)    The Contractor's bid dated 2008-05-20; and
      (e)    Project Services Agreements

[Tab 1 (a) – (e)]

14. The Contract price was increased to $55,348,136 on August 25, 2008 at the request of the RCMP in order to increase the number of total berths available during the Games. [Tab 3]

15. The Contract clearly provided that the RCMP was responsible for paying numerous taxes including, but not limited to, corporate income tax and personal income tax for employees of the Cruise Lines (hereinafter, "the taxes").

16. In order to fulfill its obligations under the Contract, Cruise Connections immediately moved to finalize its negotiations with multiple major cruise lines (collectively herein after, "the Cruise Lines"), to charter ships to place in Vancouver Harbor during the Games. Although the Contract clearly provided that the RCMP was responsible for paying the taxes, the Cruise Lines nonetheless requested assurance from the RCMP that it would honor its contractual obligation to pay the taxes. The Cruise Lines told Cruise Connections that the projected tax implication was approximately $7 (US) million.

17. Pursuant to the Cruise Lines' request, Cruise Connections asked the RCMP to acknowledge its contractual obligation to pay the taxes. In response, the RCMP repeatedly acknowledge that obligation, both orally and in writing.

18. Indeed, on September 10, 2008, Kelly Meikle, the RCMP's Manager-Contracting who had signed the Contract on behalf the RCMP, informed Cruise Connections that the Cruise Lines' question regarding the taxes:

5

> should not hold up any agreement with the Cruise ship lines as the contract does address Taxation issues.  In your proposal there is a clause on Page 54 (Part 6.3) with respect to taxes.  **This has been accepted and has formed part of the contract documents** (see priority of documents). If you could point this out to the Cruise Ship lines, it does offer, I believe the level of comfort they need to sign the final CPA.
>
> [Email, September 10, Tab 4 (emphasis added)]

19. Further acknowledging the RCMP's obligation to pay the taxes Michael Day, the RCMP's Regional Director-Contracting who had also signed the Contract on behalf of the RCMP, stated on September 12, 2008 that the assurance the Cruise Lines wanted regarding the taxes was already in the Contract.  Day wrote:

> The assurance you are seeking is already stipulated in the contract.  What Kelly will provide is a written confirmation of that provision separate from the formal agreements.  This does not constitute a change to our agreement nor is it an amendment to the contract.
>
> I wish to be very clear that we are not changing or adding to the existing terms.
>
> [Email, September 12, Tab 5]

20. Moreover, on the same day and within the same email string, Kelly Meikle wrote:

> Further to Mike's email below, the priority of documents includes **the Federal Government shall be responsible for any additional taxes which may be assessed to the contractor with respect to the cruise ships lines.**
>
> **Please consider this email acknowledgment and acceptance of this clause.**
>
> [Email string, September 12, Tab 6 (emphasis added)]

21. After the RCMP acknowledged its contractual obligation to pay the taxes, Cruise Connections executed charter party agreements ("CPAs") with the Cruise Lines, securing the vessels for use by the RCMP.  Cruise Connections then proceeded to finalize its financing deal

6

with the Royal Bank of Canada. Before it could do so, however, the RCMP, without explanation, removed Meikle and Day as Cruise Connections' RCMP contact and replaced them with Normande Morin.

22. Morin immediately claimed that the RCMP did not have an obligation to pay the taxes, despite the clear contractual provisions to the contrary and despite the RCMP's express and repeated prior acknowledgement of such responsibility. Through Morin, the RCMP also began to claim that Cruise Connections was required to put up a 90% letter of credit, even though the RCMP had expressly removed that provision from the Contract.

23. Because the RCMP's disavowed its obligation to pay the taxes and falsely claimed a need for a 90% letter of credit, the Royal Bank of Canada withheld the financing it earlier agreed to provide to secure the Cruise Lines' ships.

24. Despite Cruise Connections' diligent efforts to convince the RCMP to honor its contractual obligations with respect to the taxes and the letter of credit, the RCMP refused to work with Cruise Connections in good faith and continued to unjustifiably claim that it had no responsibility for the taxes. Because of the RCMP's conduct, the bank refused to provide financing. The RCMP's conduct was the sole reason the bank withheld financing.

25. At this point, the RCMP, knowing its statements were false and were unsupported by the express terms of the Contract and the dealings between the parties, claimed that Cruise Connections had breached its obligations under the Contact by failing to timely secure financing. In reliance on that pretense, the RCMP unilaterally declared the Contract "terminated."

26. Almost immediately, the RCMP then announced its intent to solicit new bids for the provision of ships to house the security forces during the Games.

27. RCMP engaged in the conduct described above knowing its actions constituted breach of contract and knowing that its claimed justification for terminating the contract was pretextual. The RCMP engaged in its intentional, bad faith breach of contract in order to seek lower bids from Cruise Connection's competitors, believing it could obtain more favorable pricing given the current world-wide economic downturn and other financial pressures.

## FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

28. Plaintiffs allege and incorporate by reference paragraphs 1 through 27 as if fully set forth herein.

29. Cruise Connections and the RCMP entered into a valid and binding contract on July 31, 2008 as described above. The terms of the Contract are set forth in Tab 1 (a) – (e).

30. The terms of the Contract clearly state that the RCMP is responsible for the taxes.

31. Despite the clear and explicit terms of the Contract, the RCMP repudiated its responsibility for the taxes.

32. Relying on the pretext that Cruise Connections had failed to secure financing (when in true fact, it was the RCMP's bad faith breach that caused the bank to withdraw financing) the RCMP breached the contract by unilaterally terminating it on November 17, 2008.

33. As a result of the RCMP's breach, Cruise Connections has been damaged. Cruise Connections' damages include, but are not limited to:

    a. Lost profits;

    b. Damage to reputation;

    c. Costs expended in fulfilling its obligations under the Contract; and

    d. Other costs to be shown at trial.

34.     In addition, the Contract contained a liquidated damages clause in which the parties specifically agreed to a 100% penalty for any reduction of days of service or cancellation by either party. The Contract states:

> Both parties acknowledge and agree that this contract is under 100% penalty of any reduction of days of service or cancellation by either party.
>
> The RCMP acknowledges and understands that Cruise Connections Charter Management 1, LP has an obligation to fulfill all terms and conditions in providing cruise ships for the use by the RCMP and CF on the dates specified under this contract. Further it is understood that in order to meet this obligation, Cruise Connections Charter Management must enter into non-cancelable charter agreement with the cruise lines and are under the same penalty clause (100%) penalty for any reduction in service.

[Tab 1(a) ¶ 20]

35.     The liquidated damages provision was also included in the Contract in Project Services Agreement # 1,  [Tab 1(e)]

36.     As such, the RCMP is responsible for 100% of the terms of the value of the Contract, $55,348,136.00.

## SECOND CLAIM
### (North Carolina Unfair and Deceptive Trade Practices)

37.     Plaintiffs allege and incorporate by reference paragraphs 1 through 36 as if fully set forth herein.

38.     The RCMP entered into a contract with Plaintiff, a North Carolina limited partnership. As such, the RCMP is in business and affects commerce in North Carolina.

39.     In addition to the allegations set forth above, certain officials of the RCMP decided in September that the Contract with Cruise Connections exceeded the amount of money

the RCMP was willing to pay for the service and that a better deal could be obtained by breaching the contract and soliciting new bids.

40. Instead of acting in good faith, the RCMP disavowed its earlier acknowledged responsibility to pay the taxes and falsely claimed that Cruise Connections failed to secure financing, when in true fact, it was solely the RCMP's conduct that caused the bank to withhold financing. The RCMP engaged in this conduct in a calculated and inequitable assertion of its power over Cruise Connections in order to create a pretextual reason to terminate the contact so that the RCMP could seek a new, more favorable contract from Cruise Connection's competitors.

41. The RCMP's actions were intentional and conducted in bad faith. They constitute unfair and deceptive trade practices under Chapter 75 of the North Carolina General Statutes.

42. As a result of the above unlawful, unfair, oppressive and deceptive trade practices by the RCMP, Cruise Connections has suffered direct and consequential damages as described above.

43. Pursuant to N.C. Gen. Stat. §§ 75-16 and 75-16.1, Cruise Connections is entitled to treble damages and attorney's fees as a direct result of RCMP's unfair and deceptive trade practices.

Further, plaintiffs respectfully pray the Court:

1. That Cruise Connections recover compensatory and damages for the RCMP's breach of contract;

2. That Cruise Connections recover damages pursuant to N.C. Gen. Stat. § 75-1, et. seq. and that those damages be trebled;

3. The Cruise Connections be awarded its attorney fees pursuant to N.C. Gen. Stat. § 75-16.1; and

4.  That the Court grant such other and further relief as the Court deems just and proper.

Dated: November 26, 2008

**WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**

*/s/ Cathy A. Hinger/*

Cathy A. Hinger (D.C. Bar No. 473697)
1401 Eye Street, N.W.
Seventh Floor
Washington, DC 20005
Telephone: (202) 857-4489
Facsimile: (202) 467-6910
chinger@wcsr.com

and

Jack M. Strauch (State Bar # 22341)
David J. Mazza (State Bar # 26082)
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3656
E-mail: jstrauch@wcsr.com
         dmazza@wcsr.com

*Attorneys for Plaintiffs*