UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


CRUISE CONNECTIONS CHARTER    :
MANAGEMENT 1, LP, et al,      :
                             :         Docket No. CA 08-2054
            Plaintiff,        :
                             :         Washington, D.C.
                             :         Friday, October 26, 2012
                             :             10:30 a.m.
ATTORNEY GENERAL OF CANADA,   :
et al.                        :
            Defendant.        :
---------------------------x



TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE ROSEMARY M. COLLYER
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiff:        JACK M. STRAUCH , Esquire
                          Strauch, Fitzgerald & Green, P.C.
                          118 South Cherry Street
                          Winston-Salem, NC 27101


For the Defendant:        SCOTT H. CHRISTENSEN, Esquire
                          CORINNE O. LANE, Esquire
                          Hughes Hubbard
                          1775 I Street
                          Washington, DC  20006-2401


Court Reporter:           CRYSTAL M. PILGRIM, RPR
                          Official Court Reporter
                          United States District Court
                          District of Columbia
                          333 Constitution Avenue, NW
                          Washington, DC  20001


Proceedings recorded by machine shorthand, transcript produced
by computer-aided transcription.

```
 1                    P-R-O-C-E-E-D-I-N-G-S

 2          THE DEPUTY CLERK:  Civil action 08-2054, Cruise

 3   Connections Charter Management versus Attorney General of

 4   Canada, et al.

 5          For the plaintiffs Jack Strauch.

 6          For the defense Scott Christensen and Corrine Lane.

 7          THE COURT:  Good morning everyone.

 8      Is no one on the phone, it's just us chickens?

 9          THE DEPUTY CLERK:  That's a different case, Your

10   Honor.

11          THE COURT:  That's a different case.

12      This was suppose to be a post discovery status

13   conference to see whether you were moving ahead to motions or

14   we should set a trial or what we should do.  But I got a hint

15   yesterday that hum, maybe all is not calm and clear in the land

16   of the free and the home of the brave or Canada, whichever you

17   want to say first.

18      So somebody tell me what the dispute is and what I can

19   do to help you out.

20      Could you just come to the mic?  You maybe have to stand

21   next to each other.  It just works out better that way.

22          MR. STRAUCH:  Your Honor, Jack Strauch for the

23   plaintiff, Cruise Connections Charter Management.

24      With respect to the Court's question about where we are

25   and whether everything is calm and clear in the home of the
```

1 brave.

2     There is a discovery dispute that I think will take a

3 very short time to resolve.

4         THE COURT:  Okay.

5         MR. STRAUCH:  I think it is important for the Court

6 to understand where we are in this case.  What I consider to be

7 some very revealing evidence that came out in discovery because

8 I believe that it will effect how the Court wants to proceed

9 with respect to motions in a trial.

10        THE COURT:  Okay.

11        MR. STRAUCH:  As the Court I hope recalls, this whole

12 contract between my clients and the RCMP which involved putting

13 cruise ships in for the olympics, that whole contract broke

14 down over one central issue.

15        THE COURT:  Taxes.

16        MR. STRAUCH:  Taxes.  And it was whether or not the

17 Canadian Government was obligated to pay Canadian Government

18 taxes imposed upon the cruise lines or whether my client was.

19     The contract was negotiated and drafted by the RCMP, by

20 two people.  One is named Michael Day, the other is named Kelly

21 Maguel. We deposed both of them.

22     Michael Day in his testimony explained unequivocally

23 that when he signed and negotiated the contract he did so fully

24 understanding and believing that that contract obligated the

25 RCMP to pay any and all Canadian Government taxes imposed as a

1    result of the charter including taxes imposed against the

2    cruise lines.  Mr. Day could not have been more clear in that.

3         If I could read from his deposition.  I asked him when

4    you signed Exhibit 1, the articles of agreement, it was your

5    intent to bind the RCMP to paying any and all Canadian

6    Government taxes imposed as a result of the cruise ship

7    charters including taxes levied against the cruise lines as a

8    result of the ships being docked in Canadian port for an

9    extended period, correct?

10        His answer was a very simple and sweet yes.

11        I will tell you that I have taken enough depositions to

12   know that you don't get one good zinger and let it sit and you

13   ask the witness to confirm it and he did confirm it multiple

14   times in the deposition eventually drawing some asked and

15   answered objections.

16        I then took the next day the deposition of Kelly Maguel.

17   Kelly Maguel worked for Michael Day.  Michael Day was the head

18   of all contracting for the RCMP and it's work on the olympics.

19        Kelly Maguel was directly under Michael Day.  When I

20   deposed Ms. Maguel what she explained to me is is that when it

21   came to negotiating this tax language, she threw up her hands

22   and left it to Mike Day to have those discussions with my

23   client.  But that from her discussions with Mike Day it was her

24   understanding and belief that a certain contract provision

25   bound the Canadian Government to pay these disputed taxes.

1          That contract provision is something that we in the

2     course of this case have called 9676 and formally called 9676.

3          I asked, I asked Ms. Maguel:

4          Question, because you absolutely believed that 9676

5     paragraph 35 3, would have obligated RCMP to pay five and a

6     half million dollars in taxes estimated if those taxes were

7     assessed against the cruise lines as a result of their ships

8     being docked in Vancouver Harbor for an extended period, right?

9          Her answer was yes.

10          There is absolutely no question but the sole two people

11     who negotiated this contract on behalf of the Canadian

12     Government intended to bind the Crown to pay the disputed

13     taxes.

14          There is also no question as it's been revealed in the

15     last three weeks that the Canadian Government knew that fact

16     when it took the position in the contract dispute negotiations

17     that there never had been such an agreement.

18          A little bit of history if I might.  In September of

19     '08, my folks approached the cruise line -- strike that -- the

20     RCMP to say we're having difficulty getting our cruise ship

21     contracts finalized because of this uncertainty about the

22     taxes.  Please provide us written assurance that the contract

23     obligates you to pay the taxes.

24          Kelly Maguel and Michael Day both sent e-mails to my

25     folks agreeing to do just that.  When my folks provided them

1   the document to sign that would provide that written assurance,

2   Mike Day was unfortunately on vacation in the Amazon.  Kelly

3   Maguel who worked for Mike Day decided she needed to run it up

4   the flag pole because she despite her written e-mail assurance

5   wasn't willing to sign this without running it up the flag

6   pole.

7        When it got run up the flag pole with Mike Day being

8   gone, it landed on the desk of someone named Nomanmoren.

9   Nomanmoren four days before she ever laid eyes on the contract,

10  if I could repeat that, four days before she ever laid eyes on

11  the contract wrote an e-mail stating that she was going to

12  rebut my client's contention that the RCMP was in fact

13  obligated to pay the disputed taxes.  She did just that.

14       She took over the contract, kicked Kelly Maguel and

15  Michael Day off the contract.  There is a more artful term than

16  kicked them off the contract but that's what occurred.  She

17  took over and became the new contracting authority and within

18  days wrote a letter to my folks firmly stating the position

19  that the RCMP was not obligated to pay these taxes and would

20  not pay these taxes.

21       Michael Day comes back from vacation.  When I deposed

22  him I asked him whether or not when he got back from vacation

23  he learned that Ms. Nomanmoren was taking the position that he

24  did not agree to pay these taxes, he had learned that.

25       I asked him whether or not he then went to

1   Ms. Nomanmoren and said Nomanmoren, what are you doing?  I

2   agreed to pay these taxes?

3        Surprisingly, Mr. Day told me he could not recall

4   whether that had occurred on a 60 million dollar contract that

5   was the largest contract that he had ever worked on, he could

6   not recall whether or not he had went and talked to

7   Ms. Nomanmoren.

8        I deposed Ms. Nomanmoren.  She denied talking to Michael

9   Day in any way, shape or form about that provision in the

10  contract, the tax provision.

11       Being incredulous that Ms. Nomanmoren would take over

12  and not talk to the person who negotiated the tax language

13  about what he meant, I continued to take depositions of people

14  who had notes that made me believe they knew something.

15       I deposed a man named Kevin Debruyckere approximately

16  three weeks ago in Victoria, British Colombia.  In that

17  deposition, it was revealed that Mr. Debruyckere worked down

18  the hall from Mr. Michael Day.  They bumped into each other at

19  the preverbal water cooler.

20       They also had formal discussions about this contract

21  because it was Debruyckere's job to make sure that those ships

22  got in port so his soldiers weren't sleeping in tents.  So as

23  he testified, he was very concerned about that contract and

24  when he learned that there was a dispute between my client and

25  the RCMP, it made him nervous about the possibility of losing

1   his ships.

2        He had a discussion with Mike Day which he documented in

3   an e-mail only to this extent.  I had a long chat with Mike Day

4   about the contract issues in dispute.  It's not an exact quote,

5   that's the import of it.

6        When I asked Mr. Debruyckere about that, what he

7   confirmed for me is that despite Ms. Nomanmoren who is the one

8   who took the position that the Canadians never owed these

9   taxes, despite her testimony to me that she never spoke with

10  Mike Day about the tax issue, Debruyckere confirmed that there

11  was a fairly open feud, my word, not his, between Nomanmoren

12  and Day about whether or not the contract obligated the RCMP to

13  pay the taxes.

14       And Mr. Debruyckere confirmed that he has notes that I

15  have not yet seen that potentially discuss this.  He reviewed

16  those notes shortly before the deposition, a matter of a few

17  days if I recall correctly, but could not remember anything

18  about his notes.

19       I've asked Mr. Christensen to produce them.  He has sent

20  me e-mail communications saying that they're being copied by

21  the Canadian Government to be sent to him.

22       I will at the conclusion of what I say ask the Court

23  despite Mr. Christensen's cooperation on that to enter an order

24  that those notes be produced in my hopes that the Canadian

25  Government will take its obligation more seriously, certainly

1  take it's obligation more seriously than it did with respect to

2  this contract.

3       Two weeks ago my law partner went and deposed Alaine

4  Segin, pronouncing that I'm sure horribly, but went and deposed

5  Alaine Segin in Ottawa.  He is the CFO of the RCMP.  We deposed

6  him because Mr. Day, the one who had agreed to pay the taxes

7  and admitted as much, Mr. Day had an e-mail in his file talking

8  in this critical September time frame about how he had met with

9  the CFO of the RCMP in order to talk, to ensure that there was

10  money to pay these taxes because he knew that the Canadian

11  Government owed them.

12       My law partner took Mr. Segin's deposition and although

13  I do not have the transcript I spoke with him, my law partner,

14  and he confirmed for me that Mr. Segin also knew that

15  Nomanmoren was having this feud with Mike Day about whether or

16  not these taxes were owed.

17       All of this is to say Your Honor, that it is beyond any

18  dispute that all of the parties to this contract intended that

19  the RCMP would be obligated to pay these taxes.  The two folks

20  wearing Mountain uniforms not literally but figuratively,

21  admitted in their depositions and my folks of course have taken

22  that position from the outset.

23       It is also equally clear that the, forgive the inartful

24  phrase, higher ups within the RCMP who made the decision to act

25  as though, to take the position that the RCMP was not obligated

1   to pay those taxes knew very well that Mr. Day and

2   Ms. Nomanmoren had expressly agreed to pay those taxes.

3        I'm eager to see what is in Mr. Debruyckere's notes.

4   We're as you might imagine currently looking at what other

5   additional, other additional redundant, what additional

6   remedies, if any, we might recover for what I consider to be

7   bad faith tortious breach of contract.

8        I throw that out there in this status

9   conference/scheduling hearing so the Court will know that we

10  are looking at that.

11       I will also inform the Court that as you might have

12  surmised, we will be filing a motion with respect to liability

13  and I expect that this Court will ultimately be at a spot where

14  we will be looking at a trial on damages only.

15       And finally, if I can conclude by saying that my client

16  very much wants a trial date.  We filed this litigation in

17  November of 2008.  My folks have been very patient with the

18  appeal and the motions and the privy counsel, but I came here

19  tasked by them with getting a trial date, please, Jack.

20       THE COURT:  So if we were ready to go to trial or

21  when we're ready to go to trial, how much time do you think a

22  trial of this matter would take?

23       MR. STRAUCH:  I frankly believe that when it comes

24  time to put witnesses on the stand that we ought to be only

25  putting on damages witnesses and that I intend to have an

1  expert on a certain category of damages, and we only have in

2  order to figure out the loss profits to look at my client's

3  anticipated costs and the contract price.

4       I think it should be a very short matter of a few days

5  trial on the damages issue only.  If there are liability issues

6  to be tried it obviously could be longer.

7       I would expect that the Court, I would expect if I were

8  the RCMP I would not bring Mike Day here to testify live before

9  you.  So I would expect that you would be reading his

10  deposition ahead of time the same as Ms. Maguel, but I may be

11  wrong, they may bring them.

12       One other thing I wanted to raise, I just saw my note

13  that I highlighted in yellow to myself and missed to this

14  point, it's actually two other things.  I may want to still

15  take a trial deposition, a de bene deposition, if you will,

16  that should last a very short period of time on a damages

17  witness.

18       Additionally, I understand that we are dealing with the

19  law of a foreign jurisdiction in this case.  I understand that

20  Rule 44.1 allows the Court to essentially consider any

21  evidence, any source of information about what that law is.  We

22  have November 1 as our date for swapping expert CVs and then

23  two weeks later we'll hand over reports.

24       We have waiting in the wings a law professor from

25  British Columbia.  It seems to me that you and I and

1  Mr. Christensen are equally well suited to read the common law.

2  That's exactly what it is there.

3       So I don't think that we would need it but I don't want

4  to be in a position where the Court says hey Mr. Strauch, I

5  really need a Canadian law expert here.  So I've got him

6  waiting in the wings.  Seems to me that we can wait until the

7  issues are presented.  If the Court then says I really need

8  some help from a Canadian law expert to figure out what this

9  law is, then we start stroking checks to this guy rather than

10 prematurely if the Court isn't going to need it.

11      Thank you.

12      THE COURT:  Okay.  I think your task is laid out for

13 you, Mr. Christensen.

14      If we started at the bottom we would talk about, and I

15 know you have a lot to say.  So let me start with the purely

16 administrative question of trial.  How long do you think a

17 trial would take in this matter?

18      MR. CHRISTENSEN:  The party, the parties had

19 previously estimated, Your Honor, seven to nine days for a

20 trial and I at this juncture don't see a reason to differ from

21 that earlier estimate.

22      THE COURT:  Okay.  So you're not persuaded by

23 Ms. Michael and Mr. Day's testimony that oh, dear, we're in

24 trouble?

25      MR. CHRISTENSEN:  No, Your Honor.

1          Jumping to the question of liability.  I had not

2    prepared an opening statement or closing argument for the trial

3    today.

4          THE COURT:  I didn't expect you to.

5          MR. CHRISTENSEN:  As you might imagine, the

6    defendants do not believe the record is as clear on the tax

7    issue as Mr. Strauch claims this morning, but the facts are not

8    as undisputed as asserted, that the issues are far more

9    complicated.

10         It was also clear in testimony that the written

11   agreement itself separate and apart from whatever individuals

12   who worked on it might have said either at the time or several

13   years later, the written agreement itself states clearly that

14   it is an all inclusive rate and that the charter, the

15   plaintiffs in this case were responsible for all costs

16   associated with chartering the cruise lines which would have

17   included the taxes at issue.

18         The record is also clear that the RCMP refused to revise

19   the contract and told plaintiffs unequivocally that they were

20   responsible for the taxes.

21         All of that being said, I do think that this case

22   presents an opportunity for motions for summary judgment.  And

23   that that would be the most economical way to try to see if we

24   could resolve the issues more efficiently and less expensively

25   for all of the parties.

1          I also think that there is the Government of Canada

2   wants to reserve the opportunity to move for summary judgment

3   because the evidence in discovery shows that plaintiffs were

4   never prepared to comply with the contract.  They had the 25

5   words or less summary, Your Honor, is that plaintiffs

6   negotiated one cruise line, one cruise ship with a cruise line

7   that did not comply, objectively did not comply with the

8   contract between the World Canadian Mounted Police and

9   plaintiffs.

10          Plaintiffs then represented to the RCMP that it was

11   negotiating for a different ship that would have complied.

12   Plaintiffs put themselves in a position of never being able to

13   comply with the contract with the RCMP.

14          THE COURT:  This is kind of a chicken and egg thing.

15   I'm not sure that I am at all, I understand your argument.  Or

16   I understand the fact or the point of the argument.

17          There's nothing I can do with that right now because

18   obviously, that depends on a very detailed sequence of events

19   in order to make a determination as to whether that defense

20   would, assuming for other purposes liability, whether that

21   defense would be sufficient to overcome what might otherwise be

22   liability.

23          MR. CHRISTENSEN:  It would be a separate motion, Your

24   Honor.

25          THE COURT:  Right.

1          MR. CHRISTENSEN:  Because under British Columbia law

2    this constitutes repudiation of the contract.

3          THE COURT:  Right.  Are we done with discovery other

4    than the question of Mr. Debruyckere?  Is that the right name?

5          MR. CHRISTENSEN:  Yes, Debruyckere.

6    D-E-B-R-U-Y-C-K-E-R-E.

7          THE COURT:  Well, I surely would never have spelled

8    that properly.

9          MR. CHRISTENSEN:  It took a while to practice, Your

10   Honor.

11         THE COURT:  Yes.  All right.

12        Other than the production of his notes which you say is

13   in process, is there any other discovery and then the

14   plaintiffs are saying that they might amend the complaint to

15   allege some sort of bad faith or tortious breach of contract.

16         MR. CHRISTENSEN:  Yes, this is the first I've heard

17   of that.

18         THE COURT:  Right.

19        Sounds like it would sound in the U.S. law something

20   like failure of good faith and fair dealing.

21         MR. CHRISTENSEN:  And Your Honor has already

22   dismissed as a matter of law tort claims in the complaint.

23         THE COURT:  Because its, because of Canada's

24   sovereignty or what?

25         MR. CHRISTENSEN:  No, because the allegations did not

 1  meet the standards of North Carolina law pled.

 2          THE COURT:  Obviously, we might have other

 3  allegations yet to come.

 4      All right, but you still think even though you started

 5  off by saying no, I don't agree that the record is as presented

 6  by Mr. -- by Ms. Maguel and Mr. Day's testimony, but I still

 7  think it's clear and we can do summary judgment; is that right?

 8          MR. CHRISTENSEN:  I think that my experience in this

 9  case and many other cases is that motions for summary judgment

10  provide an opportunity for the parties to very clearly lay out

11  for Your Honor what the issues are and why they can be resolved

12  by the Court as a matter of law.  That can be much more

13  efficient and drastically less expensive than a full blown

14  trial.

15          THE COURT:  Well, yes, if there aren't actually any

16  disputes of fact.

17      I mean, there was a description from Mr. Strauch -- no,

18  I said that wrong.  Strauch, I did say it right?

19          MR. STRAUCH:  It rhymes with cow, you pronounced it

20  perfectly, right.

21          THE COURT:  Strauch, sorry.  He made it sound as if

22  there would be a conflict in the evidence between persons

23  speaking for the RCMP.

24      Do you not think there would be?  That is what Mr. Day

25  might say and what Ms. Nomanmoren might say.

1          MR. CHRISTENSEN:  Yes.  Mr. Day's, it's complicated

2    but Mr. Day's testimony about his recent testimony about what

3    he intended four years ago certainly is in conflict with what

4    Ms. Nomanmoren testified about what the RCMP intended and what

5    the contract means.

6          The record evidence from the time of the contract

7    negotiations is less than clear, but there are documents that

8    the parties have read in various directions in support of their

9    understanding.

10          THE COURT:  Opposite theories of --

11          MR. CHRISTENSEN:  -- about what the contract means.

12          THE COURT:  The question is and we can try summary

13    judgment and all of that, but if it's not going to work because

14    when push comes to shove there are conflicts in the testimony

15    and it actually since it's a somewhat important issue, the fact

16    that the conflicts are among persons on one side isn't really

17    material to whether or not there are conflicts.  It's not as if

18    we need a conflict between the, between Canada and the

19    plaintiffs in order to have a conflict is what I'm trying to

20    say.

21          MR. CHRISTENSEN:  At the very least motions for

22    summary judgment even if ultimately denied provide Your Honor

23    with an opportunity to narrow issues for trial.

24          THE COURT:  Yes, but it would postpone trial.

25          I mean, this is the problem and I'm sensitive to the

```
 1   fact that the case is old.  I thought I did the right things

 2   before and it turns out I didn't.  Oh, that's fine.  I'm here

 3   for trial, and if that's what we're going to do, I know how to

 4   do that too.

 5        But I do have some sympathy for the plaintiffs' argument

 6   that we think we're due a significant sum of money and it's

 7   been a long time coming, that's what it will amount to.

 8        It doesn't sound as if anybody is in a position to

 9   settle this right now.

10        MR. CHRISTENSEN:  Not unless the positions have

11   changed --

12        THE COURT:  Right.

13        MR. CHRISTENSEN:  -- in ways that I'm not familiar

14   with since we last tried.

15        THE COURT:  Right, right, that was my assumption too.

16   I mean, everybody has tried that in such good faith as they

17   can, but it doesn't seem to be able to work.

18        So the question is, let me press you on it.  What would

19   be resolved if we did summary judgment and it was unsuccessful,

20   what would we be able to resolve in that process?

21        MR. CHRISTENSEN:  Your Honor might be able to

22   identify the particular points of fact that are in dispute in a

23   trial focused on those particular facts so that Your Honor can

24   come to the conclusions about --

25        THE COURT:  Is this a court trial or a jury trial?
```

1          MR. CHRISTENSEN:  It's a bench trial because it's

2     against a foreign sovereign.

3          THE COURT:  Thank you.  That makes it more fun.  And

4     faster.

5          MR. CHRISTENSEN:  Because the defendants believe the

6     plaintiffs aren't entitled to the recovery that they

7     hypothesize, the Government is equally eager to avoid the costs

8     of an unnecessary trial.

9          THE COURT:  Well, I agree with that although the

10    costs of summary judgment if in fact we already know that there

11    are fact disputes that are material to an ultimate resolution,

12    we could do briefing on things that were not more in the

13    motion, more in the context of motions in limine, if you will,

14    than summary judgment.

15         Because it doesn't sound like I can grant summary

16    judgment because I don't know -- I mean, I don't think I can

17    decide on the written record whether Ms. Nomanmoren who wasn't

18    in British Columbia, has read the contract right or Mr. Day who

19    was negotiating it didn't write what he thought he did.  I

20    mean, you understand and I understand that all of those things

21    are possible.  But with conflicting testimony between them I

22    couldn't possibly decide what the contract or the intentions of

23    the parties really was, could I?

24         MR. CHRISTENSEN:  If Your Honor gets to the question

25    of what the intent of the parties was if the contract is

1  ambiguous on its face and there is a, as I said at the outside,

2  outset there is a separate question of plaintiff's fundamental

3  breach of contract that constitutes a repudiation as a matter

4  of British Columbia law that does not turn on any of the issues

5  that we are discussing relating to taxes, we believe that

6  summary judgment can and ought to be granted on that question

7  and that would resolve the question of liability and save the

8  expense of a trial.

9          THE COURT:  I see.  So your summary judgment motion

10  would not at all address the issues that plaintiffs want to

11  try.

12      Your summary judgment motion would say you know, we

13  could have been as bad as they say we are, but it doesn't

14  matter because they couldn't perform and if they couldn't

15  perform, they've breached the contract and so they don't

16  recover.

17          MR. CHRISTENSEN:  As a matter of law, I would agree,

18  Your Honor, with the exception of the as bad as we are.

19          THE COURT:  Well, that's just --

20          MR. CHRISTENSEN:  Exactly.

21          THE COURT:  -- I mean, as a matter of briefing that

22  you would have to say we can take everything the plaintiffs say

23  about the negotiations, the intent of the parties, even the bad

24  faith which they've alleged and assume it to be true which you

25  would have to do which was all I was intending, we still win as

1  a matter of cold hard law because they couldn't perform?

2          MR. CHRISTENSEN:  That's correct, Your Honor.  And

3  especially now --

4          THE COURT:  Wait, hold on.

5      So the couldn't perform part that's partly D.C. law.  Do

6  you agree with that law?  Do you agree with that's the law if

7  in fact your client could not perform and couldn't perform in a

8  way that's irrespective of what the RCMP was telling you, then

9  under D.C. law you would lose this case, you would lose any

10  recovery?

11          MR. STRAUCH:  I'm going, I'm going to sound as though

12  I'm parsing my words, I promise I have not.

13          THE COURT:  You have been parsing all morning, but

14  you have been very careful.  You have not said anything wrong

15  yet, has he?  He's been very careful.

16          MR. STRAUCH:  British Columbia law my understanding

17  is not different than contract law here.  So that if there is

18  a, an inability of one party to perform a material aspect of

19  the contract, of course it's repudiation.  To that I agree.

20      What Mr. Christensen is talking about I know you're not

21  here to hear the summary judgment argument, doesn't rise to

22  that level in any way, shape or form.

23      However, I do want to point something out while I have

24  lowered the microphone.  Mr. Christensen is talking about

25  repudiation at the end of the relationship.  What's good for

1  the goose I guess is good for the gander.  You cannot try that

2  without trying the issue --

3       THE COURT:  Well, I did say there is a question of

4  timing and everything.  Believe me, I know that.

5       So I was putting all of that aside and saying could your

6  client perform and what you're saying is there's so many facts

7  involved there, maybe we didn't veil.

8       MR. STRAUCH:  There's no question about that.

9       But what I'm also saying is that what Mr. Christensen

10  said to you is you don't have to worry about the tax issue

11  because we can jump to the end and say, hey, could they have

12  given us the boats or not?  That's all you have to decide,

13  Judge, even if we were bad actors RCMP.

14      What I'm saying is that you have to first look at

15  whether there was repudiation of the contract by the RCMP with

16  respect to the taxes before you even get to the issue he's

17  raising, so I don't think that you avoid it at any time.

18       THE COURT:  Mr. Christensen?

19       MR. CHRISTENSEN:  You'll not be surprised to hear my

20  disagreement because these issues were unfolding at the same

21  time.  So there's not the sequencing suggested.

22      My only, because we're not here to argue the merits of

23  summary judgment, I simply want to recommend that the parties

24  in order to avoid both the costs to themselves and

25  inconvenience to the Court be provided the opportunity to brief

1  the issues even if it's only, you know, a schedule that does

2  not draw out the case.

3        This morning was the first I've heard that the complaint

4  might now be amended at the 11th hour which will undoubtedly

5  add more time.

6        THE COURT:  I understand the issue about amending the

7  complaint but actually, if the complaint is amended, I don't

8  know whether more discovery would be needed on the amended

9  complaint but it would not effect the argument that you just

10 made if it is in fact segregable.

11       Do you like that term?

12       MR. CHRISTENSEN:  That's correct.

13       THE COURT:  It comes out of FOIA cases.

14       We're going to do two things.  We're going to set a

15 trial date because we need a trial date.  I need a deadline as

16 much as you need a deadline and a date if you want to brief

17 whether or not the inability of the plaintiffs to perform is

18 clear on the record and in the law.

19       Those are two different things.  You might win on one

20 but not the other.  But if that's what you want to do.  Because

21 you are correct that if you are correct, then you might win on

22 summary judgment and we don't need the trial.

23       But I don't want to wait until later to schedule it

24 because my schedule at the moment in 2013 has lots of criminals

25 coming before me and finding even for -- now for a bench trial

1   we can, we don't have to do it all at once except that you have

2   witnesses presumably coming from elsewhere.  So you would

3   really like it all at once, okay.

4        Ms. White, we need let's say nine trial days.

5        THE DEPUTY CLERK:  Yes, Your Honor.

6        THE COURT:  Mr. Christensen, do you think that the

7   law in the British Columbia on the issue of inability to

8   perform being a breach of contract is different than it is in

9   the United States?  Under the common law here.

10        MR. CHRISTENSEN:  I have researched the British

11  Columbia law.  I can't speak to any particular similarity to

12  any jurisdiction within the United States.

13        But the contours of British Columbia law do not differ

14  dramatically from any of the domestic common law on breach of

15  contract in the United States.

16        THE COURT:  Okay.  I was going gin up the professor

17  but maybe we don't need him.

18        How long would it take you to prepare a brief?

19        MR. CHRISTENSEN:  Thirty days.

20        THE COURT:  Your associate just stood up and wants to

21  get your attention or colleague I should say.  I don't know if

22  she's your associate, she may be your partner.

23        She doesn't want you to commit her or without

24  conversation.  Don't forget I have a life to.

25        MR. CHRISTENSEN:  No, I think it could be done within

1   30 days, Your Honor.

2            THE DEPUTY CLERK:  Your Honor, we could start trial

3   on May the 6th.

4            THE COURT:  Wow!

5            THE DEPUTY CLERK:  I think.

6            THE COURT:  All right.  The 26th which is 30 days

7   for, is not four weeks, hold on.

8         Well, that brings us either to the 23rd or the 26th.

9   The 23rd is the Friday after Thanksgiving, the 26th is the

10  Monday after Thanksgiving.  Personally I would pick the 21st so

11  I would simply die but then I would have Thanksgiving weekend.

12       If you pick the 26th you know what, he's going to have

13  to work Thanksgiving weekend.  You know that's what is going to

14  happen.  You will take every minute you have.  But I will give

15  the choice to you, you can have the 21st which is the day

16  before Thanksgiving, the 23rd, this is November, which is the

17  Friday after Thanksgiving or the 26th which is the Monday after

18  Thanksgiving.

19           MR. CHRISTENSEN:  I think it would need to be the

20  26th if those are the only choices, Your Honor.

21           MR. STRAUCH:  Your Honor, I'm assuming that the, this

22  will be an opportunity for both sides to be filing summary

23  judgment motions.  That seems it could only be -- understanding

24  that May 6th is when we could get a trial date, could I ask for

25  just a three or four more days on that summary judgment

1  deadline?  We're moving our offices right now literally today

2  and I think it's going to put us way behind especially given at

3  how I got yelled at by my paralegal today about the state of my

4  files.

5          THE COURT:  Aha, we have to keep paralegals happy.

6          MR. STRAUCH:  I'm just thinking like three extra days

7  to make up for this.

8          MR. CHRISTENSEN:  It could be Friday, November 30th.

9          THE COURT:  You want the 30th.  Can we switch the

10  trial to October?  I think we should so that we actually have a

11  time to brief this.

12          THE DEPUTY CLERK:  Your Aguilar trial starts right

13  after that.

14          THE COURT:  Yes, but I don't know what that trial is

15  going to go to, but we would do better if we switched it to

16  October.

17      If you're going to amend your complaint, you haven't

18  decided yet, but if you do, I mean, and I need time, you need

19  time to write.  I need time to decide.  We need time to decide

20  if we are going to trial, what are the rules, who are going to

21  be the witnesses.  I mean, there's a lot of pretrial stuff.

22          MR. STRAUCH:  There's not that much.  There's really

23  not.

24          THE COURT:  There's not that much if they concede

25  liability.  But at the moment, there's just a tiny little bit

1    of light coming around the door frame but not much.

2          What is the date in October, Ms. White?

3              THE DEPUTY CLERK:  October 15th, Your Honor.

4              THE COURT:  The problem is that I start a criminal

5    trial in January that's going to go some months and then I

6    start another criminal trial in May or June that's going to go

7    all summer.  And I really need time to decide this.

8          Now if I read it and say, no, well that's easy, I can

9    just say no, but if I read it and want to write, need to

10   actually write something so that takes a little bit longer.

11         When I'm in trial all day that just is a, obviously

12   Canada would prefer to postpone this so that they have a chance

13   to say that oh, no, we win on this other issue.  But your point

14   -- never mind.

15         Let's say your brief is due the 30th.  And because

16   you're just moving and because actually it really is not a very

17   good time to be writing briefs through the holidays, associates

18   would hate me, why don't we say that the response is due the

19   14th of January.

20             MR. STRAUCH:  Valentines Day.

21             THE COURT:  January?

22             MR. STRAUCH:  Of January.

23             THE COURT:  Otherwise, you'd -- we're giving you

24   until the 30th so he gets Thanksgiving, we are giving you to

25   the 14th so that you get Christmas.  I don't have January,

1  February so I don't know.  We'll say --

2       MR. CHRISTENSEN:  If we could have three weeks after

3  that, Your Honor to reply.  With the Government client there

4  are usually several layers of vetting or 30 days if that's

5  possible.

6       THE COURT:  Why don't we say the 10th of February,

7  10th or 11th, whichever is the Monday.  Okay.

8       MR. CHRISTENSEN:  It's the 11th, Your Honor.

9       THE COURT:  Alrighty, thank you.

10      If I had my trusty PDA, I could have done that, huh.

11      So this is your motion on the question of whether the

12  plaintiffs were unable to perform and if so, whether they

13  therefore breached the contract irrespective of what the RCMP

14  or anybody else did.  And obviously, your response is too many

15  facts.  I mean, I understand how that goes.

16      MR. STRAUCH:  I did not mean to interrupt.  I would

17  intend to, I certainly will also be filing a motion at least at

18  the very least with a limited issue of whether or not the RCMP

19  was obligated to pay these taxes.

20      THE COURT:  Okay.

21      MR. STRAUCH:  And the Court ought to be able to knock

22  that one out without any problem.

23      THE COURT:  We're talking about an interpretation of

24  the contract.  All right.

25      On the same schedule?

1          MR. STRAUCH:  Yes, Your Honor.

2          THE COURT:  All right, thank you.

3          Then the trial date is October 15th.  We will see each

4  other before that.

5          MR. CHRISTENSEN:  Yes.

6          Your Honor, the reason we came in early this morning was

7  to address the motion to compel.

8          THE COURT:  Yes.

9          MR. CHRISTENSEN:  There are, I have a handy chart

10 hoping that that would have streamlined our discussions of the

11 documents at issue.

12         THE COURT:  I didn't know that we had a motion to

13 compel beyond the point of Mr. Debruyckere's notes.

14         MR. CHRISTENSEN:  And that's not even a motion to

15 compel because the Government has said it would provide.

16         THE COURT:  No.

17         MR. CHRISTENSEN:  That it is reviewing.

18         Mr. Debruyckere was involved with national security

19 issues among other things, and so attorneys are, Government

20 attorneys are first reviewing for that so that we can have the

21 documents to review and produce to plaintiffs.

22         THE COURT:  I've got this.  What's the response to,

23 have you seen this document?

24         MR. STRAUCH:  I have.  The response is we either do

25 not have the document and we have so told them or the Court has

1  already addressed these very same issues in motions to compel

2  and denied it April 24 of 2012.

3       MR. CHRISTENSEN:  On the first issue, Your Honor, for

4  example the document number one, the plaintiffs had represented

5  to this Court and the D.C. Circuit that they had an agreement.

6  When we asked for it, we were told they had no signed copies of

7  the agreement.  And I was told this morning that the agreement

8  just doesn't exist.

9       So the first document, there is no written agreement to

10  provide.  So I think the first document is resolved with the

11  understanding that there was simply never a written agreement.

12      The third document we list here as third, regarding the

13  LaLiberte document, Your Honor allowed us discovery at that

14  April conference in order to return to you and explain what

15  discovery has shown and why the documents are relevant.

16      And it remains the case that Mr. LaLiberte was to

17  provide 20 to 60 million dollars in financing.  Plaintiff's

18  relationship with him was terminated a week before the bid and

19  so plaintiffs had no financing.

20      They obtained a letter of credit for ten percent of the

21  financing, but when they were awarded the bid had no ability to

22  provide the remaining 90 percent of that financing.

23      So the documents that we are seeking are to understand

24  plaintiff's financial condition to see whether they had the

25  financial ability to ever perform this agreement.

1          Similarly in document number four we learned for the

2    first time in discovery that plaintiffs had agreed to pay more

3    than five million dollars, dollar for dollar as plaintiffs

4    testified for a five million dollar letter of credit for that

5    ten percent financing.  That, the agreement to pay five million

6    dollars according to Phillip Sloan was a written agreement that

7    he saw finalized, signed by Mr. Sessions, we've requested it.

8    We asked questions about it at the deposition and the witnesses

9    were instructed not to answer on the basis of attorney client

10   communications.

11          We are simply trying to find the copy of the agreement

12   in which plaintiffs incurred a five million dollar cost to

13   provide financing for this contract.

14          THE COURT:  Well, if you don't have the document and

15   you do have the testimony, why do you need the document?

16          MR. CHRISTENSEN:  I have not been told they don't

17   have the document.

18          THE COURT:  No, I said if you don't have the

19   document.

20          MR. CHRISTENSEN:  Yes.

21          THE COURT:  But you do have the testimony.

22          MR. CHRISTENSEN:  I don't have the testimony.  I

23   asked questions about the document and the witnesses were

24   instructed not to answer on the basis of attorney client

25   communications.

1        I cannot believe that a simple document to pay dollar

2  for dollar, five million dollars for a letter of credit is

3  somehow protected by the attorney client communications

4  privilege.

5        And this was a cost of this engagement that was never

6  disclosed in interrogatories, to the World Bank of Canada when

7  it was seeking, when plaintiffs were seeking financing, or to

8  us until we asked questions at the deposition a couple of

9  months ago.  Simply want that agreement and any communications

10 related to it.

11       The pre bid documents in number five that were developed

12 to secure financing also are relevant because we've seen a

13 couple of documents that plaintiff's witnesses describe as

14 preliminary and we're seeking other related documents and

15 communications about them to give them context to understand

16 what plaintiffs thought were their costs and margins at the

17 time that they were bidding on this agreement because the

18 sparse documents that we've had produced after the bid are

19 largely generated to persuade the World Bank of Canada to

20 provide financing and they omit a five million dollar cost for

21 credit, they omit a five hundred thousand dollar salary for

22 plaintiff CFO.

23       We would like to see what the, if plaintiffs have any

24 documents prior to the bid that explain what their costs are

25 and what their estimated margins are, we would like to see it

1   to understand whether they had the financial wherewith all to

2   have completed this contract.

3            THE COURT:  Are there such documents?

4            MR. STRAUCH:  Your Honor, I want to sort of take

5   these in turn if I can.

6            THE COURT:  Gentlemen, we are already late.

7            MR. STRAUCH:  I will be very, very fast.

8        On number three, Mr. Christensen says he needs documents

9   about our organization before we became CCCM to show whether or

10  not we could get financing.

11       He ignores the fact that we got financing.  He ignores

12  the fact that he and I sat in on the deposition of the

13  vice-president of the bank who gave us all of the financing

14  that we needed to run this project.

15       He's ignoring the fact that he's seen the document that

16  says that we have all of the financing and now he's arguing to

17  you he needs documents about our pre-existence, pre-existence

18  of CCCM, Cruise Connections Charter Management.

19       He needs those documents to find out whether or not we

20  could have ever got financing.  We got financing and

21  Mr. Christensen knows that.

22       With respect to communications about John Sessions,

23  Mr. Christensen has a fundamental misunderstanding.  For some

24  reason he thinks that what we were planning to do with our

25  profits, okay, we're going to give some to this guy, give some

1   to this guy ought to come out of our damages.

2        If I have an agreement with Joe that if I win this

3   contract and I win these, earn these profits I am going to take

4   my profits and give Joe ten bucks.  It does not mean that you

5   subtract ten bucks from my damages that the defendant has to

6   pay.

7        He wants information about what we were going to do with

8   our profits.  One of the things to be done with the profits is

9   that the partners were all going to put money together and give

10  some of it to the brother of one of the partners who is acting

11  as the CFO.  Not being paid anything until after it was all

12  done, profits were won.  They were going to collectively give

13  him a half million dollars for his work on this.  That's the

14  kind of thing that he's asking for.

15       The same thing with John Sessions asking, the plan is to

16  pay the man out of profits.  It doesn't matter what we're

17  going to do with our profits.

18       The Court has already heard these arguments and already

19  denied these same motions to compel.  We've told them with

20  respect to number five all quote pitch documents that we've

21  produced everything that we have.  That has been explained to

22  him.

23       Number six I don't think that Mr. Christensen got to.

24       No, number six is pre RCMP communications, the same

25  thing as number three, what we were doing in our lives before

1  we formed CCCM he claims has to do with whether or not we could

2  get financing when he knows we got financing.

3        MR. CHRISTENSEN:  Plaintiffs claim that they got

4  financing is over exaggerated because at that same deposition

5  the vice-president of the bank testified that if plaintiffs had

6  disclosed information that had been withheld from them about

7  their costs, that would have adversely effected the bank's risk

8  analysis and ability to provide financing.

9        THE COURT:  That may be so, but that has nothing to

10 do with whether or not they had a commitment for financing from

11 the bank.

12    I cannot decide this today.  I really need to go see

13 what I've decided before because I didn't realize we were, this

14 was the nature of the conversation going to be had today.

15    So why don't I do that and then we will set up a

16 telephone conference call, okay.

17        MR. CHRISTENSEN:  That's fine, Your Honor.

18    There is no transcript of the previous proceeding

19 because Your Honor conducted it at home.  When we requested the

20 transcript afterwards we were told --

21        THE COURT:  There wasn't one.

22        MR. CHRISTENSEN:  -- there was no Court Reporter.

23    Your Honor did --

24        THE COURT:  I will have a Court Reporter on the next

25 telephone call.

1          MR. CHRISTENSEN:  Your Honor did not compel

2    production of the documents without prejudice to our ability to

3    return to you after the deposition testimony which is why --

4          THE COURT:  Which is why you're here now.

5          MR. CHRISTENSEN:  -- why I'm bringing a subset of the

6    documents that we have talked to plaintiffs.

7          THE COURT:  Okay, let me figure this out, all right.

8    I'll talk to you again.

9          MR. STRAUCH:  I know you want to take us out.  One

10   quick thing.

11         THE COURT:  I do.

12         MR. STRAUCH:  Let the Court know that with respect

13   to Mr. Debruyckere whose notes are being prepared, I would ask

14   the Court to order those because I don't frankly trust the

15   Canadian Government, not Scott, the Canadian Government.  I

16   think the pressure with the Court order makes that more likely.

17         Second, I may be asking Mr. Christensen to continue his

18   deposition if I get these notes and I can't read them or they

19   are vague and I wanted to bring that to the Court's attention

20   that that may be happening.

21         THE COURT:  Well, that's undoubtedly predictable.

22         And I'll order the Government of Canada to produce the

23   notes which you are already doing and so therefore, the order

24   is easy to take.

25         MR. STRAUCH:  Thank you, Your Honor.

1          THE COURT:  Thank you.

2       Thank you everybody.  It was nice to see you, I will

3   talk to you on the telephone as soon as I have got this figured

4   out, okay.

5          MR. STRAUCH:  Thank you, Your Honor.

6          MR. CHRISTENSEN:  Thank you, Your Honor.

7          (Proceedings concluded at 10:30 a.m.)

8                          -oOo-

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the stenographic notes provided to me by the United States District Court, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____        _____
/s/Crystal M. Pilgrim, RPR          Date: December 17, 2012

'08 [1]   5/19

–

--------------------------

1/8

-oOo [1]   37/8

/

/s/Crystal [1]   38/12

**0**

08-2054 [2]   1/4 2/2

**1**

10:30 [2]   1/6 37/7
10th [2]   28/6 28/7
118 [1]   1/15
11th [3]   23/4 28/7 28/8
14th [2]   27/19 27/25
15th [2]   27/3 29/3
17 [1]   38/12
1775 [1]   1/18

**2**

20 [1]   30/17
20001 [1]   1/22
20006-2401 [1]   1/18
2008 [1]   10/17
2012 [3]   1/5 30/2 38/12
2013 [1]   23/24
2054 [2]   1/4 2/2
21st [2]   25/10 25/15
23rd [3]   25/8 25/9 25/16
24 [1]   30/2
2401 [1]   1/18
25 [1]   14/4
26 [1]   1/5
26th [6]   25/6 25/8 25/9
 25/12 25/17 25/20
27101 [1]   1/15

**3**

30 [3]   25/1 25/6 28/4
30th [4]   26/8 26/9 27/15
 27/24
333 [1]   1/21
35 [1]   5/5

**4**

44.1 [1]   11/20

**6**

60 [2]   7/4 30/17
6th [2]   25/3 25/24

**9**

90 [1]   30/22
9676 [3]   5/2 5/2 5/4

**A**

a.m [2]   1/6 37/7
ability [5]   30/21 30/25
 35/8 36/2 38/3
able [5]   14/12 18/17
 18/20 18/21 28/21
about [37]   2/24 5/21 7/9
 7/13 7/20 7/23 7/25 8/4
 8/6 8/10 8/12 8/18 9/8
 9/15 11/21 12/14 17/2
 17/2 17/4 17/11 18/24

20/23 21/20 21/24 22/8
22/10 23/6 26/5 26/23
31/8 31/23 32/15 33/9
33/17 33/22 34/7 35/6
above [2]   38/3 38/6
absolutely [2]   5/4 5/10
according [1]   31/6
act [1]   9/24
acting [1]   34/10
action [3]   2/2 38/8 38/10
actors [1]   22/13
actually [7]   11/14 16/15
 17/15 23/7 26/10 27/10
 27/16
add [1]   23/5
additional [3]   10/5 10/5
 10/5
Additionally [1]   11/18
address [2]   20/10 29/7
addressed [1]   30/1
administrative [1]   12/16
admitted [2]   9/7 9/21
adversely [1]   35/7
after [9]   25/9 25/10
 25/17 25/17 26/13 28/2
 32/18 34/11 36/3
afterwards [1]   35/20
again [1]   36/8
against [4]   4/1 4/7 5/7
 19/2
ago [4]   7/16 9/3 17/3
 32/9
agree [7]   6/24 16/5 19/9
 20/17 21/6 21/6 21/19
agreed [4]   7/2 9/6 10/2
 31/2
agreeing [1]   5/25
agreement [16]   4/4 5/17
 13/11 13/13 30/5 30/7
 30/7 30/9 30/11 30/25
 31/5 31/6 31/11 32/9
 32/17 34/2
Aguilar [1]   26/12
Aha [1]   26/5
ahead [2]   2/13 11/10
aided [1]   1/24
al [3]   1/3 1/7 2/4
Alaine [2]   9/3 9/5
all [34]   2/15 3/25 4/5
 4/18 9/17 9/18 13/14
 13/15 13/21 13/25 14/15
 15/11 16/4 17/13 19/20
 20/10 20/25 21/13 22/5
 22/12 24/1 24/3 25/6 27/7
 27/11 28/24 29/2 33/1
 33/13 33/16 34/9 34/11
 34/20 36/7
allegations [2]   15/25
 16/3
allege [1]   15/15
alleged [1]   20/24
allowed [1]   30/13
allows [1]   11/20
already [7]   15/21 19/10
 30/1 33/6 34/18 34/18
 36/23
Alrighty [1]   28/9
also [11]   5/14 7/20 9/14
 9/23 10/11 13/10 13/18
 14/1 22/9 28/17 32/12
although [2]   9/12 19/9

am [4]   14/15 34/3 38/7
 38/9
Amazon [1]   6/2
ambiguous [1]   20/1
amend [2]   15/14 26/17
amended [3]   23/4 23/7
 23/8
amending [1]   23/6
among [2]   17/16 29/19
amount [1]   18/7
analysis [1]   35/8
another [1]   27/6
answer [4]   4/10 5/9 31/9
 31/24
answered [1]   4/15
anticipated [1]   11/3
any [20]   3/25 4/5 7/9
 9/17 10/6 11/20 11/21
 15/13 16/15 20/4 21/9
 21/22 22/17 24/11 24/12
 24/14 28/22 32/9 32/23
 38/8
anybody [2]   18/8 28/14
anything [3]   8/17 21/14
 34/11
apart [1]   13/11
appeal [1]   10/18
APPEARANCES [1]   1/13
approached [1]   5/19
approximately [1]   7/15
April [2]   30/2 30/14
are [49]
aren't [2]   16/15 19/6
argue [1]   22/22
arguing [1]   33/16
argument [6]   13/2 14/15
 14/16 18/5 21/21 23/9
arguments [1]   34/18
around [1]   27/1
artful [1]   6/15
articles [1]   4/4
as [45]
aside [1]   22/5
ask [4]   4/13 8/22 25/24
 36/13
asked [12]   4/3 4/14 5/3
 5/3 6/22 6/25 8/6 8/19
 30/6 31/8 31/23 32/8
asking [3]   34/14 34/15
 36/17
aspect [1]   21/18
asserted [1]   13/8
assessed [1]   5/7
associate [2]   24/20 24/22
associated [1]   13/16
associates [1]   27/17
assume [1]   20/24
assuming [2]   14/20 25/21
assumption [1]   18/15
assurance [3]   5/22 6/1
 6/4
attention [2]   24/21 36/19
attorney [5]   1/6 2/3 31/9
 31/24 32/3
attorneys [2]   29/19 29/20
authority [1]   6/17
Avenue [1]   1/21
avoid [3]   19/7 22/17
 22/24
awarded [1]   30/21

**B**
bad [6]   10/7 15/15 20/13
 20/18 20/23 22/13
bank [5]   32/6 32/19 33/13
 35/5 35/11
bank's [1]   35/7
basis [2]   31/9 31/24
be [51]
became [2]   6/17 33/9
because [35]   3/7 5/4 5/21
 6/4 7/21 9/6 9/10 14/3
 14/17 15/1 15/23 15/23
 15/25 17/13 19/1 19/5
 19/15 19/16 20/14 21/1
 22/11 22/20 22/22 23/15
 23/20 23/24 27/15 27/16
 29/15 32/12 32/17 35/4
 35/13 35/19 36/14
been [12]   4/2 5/14 5/17
 10/17 18/7 20/13 21/13
 21/14 21/15 31/16 34/21
 35/6
before [14]   1/10 6/9 6/10
 8/16 11/8 18/2 22/16
 23/25 25/16 29/4 30/18
 33/9 34/25 35/13
behalf [1]   5/11
behind [1]   26/2
being [10]   4/8 5/8 6/7
 7/11 8/20 13/21 14/12
 24/8 34/11 36/13
belief [1]   4/24
believe [8]   3/8 7/14
 10/23 13/6 19/5 20/5 22/4
 32/1
believed [1]   5/4
believing [1]   3/24
bench [2]   19/1 23/25
bene [1]   11/15
best [1]   38/3
better [2]   2/21 26/15
between [8]   3/12 7/24
 8/11 14/8 16/22 17/18
 17/18 19/21
beyond [2]   9/17 29/13
bid [5]   30/18 30/21 32/11
 32/18 32/24
bidding [1]   32/17
bind [2]   4/5 5/12
bit [3]   5/18 26/25 27/10
blown [1]   16/13
boats [1]   22/12
both [4]   3/21 5/24 22/24
 25/22
bottom [1]   12/14
bound [1]   4/25
brave [2]   2/16 3/1
breach [5]   10/7 15/15
 20/3 24/8 24/14
breached [2]   20/15 28/13
brief [5]   22/25 23/16
 24/18 26/11 27/15
briefing [2]   19/12 20/21
briefs [1]   27/17
bring [3]   11/8 11/11
 36/19
bringing [1]   36/5
brings [1]   25/8
British [9]   7/16 11/25
 15/1 19/18 20/4 21/16

broke [1]   3/13
brother [1]   34/10
bucks [2]   34/4 34/5
bumped [1]   7/18

**C**
CA [1]   1/4
call [2]   35/16 35/25
called [2]   5/2 5/2
calm [2]   2/15 2/25
came [4]   3/7 4/21 10/18
 29/6
can [21]   2/18 10/15 12/6
 14/17 16/7 16/11 16/12
 17/12 18/17 18/23 19/15
 19/16 20/6 20/22 22/11
 24/1 25/15 26/9 27/8
 29/20 33/5
can't [2]   24/11 36/18
CANADA [9]   1/6 2/4 2/16
 14/1 17/18 27/12 32/6
 32/19 36/22
Canada's [1]   15/23
Canadian [16]   3/17 3/17
 3/25 4/5 4/8 4/25 5/11
 5/15 8/21 8/24 9/10 12/5
 12/8 14/8 36/15 36/15
Canadians [1]   8/8
cannot [3]   22/1 32/1
 35/12
careful [2]   21/14 21/15
Carolina [1]   16/1
case [12]   2/9 2/11 3/6
 5/2 11/19 13/15 13/21
 16/9 18/1 21/9 23/2 30/16
cases [2]   16/9 23/13
category [1]   11/1
CCCM [3]   33/9 33/18 35/1
central [1]   3/14
certain [2]   4/24 11/1
certainly [3]   8/25 17/3
 28/17
CERTIFICATE [1]   38/1
certify [2]   38/2 38/7
CFO [4]   9/5 9/9 32/22
 34/11
chance [1]   27/12
changed [1]   18/11
chart [1]   29/9
charter [6]   1/3 2/3 2/23
 4/1 13/14 33/18
chartering [1]   13/16
charters [1]   4/7
chat [1]   8/3
checks [1]   12/9
Cherry [1]   1/15
chicken [1]   14/14
chickens [1]   2/8
choice [1]   25/15
choices [1]   25/20
CHRISTENSEN [15]   1/16 2/6
 8/19 12/1 12/13 21/20
 21/24 22/9 22/18 24/6
 33/8 33/21 33/23 34/23
 36/17
Christensen's [1]   8/23
Christmas [1]   27/25
Circuit [1]   30/5
Civil [1]   2/2
claim [1]   35/3

claims [3]   13/7 15/22
 35/1
clear [10]   2/15 2/25 4/2
 9/23 13/6 13/10 13/18
 16/7 17/7 23/18
clearly [2]   13/13 16/10
client [10]   3/18 4/23
 7/24 10/15 21/7 22/6 28/3
 31/9 31/24 32/3
client's [2]   6/12 11/2
clients [1]   3/12
closing [1]   13/2
cold [1]   21/1
colleague [1]   24/21
collectively [1]   34/12
COLLYER [1]   1/10
Colombia [1]   7/16
COLUMBIA [10]   1/1 1/21
 11/25 15/1 19/18 20/4
 21/16 24/7 24/11 24/13
come [4]   2/20 16/3 18/24
 34/1
comes [4]   6/21 10/23
 17/14 23/13
coming [4]   18/7 23/25
 24/2 27/1
commit [1]   24/23
commitment [1]   35/10
common [3]   12/1 24/9
 24/14
communications [8]   8/20
 31/10 31/25 32/3 32/9
 32/15 33/22 34/24
compel [6]   29/7 29/13
 29/15 30/1 34/19 36/1
complaint [7]   15/14 15/22
 23/3 23/7 23/7 23/9 26/17
completed [1]   33/2
complicated [2]   13/9 17/1
complied [1]   14/11
comply [4]   14/4 14/7 14/7
 14/13
computer [1]   1/24
computer-aided [1]   1/24
concede [1]   26/24
concerned [1]   7/23
conclude [1]   10/15
concluded [1]   37/7
conclusion [1]   8/22
conclusions [1]   18/24
condition [1]   30/24
conducted [1]   35/19
conference [5]   1/10 2/13
 10/9 30/14 35/16
conference/scheduling [1]
 10/9
confirm [2]   4/13 4/13
confirmed [4]   8/7 8/10
 8/14 9/14
conflict [4]   16/22 17/3
 17/18 17/19
conflicting [1]   19/21
conflicts [3]   17/14 17/16
 17/17
CONNECTIONS [4]   1/3 2/3
 2/23 33/18
consider [3]   3/6 10/6
 11/20
constitutes [2]   15/2 20/3
Constitution [1]   1/21
contention [1]   6/12

## C

context [2]   19/13 32/15
continue [1]   36/17
continued [1]   7/13
contours [1]   24/13
contract [50]
contracting [2]   4/18 6/17
contracts [1]   5/21
conversation [2]   24/24
  35/14
cooler [1]   7/19
cooperation [1]   8/23
copied [1]   8/20
copies [1]   30/6
copy [1]   31/11
CORINNE [1]   1/17
correct [6]   4/9 21/2
  23/12 23/21 23/21 38/2
correctly [1]   8/17
Corrine [1]   2/6
cost [3]   31/12 32/5 32/20
costs [8]   11/3 13/15 19/7
  19/10 22/24 32/16 32/24
  35/7
could [26]   2/20 4/2 4/3
  6/10 7/3 7/5 8/17 11/6
  13/24 19/12 19/23 20/13
  21/7 22/5 22/11 24/25
  25/2 25/23 25/24 25/24
  26/8 28/2 28/10 33/10
  33/20 35/1
couldn't [6]   19/22 20/14
  20/14 21/1 21/5 21/7
counsel [2]   10/18 38/7
couple [2]   32/8 32/13
course [3]   5/2 9/21 21/19
court [29]   1/1 1/19 1/20
  1/20 3/5 3/8 3/11 8/22
  10/9 10/11 10/13 11/7
  11/20 12/4 12/7 13/10
  16/12 18/25 22/25 28/21
  29/25 30/5 34/18 35/22
  35/24 36/12 36/14 36/16
  38/5
Court's [2]   2/24 36/19
cow [1]   16/19
credit [4]   30/20 31/4
  32/2 32/21
criminal [2]   27/4 27/6
criminals [1]   23/24
critical [1]   9/8
Crown [1]   5/12
cruise [16]   1/3 2/2 2/23
  3/13 3/18 4/2 4/6 4/7 5/7
  5/19 5/20 13/16 14/6 14/6
  14/6 33/18
CRYSTAL [2]   1/19 38/12
currently [1]   10/4
Cvs [1]   11/22

## D

D-E-B-R-U-Y-C-K-E-R-E [1]
  15/6
D.C [4]   1/5 21/5 21/9
  30/5
damages [7]   10/14 10/25
  11/1 11/5 11/16 34/1 34/5
date [11]   10/16 10/19
  11/22 23/15 23/15 23/16
  25/24 27/2 29/3 38/5
38/12
day [32]   5/20 5/22 4/2
  4/16 4/17 4/17 4/19 4/22
  4/23 5/24 6/2 6/3 6/7
  6/15 6/21 7/3 7/9 7/18
  8/2 8/3 8/10 8/12 9/6 9/7
  9/15 10/1 11/8 16/24
  19/18 25/15 27/11 27/20
Day's [4]   12/23 16/6 17/1
  17/2
days [13]   6/9 6/10 6/18
  8/17 11/4 12/19 24/4
  24/19 25/1 25/6 25/25
  26/6 28/4
DC [2]   1/18 1/22
de [1]   11/15
deadline [3]   23/15 23/16
  26/1
dealing [2]   11/18 15/20
dear [1]   12/23
Debruyckere [9]   7/15 7/17
  8/6 8/10 8/14 15/4 15/5
  29/18 36/13
Debruyckere's [3]   7/21
  10/3 29/13
December [1]   38/12
decide [7]   19/17 19/22
  22/12 26/19 26/19 27/7
  35/12
decided [3]   6/3 26/18
  35/13
decision [1]   9/24
defendant [3]   1/7 1/16
  34/5
defendants [2]   13/6 19/5
defense [3]   2/6 14/19
  14/21
denied [4]   7/8 17/22 30/2
  34/19
depends [1]   14/18
deposed [2]   3/21 4/20
  6/21 7/8 7/15 9/3 9/4 9/5
deposition [15]   4/3 4/14
  4/16 7/17 8/16 9/12 11/10
  11/15 11/15 31/8 32/8
  33/12 35/4 36/3 36/6
depositions [3]   4/11 7/13
  9/21
describe [1]   32/13
description [1]   16/17
desk [1]   6/8
despite [4]   6/4 8/7 8/9
  8/23
detailed [1]   14/18
determination [1]   14/19
developed [1]   32/11
did [17]   3/23 4/13 6/13
  6/24 9/1 14/7 14/7 15/25
  16/18 18/1 18/19 19/19
  22/3 28/14 28/16 35/23
  36/1
didn't [6]   13/4 18/2
  19/19 22/7 29/12 35/13
die [1]   25/11
differ [2]   12/20 24/13
different [6]   2/9 2/11
  14/11 21/17 23/19 24/8
difficulty [1]   5/20
directions [1]   17/8
directly [1]   4/19
disagreement [1]   22/20
disclosed [2]   32/6 35/6
discovery [10]   2/12 3/2
  3/7 14/3 15/3 15/13 23/8
  30/13 30/15 31/2
discuss [1]   8/15
discussing [1]   20/5
discussion [1]   8/2
discussions [4]   4/22 4/23
  7/20 29/10
dismissed [1]   15/22
dispute [7]   2/18 3/2 5/16
  7/24 8/4 9/18 18/22
disputed [3]   4/25 5/12
  6/13
disputes [2]   16/16 19/11
DISTRICT [6]   1/1 1/1 1/11
  1/20 1/21 38/5
do [38]   2/14 2/19 5/25
  9/13 10/21 12/16 13/6
  13/21 14/17 16/7 16/24
  18/3 18/4 18/5 19/12
  20/25 21/5 21/6 21/23
  23/11 23/14 23/20 24/1
  24/6 24/13 26/15 26/18
  29/24 31/15 31/15 31/21
  33/24 34/7 34/17 35/1
  35/10 35/15 36/11
docked [2]   4/8 5/8
Docket [1]   1/4
document [16]   6/1 29/23
  29/25 30/4 30/9 30/10
  30/12 30/13 31/1 31/14
  31/15 31/17 31/19 31/23
  32/1 33/15
documented [1]   8/2
documents [17]   17/7 29/11
  29/21 30/15 30/23 32/11
  32/13 32/14 32/18 32/24
  33/3 33/8 33/17 33/19
  34/20 36/2 36/6
does [3]   20/4 23/1 34/4
doesn't [8]   18/8 18/17
  19/15 20/13 21/21 24/23
  30/8 34/16
doing [3]   7/1 34/25 36/23
dollar [9]   7/4 31/3 31/3
  31/4 31/12 32/1 32/2
  32/20 32/21
dollars [6]   5/6 30/17
  31/3 31/6 32/2 34/13
domestic [1]   24/14
don't [29]   4/12 12/3 12/3
  12/20 16/5 19/16 19/16
  20/15 22/10 22/17 23/7
  23/22 23/23 24/1 24/17
  24/21 24/24 26/14 27/18
  27/25 28/1 28/6 31/14
  31/16 31/18 31/22 34/23
  35/15 36/14
done [5]   15/3 24/25 28/10
  34/8 34/12
door [1]   27/1
down [2]   3/14 7/17
drafted [1]   3/19
dramatically [1]   24/14
drastically [1]   16/13
draw [1]   23/2
drawing [1]   4/14
due [3]   18/6 27/15 27/18

## E

e-mail [5]   6/4 6/11 8/3

e-mail... [2]  8/20 9/7
e-mails [1]  5/24
each [3]  2/21 7/18 29/3
eager [2]  10/3 19/7
earlier [1]  12/21
early [1]  29/6
earn [1]  34/3
easy [2]  27/8 36/24
economical [1]  13/23
effect [2]  3/8 23/9
effected [1]  35/7
efficient [1]  16/13
efficiently [1]  13/24
egg [1]  14/14
either [3]  13/12 25/8
 29/24
else [1]  28/14
elsewhere [1]  24/2
employed [1]  38/8
end [2]  21/25 22/11
engagement [1]  32/5
enough [1]  4/11
ensure [1]  9/9
enter [1]  8/23
entitled [1]  19/6
equally [3]  9/23 12/1
 19/7
especially [2]  21/3 26/2
Esquire [3]  1/14 1/16
 1/17
essentially [1]  11/20
estimate [1]  12/21
estimated [3]  5/6 12/19
 32/25
et [3]  1/3 1/7 2/4
even [8]  16/4 17/22 20/23
 22/13 22/16 23/1 23/25
 29/14
events [1]  14/18
eventually [1]  4/14
ever [5]  6/9 6/10 7/5
 30/25 33/20
every [1]  25/14
everybody [2]  18/16 37/2
everyone [1]  2/7
everything [4]  2/25 20/22
 22/4 34/21
evidence [5]  3/7 11/21
 14/3 16/22 17/6
exact [1]  8/4
exactly [2]  12/2 20/20
exaggerated [1]  35/4
example [1]  30/4
except [1]  24/1
exception [1]  20/18
Exhibit [1]  4/4
exist [1]  30/8
existence [2]  33/17 33/17
expect [5]  10/13 11/7
 11/7 11/9 13/4
expense [1]  20/8
expensive [1]  16/13
expensively [1]  13/24
experience [1]  16/8
expert [4]  11/1 11/22
 12/5 12/8
explain [2]  30/14 32/24
explained [3]  3/22 4/20
 34/21

expressly [1]  10/2
extended [2]  4/9 5/8
extent [1]  8/3
extra [1]  26/6
eyes [2]  6/9 6/10

F
face [1]  20/1
fact [14]  5/15 6/12 14/16
 16/16 17/15 18/1 18/22
 19/10 19/11 21/7 23/10
 33/11 33/12 33/15
facts [4]  13/7 18/23 22/6
 28/15
failure [1]  15/20
fair [1]  15/20
fairly [1]  8/11
faith [5]  10/7 15/15
 15/20 18/16 20/24
familiar [1]  18/13
far [1]  13/8
fast [1]  33/7
faster [1]  19/4
February [2]  28/1 28/6
feud [2]  8/11 9/15
few [2]  8/16 11/4
figuratively [1]  9/20
figure [3]  11/2 12/8 36/7
figured [1]  37/3
file [1]  9/7
filed [1]  10/16
files [1]  26/4
filing [3]  10/12 25/22
 28/17
finalized [2]  5/21 31/7
finally [1]  10/15
financial [3]  30/24 30/25
 33/1
financially [1]  38/9
financing [20]  30/17
 30/19 30/21 30/22 31/5
 31/13 32/7 32/12 32/20
 33/10 33/11 33/13 33/16
 33/20 33/20 35/2 35/2
 35/4 35/8 35/10
find [2]  31/11 33/19
finding [1]  23/25
fine [2]  18/2 35/17
firmly [1]  6/18
first [9]  2/17 15/16
 22/14 23/3 29/20 30/3
 30/9 30/10 31/2
Fitzgerald [1]  1/14
five [10]  5/5 31/3 31/4
 31/5 31/12 32/2 32/11
 32/20 32/21 34/20
flag [3]  6/4 6/5 6/7
focused [1]  18/23
FOIA [1]  23/13
folks [7]  5/19 5/25 5/25
 6/18 9/19 9/21 10/17
foregoing [1]  19/18
foreign [2]  11/19 19/2
forget [1]  24/24
forgive [1]  9/23
form [2]  7/9 21/22
formal [1]  7/20
formally [1]  5/2
formed [1]  35/1
four [6]  6/9 6/10 17/3
 25/7 25/25 31/1

frame [2]  9/8 27/1
frankly [2]  10/23 36/14
free [1]  2/16
Friday [4]  1/5 25/9 25/17
 26/8
full [1]  16/13
fully [1]  3/23
fun [1]  19/3
fundamental [2]  20/2
 33/23
further [2]  38/7 38/9

G
gander [1]  22/1
gave [1]  33/13
GENERAL [2]  1/6 2/3
generated [1]  32/19
get [8]  4/12 22/16 24/21
 25/24 27/25 33/10 35/2
 36/18
gets [2]  19/24 27/24
getting [2]  5/20 10/19
gin [1]  24/16
give [7]  25/14 32/15
 33/25 33/25 34/4 34/9
 34/12
given [2]  22/12 26/2
giving [2]  27/23 27/24
go [6]  10/20 10/21 26/15
 27/5 27/6 35/12
goes [1]  28/15
going [25]  6/11 12/10
 17/13 18/3 21/11 21/11
 23/14 23/14 24/16 25/12
 25/13 26/2 26/15 26/17
 26/20 26/20 27/5 27/6
 33/25 34/3 34/7 34/9
 34/12 34/17 35/14
gone [1]  6/8
good [7]  2/7 4/12 15/20
 18/16 21/25 22/1 27/17
goose [1]  22/1
got [14]  2/14 6/7 6/22
 7/22 12/5 26/3 29/22
 33/11 33/20 33/20 34/23
 35/2 35/3 37/3
Government [18]  3/17 3/17
 3/25 4/6 4/25 5/12 5/15
 8/21 8/25 9/11 14/1 19/7
 28/3 29/15 29/19 36/15
 36/15 36/22
grant [1]  19/15
granted [1]  20/6
Green [1]  1/14
guess [1]  22/1
guy [3]  12/9 33/25 34/1

H
had [31]  5/17 6/24 7/4
 7/5 7/6 7/14 7/20 8/2 8/3
 9/6 9/7 9/8 10/2 12/18
 13/1 14/4 28/10 29/12
 30/4 30/5 30/6 30/19
 30/21 30/24 31/2 32/18
 33/1 35/5 35/6 35/10
 35/14
half [2]  5/6 34/13
hall [1]  7/18
hand [1]  11/23
hands [1]  4/21

**H**

handy [1]   29/9
happen [1]   25/14
happening [1]   36/20
happy [1]   26/5
Harbor [1]   5/8
hard [1]   21/1
has [16]   8/14 8/19 15/21
 18/16 19/18 21/15 23/24
 29/15 29/25 30/15 33/23
 34/5 34/18 34/21 35/1
 35/9
hate [1]   27/18
have [75]
haven't [1]   26/17
having [2]   5/20 9/15
he [43]
he's [7]   21/15 22/16
 25/12 33/15 33/15 33/16
 34/14
head [1]   4/17
hear [2]   21/21 22/19
heard [3]   15/16 23/3
 34/18
hearing [2]   10/9 38/9
help [2]   2/19 12/8
her [7]   4/21 4/23 4/23
 5/9 6/4 8/9 24/23
here [10]   10/18 11/8 12/5
 18/2 21/17 21/21 22/22
 24/9 30/12 36/4
hey [2]   12/4 22/11
higher [1]   9/24
highlighted [1]   11/13
him [13]   4/3 6/22 6/22
 6/25 7/25 8/21 9/6 9/13
 12/5 24/17 30/18 34/13
 34/22
hint [1]   2/14
his [13]   3/22 4/3 4/10
 7/22 8/1 8/11 8/18 9/7
 11/9 15/12 17/2 34/13
 36/17
history [1]   5/18
hold [2]   21/4 25/7
holidays [1]   27/17
home [3]   2/16 2/25 35/19
Honor [36]   2/10 2/22 9/17
 12/19 12/25 14/5 14/24
 15/10 15/21 16/11 17/22
 18/21 18/23 19/24 20/18
 21/2 24/5 25/1 25/2 25/20
 25/21 27/3 28/3 28/8 29/1
 29/6 30/3 30/13 33/4
 35/17 35/19 35/23 36/1
 36/25 37/5 37/6
HONORABLE [1]   1/10
hope [1]   3/11
hopes [1]   8/24
hoping [1]   29/10
horribly [1]   9/4
hour [1]   23/4
how [8]   3/8 9/8 10/21
 12/16 18/3 24/18 26/3
 28/15
However [1]   21/23
Hubbard [1]   1/17
Hughes [1]   1/17
huh [1]   28/10
hum [1]   2/15

**I**

hundred [1]   32/21
hypothesize [1]   19/7

**I**

I'll [2]   36/8 36/22
I'm [16]   9/4 10/3 14/15
 17/19 17/25 18/2 18/13
 21/11 21/11 21/12 22/9
 22/14 25/21 26/6 27/11
 36/5
I've [6]   8/19 12/5 15/16
 23/3 29/22 35/13
identify [1]   18/22
ignores [2]   33/11 33/11
ignoring [1]   33/15
imagine [2]   10/4 13/5
import [1]   8/5
important [2]   3/5 17/15
imposed [4]   3/18 3/25 4/1
 4/6
inability [3]   21/18 23/17
 24/7
inartful [1]   9/23
included [1]   13/17
including [2]   4/1 4/7
inclusive [1]   13/14
inconvenience [1]   22/25
incredulous [1]   7/11
incurred [1]   31/12
individuals [1]   13/11
inform [1]   10/11
information [3]   11/21
 34/7 35/6
instructed [2]   31/9 31/24
intend [2]   10/25 28/17
intended [4]   5/12 9/18
 17/3 17/4
intending [1]   20/25
intent [3]   4/5 19/25
 20/23
intentions [1]   19/22
interested [1]   38/10
interpretation [1]   28/23
interrogatories [1]   32/6
interrupt [1]   28/16
involved [3]   3/12 22/7
 29/18
irrespective [2]   21/8
 28/13
is [103]
isn't [2]   12/10 17/16
issue [15]   3/14 8/10 11/5
 13/7 13/17 17/15 22/2
 22/10 22/16 23/6 24/7
 27/13 28/18 29/11 30/3
issues [13]   8/4 11/5 12/7
 13/8 13/24 16/11 17/23
 20/4 20/10 22/20 23/1
 29/19 30/1
it [87]
it's [18]   2/8 4/18 5/14
 8/4 9/1 11/14 16/7 17/1
 17/13 17/15 17/17 18/6
 19/1 19/1 21/19 23/1 26/2
 28/8
its [3]   8/25 15/23 20/1
itself [2]   13/11 13/13

**J**

JACK [4]   1/14 2/5 2/22
 10/19

**J**

January [5]   27/5 27/19
 27/24 27/22 27/25
job [1]   7/21
Joe [2]   34/2 34/4
John [2]   33/22 34/15
JUDGE [2]   1/11 22/13
judgment [18]   13/22 14/2
 16/7 16/9 17/13 17/22
 18/19 19/10 19/14 19/16
 20/6 20/9 20/12 21/21
 22/23 23/22 25/23 25/25
 26/25 27/9 27/11 27/16
 30/8
jump [1]   22/11
Jumping [1]   13/1
juncture [1]   12/20
June [1]   27/6
jurisdiction [2]   11/19
 24/12
jury [1]   18/25
just [16]   2/8 2/20 2/21
 5/25 6/13 11/12 20/19
 23/9 24/20 25/25 26/6
 26/25 27/9 27/11 27/16
 30/8

**K**

keep [1]   26/5
Kelly [7]   3/20 4/16 4/17
 4/19 5/24 6/2 6/14
Kevin [1]   7/15
kicked [2]   6/14 6/16
kind [2]   14/14 34/14
knew [5]   5/15 7/14 9/10
 9/14 10/1
knock [1]   28/21
know [19]   4/12 10/9 12/15
 18/3 19/10 19/16 20/12
 21/20 22/4 23/1 23/8
 24/21 25/12 25/13 26/14
 28/1 29/12 36/9 36/12
knows [2]   33/21 35/2

**L**

laid [3]   6/9 6/10 12/12
LaLiberte [2]   30/13 30/16
land [1]   2/15
landed [1]   6/8
LANE [2]   1/17 2/6
language [2]   4/21 7/12
largely [1]   32/19
largest [1]   7/5
last [3]   5/15 11/16 18/14
late [1]   33/6
later [3]   11/23 13/13
 23/23
law [30]   9/3 9/12 9/13
 11/19 11/21 11/24 12/1
 12/5 12/8 12/9 15/1 15/19
 15/22 16/1 16/12 20/4
 20/17 21/1 21/5 21/6 21/6
 21/9 21/16 21/17 23/18
 24/7 24/9 24/11 24/13
 24/14
lay [1]   16/10
layers [1]   28/4
learned [4]   6/23 6/24
 7/24 31/1
least [3]   17/21 28/17
 28/18
left [1]   4/22
less [4]   13/24 14/5 16/13
 17/7

**L**

let [5]   4/12 12/15 18/18
 36/7 36/12
let's [2]   24/4 27/15
letter [4]   6/18 30/20
 31/4 32/2
level [1]   21/22
levied [1]   4/7
liability [7]   10/12 11/5
 13/1 14/20 14/22 20/7
 26/25
life [1]   24/24
light [1]   27/1
like [8]   15/19 15/20
 19/15 23/11 24/3 26/6
 32/23 32/25
likely [1]   36/16
limine [1]   19/13
limited [1]   28/18
line [3]   5/19 14/6 14/6
 5/7 13/16
lines [5]   3/18 4/2 4/7
 5/7 13/16
list [1]   30/12
literally [2]   9/20 26/1
litigation [1]   10/16
little [3]   5/18 26/25
 27/10
live [1]   11/8
lives [1]   34/25
long [4]   8/3 12/16 18/7
 24/18
longer [2]   11/6 27/10
look [2]   11/2 22/14
looking [3]   10/4 10/10
 10/14
lose [2]   21/9 21/9
losing [1]   7/25
loss [1]   11/2
lot [2]   12/15 26/21
lots [1]   23/24
lowered [1]   21/24
LP [1]   1/3

**M**

machine [1]   1/23
made [5]   7/14 7/25 9/24
 16/21 23/10
Maguel [11]   3/21 4/16
 4/17 4/19 4/20 5/3 5/24
 6/3 6/14 11/10 16/6
mail [5]   6/4 6/11 8/3
 8/20 9/7
mails [1]   5/24
make [3]   7/21 14/19 26/7
makes [2]   19/3 36/16
man [2]   7/15 34/16
MANAGEMENT [4]   1/3 2/3
 2/23 33/18
many [3]   16/9 22/6 28/14
margins [2]   32/16 32/25
material [3]   17/17 19/11
 21/18
matter [13]   8/16 10/22
 11/4 12/17 15/22 16/12
 20/3 20/14 20/17 20/21
 21/1 34/16 38/6
may [10]   11/10 11/11
 11/14 24/22 25/3 25/24
 27/6 35/9 36/17 36/20
maybe [4]   2/15 2/20 22/7

24/17
me [17]   3/9 4/18 4/20 7/3
 7/14 8/7 8/9 8/20 9/14
 11/25 12/6 12/15 18/18
 22/4 23/25 27/18 36/7
 38/4
mean [11]   16/17 17/25
 18/16 19/16 19/20 20/21
 26/18 26/21 28/15 28/16
 34/4
means [2]   17/5 17/11
meant [1]   7/13
meet [1]   16/1
merits [1]   22/22
met [1]   9/8
mic [1]   2/20
Michael [11]   3/20 3/22
 4/17 4/17 4/19 5/24 6/15
 6/21 7/8 7/18 11/8
microphone [1]   21/24
might [5]   5/18 10/4 10/6
 10/11 13/5 13/12 14/21
 15/14 16/2 16/25 16/25
 18/21 23/4 23/19 23/21
Mike [10]   4/22 4/23 6/2
 6/3 6/7 8/2 8/3 8/10 9/15
 11/8
million [10]   5/6 7/4
 30/17 31/3 31/4 31/5
 31/12 32/2 32/20 34/13
mind [1]   27/14
minute [1]   25/14
missed [1]   11/13
misunderstanding [1]
 33/23
moment [2]   23/24 26/25
Monday [3]   25/10 25/17
 28/7
money [3]   9/10 18/6 34/9
months [2]   27/5 32/9
more [15]   4/2 6/15 8/25
 9/1 13/8 13/24 16/12 19/3
 19/12 19/13 23/5 23/8
 25/25 31/2 36/16
morning [6]   2/7 13/7
 21/13 23/3 29/6 30/7
most [1]   13/23
motion [10]   10/12 14/23
 19/13 20/9 20/12 28/11
 28/17 29/7 29/12 29/14
motions [10]   2/13 3/9
 10/18 13/22 16/9 17/21
 19/13 25/23 30/1 34/19
Mountain [1]   9/20
Mounted [1]   14/8
move [1]   14/2
moving [3]   2/13 26/1
 27/16
Mr [2]   16/6 30/16
Mr. [40]
Mr. Christensen [13]   8/19
 12/1 12/13 21/20 21/24
 22/9 22/18 24/6 33/8
 33/21 33/23 34/23 36/17
Mr. Christensen's [1]
 8/23
Mr. Day [7]   4/2 7/3 9/6
 9/7 10/1 16/24 19/18
Mr. Day's [4]   12/23 16/6
 17/1 17/2
Mr. Debruyckere [6]   7/17

8/6 8/14 15/4 29/18 36/13
Mr. Debruyckere's [2]
 10/3 29/13
Mr. Michael [1]   7/18
Mr. Segin [1]   9/14
Mr. Segin's [1]   9/12
Mr. Sessions [1]   31/7
Mr. Strauch [3]   12/4 13/7
 16/17
Ms. [17]   4/20 5/3 6/23
 7/1 7/7 7/8 7/11 8/7 10/2
 11/10 12/23 16/6 16/25
 17/4 19/17 24/4 27/2
Ms. Maguel [4]   4/20 5/3
 11/10 16/6
Ms. Michael [1]   12/23
Ms. Nomanmoren [10]   6/23
 7/1 7/7 7/8 7/11 8/7 10/2
 16/25 17/4 19/17
Ms. white [2]   24/4 27/2
much [8]   9/7 10/16 10/21
 16/12 23/16 26/22 26/24
 27/1
multiple [1]   4/13
my [32]   3/12 3/18 4/22
 5/19 5/24 5/25 6/12 6/18
 7/24 8/11 8/24 9/3 9/12
 9/13 9/21 10/15 10/17
 11/2 11/12 16/8 18/15
 21/12 21/16 22/19 22/22
 23/24 26/3 26/3 28/10
 34/4 34/5 38/3
myself [1]   11/13

**N**

name [1]   15/4
named [4]   3/20 3/20 6/8
 7/15
narrow [1]   17/23
national [1]   29/18
nature [1]   35/14
NC [1]   1/15
need [20]   12/3 12/5 12/7
 12/10 17/18 23/15 23/15
 23/16 23/22 24/4 24/17
 25/19 26/18 26/18 26/19
 26/19 27/7 27/9 31/15
 35/12
needed [3]   6/3 23/8 33/14
needs [3]   33/8 33/17
 33/19
negotiated [5]   3/19 3/23
 5/11 7/12 14/6
negotiating [3]   4/21
 14/11 19/19
negotiations [3]   5/16
 17/7 20/23
neither [1]   38/7
nervous [1]   7/25
never [9]   5/17 8/8 8/9
 14/4 14/12 15/7 27/14
 30/11 32/5
new [1]   6/17
next [3]   2/21 4/16 35/24
nice [1]   37/2
nine [2]   12/19 24/4
no [22]   1/4 2/8 5/10 5/14
 12/25 15/25 16/5 16/17
 22/8 24/25 27/8 27/9
 27/13 29/16 30/6 30/9
 30/19 30/21 31/18 34/24

**N**

no... [2]   35/18 35/22
Nomanmoren [15]   6/8 6/9
6/23 7/1 7/7 7/7 7/8 7/11
8/7 8/11 9/15 10/2 16/25
17/4 19/17
North [1]   16/1
not [75]
note [1]   11/12
notes [12]   7/14 8/14 8/16
8/18 8/24 10/3 15/12
29/13 36/13 36/18 36/23
38/4
nothing [2]   14/17 35/9
November [4]   10/17 11/22
25/16 26/8
now [9]   14/17 18/9 21/3
23/4 23/25 26/1 27/8
33/16 36/4
number [8]   30/4 31/1
32/11 33/8 34/20 34/23
34/24 34/25
NW [1]   1/21

**O**

objections [1]   4/15
objectively [1]   14/7
obligated [9]   3/17 3/24
5/5 6/13 6/19 8/12 9/19
9/25 28/19
obligates [1]   5/23
obligation [2]   8/25 9/1
obtained [1]   30/20
obviously [5]   11/6 14/18
16/2 27/11 28/14
occurred [2]   6/16 7/4
October [6]   1/5 26/10
26/16 27/2 27/3 29/3
off [3]   6/15 6/16 16/5
offices [1]   26/1
Official [1]   1/20
oh [3]   12/23 18/2 27/13
okay [12]   3/4 3/10 12/12
12/22 24/3 24/16 28/7
28/20 33/25 35/16 36/7
37/4
old [1]   18/1
olympics [2]   3/13 4/18
omit [2]   32/20 32/21
once [2]   24/1 24/3
one [18]   2/8 3/14 3/20
4/12 8/7 9/6 11/12 14/6
14/6 17/16 21/18 23/19
28/22 30/4 34/8 34/10
35/21 36/9
only [9]   8/3 10/14 10/24
11/1 11/5 22/22 23/1
25/20 25/23
oOo [1]   37/8
open [1]   8/11
opening [1]   13/2
opportunity [6]   13/22
14/2 16/10 17/23 22/25
25/22
Opposite [1]   17/10
order [11]   8/23 9/9 11/2
14/19 17/19 22/24 30/14
36/14 36/16 36/22 36/23
organization [1]   33/9
other [18]   2/21 3/20 7/18

10/4 10/5 11/12 11/14
14/20 14/24 15/12 15/13
16/2 16/9 23/20 27/13
29/4 29/19 32/14
otherwise [3]   14/21 27/23
38/10
Ottawa [1]   9/5
ought [4]   10/24 20/6
28/21 34/1
our [12]   5/20 11/22 26/1
29/10 33/9 33/17 33/24
34/1 34/8 34/17 34/25
36/2
out [19]   2/19 2/21 3/7
10/8 11/2 12/8 12/12
16/10 18/2 21/23 23/2
23/13 28/22 33/19 34/1
34/16 36/7 36/9 37/4
outcome [1]   38/10
outset [2]   9/22 20/2
outside [1]   20/1
over [6]   3/14 6/14 6/17
7/11 11/23 35/4
overcome [1]   14/21
owed [3]   8/8 9/11 9/16

**P**

P-R-O-C-E-E-D-I-N-G-S [1]
2/1
P.C [1]   1/14
pages [1]   38/3
paid [1]   34/11
paragraph [1]   5/5
paralegal [1]   26/3
paralegals [1]   26/5
parsing [2]   21/12 21/13
part [1]   21/5
particular [3]   18/22
18/23 24/11
parties [10]   9/18 12/18
13/25 16/10 17/8 19/23
19/25 20/23 22/23 38/8
partly [1]   21/5
partner [4]   9/3 9/12 9/13
24/22
partners [2]   34/9 34/10
party [2]   12/18 21/18
patient [1]   10/17
pay [23]   3/17 3/25 4/25
5/5 5/12 5/23 6/13 6/19
6/20 6/24 7/2 8/13 9/6
9/10 9/19 10/1 10/2 28/19
31/2 31/5 32/1 34/6 34/16
paying [1]   4/5
PDA [1]   28/10
people [3]   3/20 5/10 7/13
percent [3]   30/20 30/22
31/5
perfectly [1]   16/20
perform [12]   20/14 20/15
21/1 21/5 21/7 21/7 21/18
22/6 23/17 24/8 28/12
30/25
period [3]   4/9 5/8 11/16
person [1]   7/12
Personally [1]   25/10
persons [2]   16/22 17/16
persuade [1]   32/19
persuaded [1]   12/22
Phillip [1]   31/6
phone [1]   2/8

phrase [1]   9/24
pick [2]   25/10 25/12
PILGRIM [2]   1/19 38/12
pitch [1]   34/20
plaintiff [4]   1/4 1/14
2/23 32/22
plaintiff's [4]   20/2
30/17 30/24 32/13
plaintiffs [27]   2/5 13/15
13/19 14/3 14/5 14/9
14/10 14/12 15/14 17/19
19/6 20/10 20/22 23/17
28/12 29/21 30/4 30/19
31/2 31/3 31/12 32/7
32/16 32/23 35/3 35/5
36/6
plaintiffs' [1]   18/5
plan [1]   34/15
planning [1]   33/24
please [2]   5/22 10/19
pled [1]   16/1
point [5]   11/14 14/16
21/23 27/13 29/13
points [1]   18/22
pole [3]   6/4 6/6 6/7
Police [1]   14/8
port [2]   4/8 7/22
position [9]   5/16 6/18
6/23 8/8 9/22 9/25 12/4
14/12 18/8
positions [1]   18/10
possibility [1]   7/25
possible [2]   19/21 28/5
possibly [1]   19/22
post [1]   2/12
postpone [2]   17/24 27/12
potentially [1]   8/15
practice [1]   15/9
pre [4]   32/11 33/17 33/17
34/24
pre-existence [2]   33/17
33/17
predictable [1]   36/21
prefer [1]   27/12
prejudice [1]   36/2
preliminary [1]   32/14
prematurely [1]   12/10
prepare [1]   24/18
prepared [3]   13/2 14/4
36/13
presented [2]   12/7 16/5
presents [1]   13/22
president [2]   33/13 35/5
press [1]   18/18
pressure [1]   36/16
presumably [1]   24/2
pretrial [1]   26/21
preverbal [1]   7/19
previous [1]   35/18
previously [2]   12/19 38/6
price [1]   11/3
prior [1]   32/24
privilege [1]   32/4
privy [1]   10/18
problem [3]   17/25 27/4
28/22
proceed [1]   3/8
proceeding [1]   35/18
proceedings [3]   1/23 37/7
38/5
process [2]   15/13 18/20

P    Case 1:08-cv-02054-RMC    Document 171    Filed 07/25/13    Page 45 of 48

**produce** [3]  8/19 29/21
36/22
**produced** [4]  1/23 8/24
32/18 34/21
**production** [2]  15/12 36/2
**professor** [2]  11/24 24/16
**profits** [9]  11/2 33/25
34/3 34/4 34/8 34/8 34/12
34/16 34/17
**project** [1]  33/14
**promise** [1]  21/12
**pronounced** [1]  16/19
**pronouncing** [1]  9/4
**properly** [1]  15/8
**protected** [1]  32/3
**provide** [11]  5/22 6/1
16/10 17/22 29/15 30/10
30/17 30/22 31/13 32/20
35/8
**provided** [3]  5/25 22/25
38/4
**provision** [4]  4/24 5/1
7/9 7/10
**purely** [1]  12/15
**purposes** [1]  14/20
**push** [1]  17/14
**put** [4]  10/24 14/12 26/2
34/9
**putting** [3]  3/12 10/25
22/5

**Q**

**question** [16]  2/24 5/4
5/10 5/14 12/16 13/1 15/4
17/12 18/18 19/24 20/2
20/6 20/7 22/3 22/8 28/11
**questions** [3]  31/8 31/23
32/8
**quick** [1]  36/10
**quote** [2]  8/4 34/20

**R**

**raise** [1]  11/12
**raising** [1]  22/17
**rate** [1]  13/14
**rather** [1]  12/9
**RCMP** [28]  3/12 3/19 3/25
4/5 4/18 5/5 5/20 6/12
6/19 7/25 8/12 9/5 9/9
9/19 9/24 9/25 11/8 13/18
14/10 14/13 16/23 17/4
21/8 22/13 22/15 28/13
28/18 34/24
**read** [7]  4/3 12/1 17/8
19/18 27/8 27/9 36/18
**reading** [1]  11/9
**ready** [2]  10/20 10/21
**realize** [1]  35/13
**really** [9]  12/5 12/7
17/16 19/23 24/3 26/22
27/7 27/16 35/12
**reason** [3]  12/20 29/6
33/24
**rebut** [1]  6/12
**recall** [3]  7/3 7/6 8/17
**recalls** [1]  3/11
**recent** [1]  17/2
**recommend** [1]  22/23
**record** [6]  13/6 13/18

**recorded** [1]  1/23
**recover** [2]  10/6 20/16
**recovery** [2]  19/6 21/10
**redundant** [1]  10/5
**refused** [1]  13/18
**regarding** [1]  30/12
**related** [3]  32/10 32/14
38/7
**relating** [1]  20/5
**relationship** [2]  21/25
30/18
**relevant** [2]  30/15 32/12
**remaining** [1]  30/22
**remains** [1]  30/16
**remedies** [1]  10/6
**remember** [1]  8/17
**repeat** [1]  6/10
**reply** [1]  28/3
**Reporter** [4]  1/19 1/20
35/22 35/24
**reports** [1]  11/23
**represented** [2]  14/10
30/4
**repudiation** [5]  15/2 20/3
21/19 21/25 22/15
**requested** [2]  31/7 35/19
**researched** [1]  24/10
**reserve** [1]  14/2
**resolution** [1]  19/11
**resolve** [4]  3/3 13/24
18/20 20/7
**resolved** [3]  16/11 18/19
30/10
**respect** [8]  2/24 3/9 9/1
10/12 22/16 33/22 34/20
36/12
**response** [4]  27/18 28/14
29/22 29/24
**responsible** [2]  13/15
13/20
**result** [4]  4/1 4/6 4/8
5/7
**return** [2]  30/14 36/3
**revealed** [2]  5/14 7/17
**revealing** [1]  3/7
**review** [1]  29/21
**reviewed** [1]  8/15
**reviewing** [2]  29/17 29/20
**revise** [1]  13/18
**rhymes** [1]  16/19
**right** [23]  5/8 14/17
14/25 15/3 15/4 15/11
15/18 16/4 16/7 16/18
16/20 18/1 18/9 18/12
18/15 18/15 19/18 25/6
26/1 26/12 28/24 29/2
36/7
**rise** [1]  21/21
**risk** [1]  35/7
**ROSEMARY** [1]  1/10
**RPR** [2]  1/19 38/12
**Rule** [1]  11/20
**rules** [1]  26/20
**run** [3]  6/3 6/7 33/14
**running** [1]  6/5

**S**

**said** [9]  7/1 13/12 13/21
16/18 20/1 21/14 22/10
29/15 31/18

**salary** [1]  32/21
**Salem** [1]  1/15
**same** [8]  11/10 22/20
28/25 30/1 34/15 34/19
34/24 35/4
**sat** [1]  33/12
**save** [1]  20/7
**saw** [2]  11/12 31/7
**say** [25]  2/17 5/20 8/22
9/17 12/15 15/12 16/18
16/25 16/25 17/20 20/12
20/13 20/22 20/22 22/3
22/11 24/4 24/21 27/8
27/9 27/13 27/15 27/18
28/1 28/6
**saying** [8]  8/20 10/15
15/14 16/5 22/5 22/6 22/9
22/14
**says** [4]  12/4 12/7 33/8
33/16
**schedule** [4]  23/1 23/23
23/24 28/25
**scheduling** [1]  10/9
**SCOTT** [3]  1/16 2/6 36/15
**Second** [1]  36/17
**secure** [1]  32/12
**security** [1]  29/18
**see** [11]  2/13 10/3 12/20
13/23 20/9 29/3 30/24
32/23 32/25 35/12 37/2
**seeking** [4]  30/23 32/7
32/7 32/14
**seem** [1]  18/17
**seems** [3]  11/25 12/6
25/23
**seen** [4]  8/15 29/23 32/12
33/15
**Segin** [3]  9/4 9/5 9/14
**Segin's** [1]  9/12
**segregable** [1]  23/10
**sensitive** [1]  17/25
**sent** [3]  5/24 8/19 8/21
**separate** [3]  13/11 14/23
20/2
**September** [2]  5/18 9/8
**sequence** [1]  14/18
**sequencing** [1]  22/21
**seriously** [2]  8/25 9/1
**Sessions** [3]  31/7 33/22
34/15
**set** [3]  2/14 23/14 35/15
**settle** [1]  18/9
**seven** [1]  12/19
**several** [2]  13/12 28/4
**shape** [2]  7/9 21/22
**she** [14]  4/20 4/21 6/3
6/4 6/9 6/10 6/11 6/13
6/14 6/16 7/8 8/9 24/22
24/23
**she's** [1]  24/22
**ship** [4]  4/6 5/20 14/6
14/11
**ships** [5]  3/13 4/8 5/7
7/21 8/1
**short** [3]  3/3 11/4 11/16
**shorthand** [1]  1/23
**shortly** [1]  8/16
**should** [6]  2/14 2/14 11/4
11/16 24/21 26/10
**shove** [1]  17/14
**show** [1]  33/9

**S**

shown [1]   30/15
shows [1]   14/3
side [1]   17/16
sides [1]   25/22
sign [2]   6/1 6/5
signed [4]   3/23 4/4 30/6
 31/7
significant [1]   18/6
similarity [1]   24/11
Similarly [1]   31/1
simple [2]   4/10 32/1
simply [5]   22/23 25/11
 30/11 31/11 32/9
since [2]   17/15 18/14
sit [1]   4/12
six [2]   34/23 34/24
sleeping [1]   7/22
Sloan [1]   31/6
so [41]
soldiers [1]   7/22
sole [1]   5/10
some [10]   3/7 4/14 12/8
 15/15 18/5 27/5 33/23
 33/25 33/25 34/10
somebody [1]   2/18
somehow [1]   32/3
someone [1]   6/8
something [5]   5/1 7/14
 15/19 21/23 27/10
somewhat [1]   17/15
soon [1]   37/3
sorry [1]   16/21
sort [2]   15/15 33/4
sound [5]   15/19 16/21
 18/8 19/15 21/11
Sounds [1]   15/19
source [1]   11/21
South [1]   1/15
sovereign [1]   19/2
sovereignty [1]   15/24
sparse [1]   32/18
speak [1]   24/11
speaking [1]   16/23
spelled [1]   15/7
spoke [2]   8/9 9/13
spot [1]   10/13
stand [2]   2/20 10/24
standards [1]   16/1
start [5]   12/9 12/15 25/2
 27/4 27/6
started [2]   12/14 16/4
starts [1]   26/12
state [1]   26/3
stated [1]   38/6
statement [1]   13/2
states [8]   1/1 1/11 1/20
 13/13 24/9 24/12 24/15
 38/4
stating [2]   6/11 6/18
status [3]   1/10 2/12 10/8
stenographic [1]   38/4
still [4]   11/14 16/4 16/6
 20/25
stood [1]   24/20
STRAUCH [9]   1/14 1/14 2/5
 2/22 12/4 13/7 16/17
 16/18 16/21
streamlined [1]   29/10
Street [2]   1/15 1/18

strike [1]   5/19
stroking [1]   15/9
stuff [1]   26/21
subset [1]   36/5
subtract [1]   34/5
such [3]   5/17 18/16 33/3
sufficient [1]   14/21
suggested [1]   22/21
suited [1]   12/1
sum [1]   18/6
summary [19]   13/22 14/2
 14/5 16/7 16/9 17/12
 17/22 18/19 19/10 19/14
 19/15 20/6 20/9 20/12
 21/21 22/23 23/22 25/22
 25/25
summer [1]   27/7
support [1]   17/8
suppose [1]   2/12
sure [3]   7/21 9/4 14/15
surely [1]   15/7
surmised [1]   10/12
surprised [1]   22/19
Surprisingly [1]   7/3
swapping [1]   11/22
sweet [1]   4/10
switch [1]   26/9
switched [1]   26/15
sympathy [1]   18/5

**T**

take [16]   3/2 7/11 7/13
 8/25 9/1 9/25 10/22 11/15
 12/17 20/22 24/18 25/14
 33/4 34/3 36/9 36/24
taken [4]   4/11 9/21 38/5
 38/9
takes [1]   27/10
taking [1]   6/23
talk [5]   7/12 9/9 12/14
 36/8 37/3
talked [2]   7/6 36/6
talking [5]   7/8 9/7 21/20
 21/24 28/23
task [1]   12/12
tasked [1]   10/19
tax [6]   4/21 7/10 7/12
 8/10 13/6 22/10
taxes [31]   3/15 3/16 3/18
 3/25 4/1 4/6 4/7 4/25 5/6
 5/6 5/13 5/22 5/23 6/13
 6/19 6/20 6/24 7/2 8/9
 8/13 9/6 9/10 9/16 9/19
 10/1 10/2 13/17 13/20
 20/5 22/16 28/19
telephone [3]   35/16 35/25
 37/3
tell [2]   2/18 4/11
telling [1]   21/8
ten [4]   30/20 31/5 34/4
 34/5
tents [1]   7/22
term [2]   6/15 23/11
terminated [1]   30/18
testified [4]   7/23 17/4
 31/4 35/5
testify [1]   11/8
testimony [13]   3/22 8/9
 12/23 13/10 16/6 17/2
 17/2 17/14 19/21 31/15
 31/21 31/22 36/3

than [11]   6/15 9/1 12/9
 15/4 15/19 16/13 17/7
 19/14 21/17 24/8 31/3
thank [9]   12/11 19/3 28/9
 29/2 36/25 37/1 37/2 37/5
 37/6
Thanksgiving [8]   25/9
 25/10 25/11 25/13 25/16
 25/17 25/18 27/24
that [249]
that's [25]   2/9 2/11 6/16
 8/5 12/2 18/2 18/3 18/7
 20/19 21/2 21/5 21/6 21/8
 22/12 23/12 23/20 25/13
 27/5 27/6 27/8 28/4 29/14
 34/13 35/17 36/21
their [7]   5/7 9/21 17/8
 32/16 32/24 32/25 35/7
them [14]   3/21 5/25 6/16
 8/19 9/11 10/19 11/11
 19/21 29/25 32/15 32/15
 34/19 35/6 36/18
themselves [2]   14/12
 22/24
then [13]   4/16 6/25 11/22
 12/7 12/9 14/10 15/13
 21/8 23/21 25/11 27/5
 29/3 35/15
theories [1]   17/10
there [35]   3/2 5/10 5/14
 5/17 6/15 7/24 8/10 9/9
 10/8 11/5 12/2 14/1 15/13
 16/15 16/17 16/22 16/24
 17/7 17/14 17/17 19/10
 20/1 20/2 21/17 22/3 22/7
 22/15 28/3 29/9 30/9
 30/11 33/3 35/18 35/21
 35/22
there's [9]   14/17 22/6
 22/8 22/21 26/21 26/22
 26/22 26/24 26/25
therefore [2]   28/13 36/23
these [18]   4/25 6/19 6/20
 6/24 7/2 8/8 9/10 9/16
 9/19 22/20 28/19 30/1
 33/5 34/3 34/3 34/18
 34/19 36/18
they [33]   7/14 7/18 7/20
 11/11 13/19 14/4 15/14
 16/11 18/16 19/6 20/13
 20/14 20/14 20/15 21/1
 22/11 26/24 27/12 28/12
 30/5 30/6 30/20 30/21
 30/24 31/16 32/17 32/20
 32/21 33/1 34/12 35/3
 35/10 36/18
they're [1]   8/20
they've [2]   20/15 20/24
thing [6]   11/12 14/14
 34/14 34/15 34/25 36/10
things [8]   11/14 18/1
 19/12 19/20 23/14 23/19
 29/19 34/8
think [25]   3/2 3/5 10/21
 11/4 12/3 12/12 12/16
 13/21 14/1 16/4 16/7 16/8
 16/24 18/6 19/16 22/17
 24/6 24/25 25/5 25/19
 26/2 26/10 30/10 34/23
 36/16
thinking [1]   26/6

**T**

thinks [1]   33/24
third [2]   30/12 30/12
Thirty [1]   24/19
this [67]
those [13]   4/22 5/6 7/21
  8/16 8/24 10/1 10/2 18/23
  19/20 23/19 25/20 33/19
  36/14
though [3]   9/25 16/4
  21/11
thought [3]   18/1 19/19
  32/16
thousand [1]   32/21
three [7]   5/15 7/16 25/25
  26/6 28/2 33/8 34/25
threw [1]   4/21
through [1]   27/17
throw [1]   10/8
time [22]   3/3 9/8 10/21
  10/24 11/10 11/16 13/12
  17/6 18/7 22/17 22/21
  23/5 26/11 26/18 26/19
  26/19 26/19 27/7 27/17
  31/2 32/17 38/5
times [1]   4/14
timing [1]   22/4
tiny [1]   26/25
today [5]   13/3 26/1 26/3
  35/12 35/14
together [1]   34/9
told [8]   7/3 13/19 29/25
  30/6 30/7 31/16 34/19
  35/20
too [3]   18/4 18/15 28/14
took [7]   4/16 5/16 6/14
  6/17 8/8 9/12 15/9
tort [1]   15/22
tortious [2]   10/7 15/15
transcript [6]   1/10 1/23
  9/13 35/18 35/20 38/3
transcription [1]   1/24
trial [39]
tried [3]   11/6 18/14
  18/16
trouble [1]   12/24
true [2]   20/24 38/2
trust [1]   36/14
trusty [1]   28/10
try [4]   13/23 17/12 20/11
  22/1
trying [3]   17/19 22/2
  31/11
turn [2]   20/4 33/5
turns [1]   18/2
two [8]   3/20 5/10 9/3
  9/19 11/14 11/23 23/14
  23/19

**U**

U.s [1]   15/19
ultimate [1]   19/11
ultimately [2]   10/13
  17/22
unable [1]   28/12
uncertainty [1]   5/21
under [4]   4/19 15/1 21/9
  24/9
understand [12]   3/6 11/18
  11/19 14/15 14/16 19/20

understanding [6]   3/24
  4/24 17/9 21/16 25/23
  30/11
undisputed [1]   13/8
undoubtedly [2]   23/4
  36/21
unequivocally [2]   3/22
  13/19
unfolding [1]   22/20
unfortunately [1]   6/2
uniforms [1]   9/20
UNITED [7]   1/1 1/11 1/20
  24/9 24/12 24/15 38/4
unless [1]   18/10
unnecessary [1]   19/8
unsuccessful [1]   18/19
until [5]   12/6 23/23
  27/24 32/8 34/11
up [8]   4/21 6/3 6/5 6/7
  24/16 24/20 26/7 35/15
upon [1]   3/18
ups [1]   9/24
us [9]   2/8 5/22 22/12
  25/8 26/2 30/13 32/8
  33/13 36/9
usually [1]   28/4

**V**

vacation [3]   6/2 6/21
  6/22
vague [1]   36/19
Valentines [1]   27/20
Vancouver [1]   5/8
various [1]   17/8
veil [1]   22/7
versus [1]   2/3
very [19]   3/3 3/7 4/10
  7/23 10/1 10/16 10/17
  11/4 11/16 14/18 16/10
  17/21 21/14 21/15 27/16
  28/18 30/1 33/7 33/7
vetting [1]   28/4
vice [2]   33/13 35/5
vice-president [2]   33/13
  35/5
Victoria [1]   7/16

**W**

wait [3]   12/6 21/4 23/23
waiting [2]   11/24 12/6
want [15]   2/17 11/14 12/3
  20/10 21/23 22/23 23/16
  23/20 23/23 24/23 26/9
  27/9 32/9 33/4 36/9
wanted [2]   11/12 36/19
wants [5]   3/8 10/16 14/2
  24/20 34/7
was [56]
Washington [3]   1/5 1/18
  1/22
wasn't [3]   6/5 19/17
  35/21
water [1]   7/19
way [6]   2/21 7/9 13/23
  21/8 21/22 26/2
ways [1]   18/13
we [102]
we'll [2]   11/23 28/1
we're [15]   5/20 10/4

we've [5]   31/7 32/12
  32/18 34/19 34/20
wearing [1]   9/20
week [1]   30/18
weekend [2]   25/11 25/13
weeks [6]   5/15 7/16 9/3
  11/23 25/7 28/2
well [11]   10/1 12/1 15/7
  16/15 19/9 20/19 22/3
  25/8 27/8 31/14 36/21
went [4]   6/25 7/6 9/3 9/4
were [28]   2/13 5/6 9/16
  10/20 11/7 13/15 13/19
  14/3 19/12 22/13 22/20
  28/12 30/6 30/21 31/9
  31/23 32/7 32/11 32/16
  32/17 33/24 34/7 34/9
  34/12 34/12 34/25 35/13
  35/20
weren't [1]   7/22
what [58]
what's [2]   21/25 29/22
whatever [1]   13/11
when [22]   3/23 4/3 4/19
  4/20 5/16 5/25 6/7 6/21
  6/22 7/24 8/6 10/21 10/23
  17/14 25/24 27/11 30/6
  30/21 32/6 32/7 35/2
  35/19
where [4]   2/24 3/6 10/13
  12/4
wherewith [1]   33/1
whether [26]   2/13 2/25
  3/16 3/18 6/22 6/25 7/4
  7/6 8/12 9/15 14/19 14/20
  17/17 19/17 22/15 23/8
  23/17 28/11 28/12 28/18
  30/24 33/1 33/9 33/19
  35/1 35/10
which [17]   3/12 8/2 13/16
  15/12 20/24 20/24 20/25
  23/4 25/6 25/15 25/16
  25/17 31/12 36/3 36/4
  36/23 38/8
whichever [2]   2/16 28/7
while [2]   15/9 21/23
white [2]   24/4 27/2
who [14]   5/11 6/3 7/12
  7/14 8/7 8/8 9/6 9/24
  13/12 19/17 19/18 26/20
  33/13 34/10
whole [2]   3/11 3/13
whose [1]   36/13
why [9]   16/11 27/18 28/6
  30/15 31/15 35/15 36/3
  36/4 36/5
will [23]   3/2 3/8 4/11
  8/22 8/25 10/9 10/11
  10/12 10/13 10/14 11/15
  18/7 19/13 23/4 25/14
  25/14 25/22 28/17 29/3
  33/7 35/15 35/24 37/2
willing [1]   6/5
win [6]   20/25 23/19 23/21
  27/13 34/2 34/3
wings [2]   11/24 12/6
Winston [1]   1/15

**W**

Winston-Salem [1]   1/15
withheld [1]   35/6
within [4]   6/17 9/24
 24/12 24/25
without [5]   6/5 22/2
 24/23 28/22 36/2
witness [2]   4/13 11/17
witnesses [7]   10/24 10/25
 24/2 26/21 31/8 31/23
 32/13
won [1]   34/12
word [1]   8/11
words [2]   14/5 21/12
work [5]   4/18 17/13 18/17
 25/13 34/13
worked [5]   4/17 6/3 7/5
 7/17 13/12
works [1]   2/21
World [3]   14/8 32/6 32/19
worry [1]   22/10
would [53]
Wow [1]   25/4
write [4]   19/19 26/19
 27/9 27/10
writing [1]   27/17
written [9]   5/22 6/1 6/4
 13/10 13/13 19/17 30/9
 30/11 31/6
wrong [3]   11/11 16/18
 21/14
wrote [2]   6/11 6/18

**Y**

years [2]   13/13 17/3
yelled [1]   26/3
yellow [1]   11/13
yes [14]   4/10 5/9 15/5
 15/11 15/16 16/15 17/1
 17/24 24/5 26/14 29/1
 29/5 29/8 31/20
yesterday [1]   2/15
yet [4]   8/15 16/3 21/15
 26/18
you [103]
you'd [1]   27/23
You'll [1]   22/19
you're [6]   12/22 21/20
 22/6 26/17 27/16 36/4
your [53]

**Z**

zinger [1]   4/12