UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


CRUISE CONNECTIONS CHARTER    :
MANAGEMENT 1, LP, et al,      :
                             :          Docket No. CA 08-2054
            Plaintiff,        :
                             :            Washington, D.C.
                             :      Thursday, November 8, 2012
                             :              11:00 a.m.
ATTORNEY GENERAL OF CANADA,  :
et al.                        :
            Defendant.        :
---------------------------x



TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE ROSEMARY M. COLLYER
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiff:        JACK M. STRAUCH , Esquire
                          JESSIE FONTENOT, JR., Esquire
                          Strauch, Fitzgerald & Green, P.C.
                          118 South Cherry Street
                          Winston-Salem, NC 27101


For the Defendant:        SCOTT H. CHRISTENSEN, Esquire
                          Hughes Hubbard
                          1775 I Street
                          Washington, DC  20006-2401


Court Reporter:           CRYSTAL M. PILGRIM, RPR
                          Official Court Reporter
                          United States District Court
                          District of Columbia
                          333 Constitution Avenue, NW
                          Washington, DC  20001


Proceedings recorded by machine shorthand, transcript produced
by computer-aided transcription.

1                    P-R-O-C-E-E-D-I-N-G-S

2          THE DEPUTY CLERK:  Civil action 08-2054, Cruise

3   Connections Charter Management versus Attorney General of

4   Canada, et al.

5          For the plaintiffs Jack Strauch and Jessie Fontenot.

6          For the defense Scott Christensen.

7          THE COURT:  Good morning everyone.  This is Judge

8   Collyer, how are you?

9          MR. CHRISTENSEN:  Good morning, Your Honor.

10         MR. STRAUCH:  Your Honor, how are you?

11         THE COURT:  Good, thank you very much.

12         Since we are talking on the telephone there are a few

13  rules we have to follow.  We have to be exceptionally polite

14  and not talk over each other, not one of you can be heard at

15  all, but the Court Reporter can't get it either.

16         The other is that you really have to talk into the

17  microphone or into the telephone or else you can't be heard

18  clearly.  So let's go at this.

19         We are picking up where we left off which is to discuss

20  the, what I think I called an oral motion to compel by the

21  chart prepared to argue that there are insufficient documents

22  produced by the plaintiff.

23         The first one is a final copy, signed copy of an

24  agreement with AA Worldwide, and do I understand or remember

25  correctly that Cruise Connections says well, there never was

 1  such an animal?

 2        MR. STRAUCH:  Your Honor, this is Jack Strauch.

 3        That is correct.

 4        THE COURT:  Okay.  So if there never was such an

 5  animal, there can't be one produced.

 6        Does the defendant, do the defendants agree with that?

 7        MR. CHRISTENSEN:  Yes, Your Honor.  This is Scott

 8  Christensen.

 9        So that request is off the table.

10        THE COURT:  Okay.  The next one documents, I thought

11  so, but I just thought we'd start at the beginning the simplest

12  thing that we already all agreed to.

13        Documents and communications showing involvement with

14  Dennis Laliberte.  I don't know if I'm pronouncing the man's

15  name correctly, forgive me.  He's probably actually an American

16  and calls it Laliberte or something.

17        How does one pronounce his name?

18        MR. CHRISTENSEN:  It's Laliberte, Your Honor.

19        THE COURT:  Laliberte.  Well silly me, all right.

20        Now, do I understand that the response from Cruise

21  Connections is all dealings with Mr. Laliberte were prior to

22  the establishment of Cruise Connections Charter Management and

23  so therefore, the such documents are not within its control?

24        MR. STRAUCH:  That's partially correct, Your Honor.

25  This is Jack Strauch.

1    The response from Cruise Connections is two-fold.  First

2 of all, you are correct that all of the documents with

3 Laliberte are a preformation of Cruise Connection.

4    The Court already ruled April 24 of this year on an

5 earlier motion to compel the formation documents and that those

6 documents were not relevant and not discoverable.

7    Now the defendants are arguing that they want to see

8 these documents because they think they will shed light on

9 whether Cruise Connections was able to obtain financing to pay

10 for the ships which I thought, if we might have gotten to ckck

11 at the in person hearing strikes me as, as a strange argument

12 given that on October 3 Mr. Christensen and I sat together

13 during the deposition of a man named Tom Seaman who is the

14 Vice-president of Commercial Financial Services at the Royal

15 Bank of Canada.

16    And Mr. Seaman explained that the Royal Bank of Canada

17 provided financing to Cruise Connections.  We actually marked

18 it as an exhibit in his deposition, the financing agreement.

19 And Mr. Seaman explained how the financing worked and that the

20 RCMP was going to pay 44 million dollars to Cruise Connections

21 before Cruise Connections was required to pay, I think it was

22 27 million dollars, a much smaller number, to the Cruise Lines

23 for the cruise fair and that was all going to be transacted and

24 funded through RBC.

25    So the argument what went on with Cruise Connections and

1  Laliberte even before Cruise Connections was formed to get

2  financing is a hollow argument because everybody knows we got

3  financing.

4          THE COURT:  Okay, what is the response you have, sir?

5          MR. CHRISTENSEN:  I think that overstates the record,

6  Your Honor.

7          In April of this year when we spoke with Your Honor you

8  agreed that if plaintiffs could never have carried through with

9  the project for lack of financing, then the documents in

10  support of that would be relevant.

11          Your Honor did deny without prejudice the request for

12  these documents subject to the discovery that would be taken,

13  and it has been taken in the depositions.  The depositions

14  showed that Cruise Connections had been planning on receiving

15  20 to 16 million dollars of financing until it disappeared a

16  week before the bid was submitted and Cruise Connections both

17  formed itself and submitted the bid at exactly the same time.

18          So the argument that Cruise Connections didn't have any

19  documents before the bid was submitted is purely because it

20  didn't exist until the bid was submitted.  But there was,

21  there's no question that there ought to have been documents

22  estimating their cost and their profits in advance of

23  submitting the RFP and the estimate of their costs and profits

24  go to the heart of the case.

25          THE COURT:  Well, except estimates of their costs and

1   profits in anticipation of submitting RFP are documents and

2   communications with Mr. Laliberte I would agree.

3          I mean, it depends on what you want, but if you want

4   documents with Mr. Laliberte in order to support the argument

5   that there was insufficient financing or lack of financing, the

6   fact that the financing fell apart let's say four days before

7   the bid was submitted and then was reconstructed five days

8   later before the bid was accepted doesn't matter, does it?

9          MR. CHRISTENSEN:  It does, Your Honor, because the

10  reconstructed would be generous.

11         The supposed financing that Mr. Strauch is talking about

12  was a ten percent letter of credit which on its face said could

13  never be drawn down upon any circumstances and the dealings

14  with the Royal Bank of Canada at the deposition Mr. Strauch

15  mentioned, the Vice-President of the Royal Bank of Canada

16  acknowledged that if the documents had been signed were based

17  on misrepresentations then that would have adversely effected

18  their providing financing in the first place.

19         THE COURT:  Well, I understand that but that is

20  totally conjecture isn't it?  Because I mean, I know the

21  argument that you're making but in fact, none of those things

22  ever occurred because there was an intervening event.

23         I mean, you never put them to the test so-to-speak and

24  so whether had you put them to the test and Cruise Connections,

25  and I will for these purposes don't lose heart, Mr. Strauch,

1  give full credit to the argument that's being made by

2  Mr. Christensen that let's say the contract was awarded and

3  then Cruise Connections, failure to give full information or

4  otherwise to the Royal Bank of Canada called it -- caused it to

5  pull its promised financing, well then they'd be unable to

6  perform.  Even if before the contract were awarded that had

7  happened, you would have an argument.  But none of that

8  happened.

9       Maybe if they knew, maybe they would have pulled the

10 financing and maybe then Cruise Connections would have been

11 unable to perform.  But that didn't happen because before any

12 of that happened the contract bid was pulled back and

13 reformulated.

14      I just don't see that your legal argument -- well, I

15 understand completely the argument you want to make, but I

16 don't see how you can make that argument with this sequence of

17 facts.  That's what you really have to explain to me because I

18 don't get there.

19      MR. CHRISTENSEN:  I think I'm not sure that the

20 sequence of facts is straight but maybe I'm misunderstanding.

21      The Cruise Connections lost the ability to finance this

22 within days prior to submitting the RFP.

23      THE COURT:  Lost it from whom?

24      MR. CHRISTENSEN:  From their relationship with

25 Mr. Laliberte.

1          THE COURT:  Right.

2          MR. CHRISTENSEN:  They were able to come up with a,

3    what is referred to as a letter of credit for ten percent of

4    the financing which was required to submit the bid.

5          That letter of credit on its face states that it could

6    never be drawn down upon and would expire two months later.

7    And the deposition testimony is that Cruise Connections agreed

8    to pay dollar per dollar the five million dollars on the face

9    of that letter of credit in order to obtain it.

10          The finance that Mr. Strauch is referring to for the

11   remaining ninety percent was negotiated subsequently in

12   September, October of 2008.  That also supposed financing was

13   contingent on certain representations made to the bank which we

14   think the evidence shows beyond dispute were misrepresentations

15   to the bank.

16          What we're trying to understand is both what Cruise

17   Connections thought its costs and profits were going to be

18   before the bid was submitted and afterwards because we have

19   very, very sparse documentation submitted to the Royal Bank of

20   Canada in very significantly over a short period of time.  When

21   we had asked for the underlying documents we had been told that

22   it merely hinged on conversations with a board agent and that

23   there are no underlying documents.

24          I want to understand and we've been told that we cannot

25   get any of the documents prior to the submission of the bid

1  that would show estimated costs, estimated profits so we can

2  have some understanding of what Cruise Connections thought,

3  what it was representing to other parties before it submitted

4  the bid so that we can both understand the basis for Cruise

5  Connections' claim for damages.

6         THE COURT:  Well, you see you're talking about two

7  different things here.  And that's why it's hard to make any

8  sensible determination and you shift from the beginning of your

9  statement to the end.

10        You start with the argument that there was impossibility

11 of performance because they didn't have financial wherewith all

12 and that's why you need this information.  And you end with the

13 statement well, we really need to understand their damages and

14 that's why we need information on their cost and profit

15 estimates.

16        The second point is entirely different from the first.

17 And if your issue is they couldn't perform at all and so

18 therefore we win, no matter how badly we might have acted, I

19 don't see how you can put that together under the sequence of

20 events as I understand them because of the conjectural nature

21 of your argument.

22        If your argument is, however, Judge, what we need to

23 know is what did they think they were going to make in profit

24 and how much money did they think it was going to cost them to

25 do it so that we can evaluate their damages, that's a different

1    issue.  That seems to me to be, that's an entirely different

2    kettle of fish and Mr. Laliberte in terms of what he was

3    willing to do or not do becomes totally irrelevant.  What

4    Cruise Connections or its antecedent said to Mr. Laliberte may

5    be relevant depending on who was speaking and who ended up

6    being Cruise Connections and all that sort of stuff.

7         Do you see how you're in, I mean, it was a very fluid

8    situation which must be driving you crazy, but it was.  And so

9    you've got to tell me what it is you really want this for.

10   What information are you looking for, for what reason, then I

11   can figure out how to say okay, this is what they have to do.

12         MR. CHRISTENSEN:  It's for both reasons Your Honor

13   articulated.

14         THE COURT:  Okay.  I don't understand and you have to

15   explain further to me how you think that there is an argument

16   to be made that there was insufficient financing and so

17   therefore impossibility of performance without relying on

18   conjecture.

19         If this had happened, then this would have happened.

20   Yes, the Royal Bank said it would give the money, but the Royal

21   Bank also said, well if we'd known that was true, we wouldn't

22   have given the money but they didn't know that was true, et

23   cetera, et cetera, and it was never tested contemporaneously.

24         Do you follow me?

25         MR. CHRISTENSEN:  No, I understand Your Honor, and I

1  think that's why if this were a purported argument say on

2  summary judgment then it would not be, it's not a summary

3  judgment question.  It would be a trial question.  The --

4         THE COURT:  No, it's not a trial question.

5         The question is is it relevant?  I mean, what I'm trying

6  to figure out is whether or not the discovery that you say you

7  want which predates Cruise Connections' existence,

8  establishment, whatever you want to say, and relationship with

9  somebody who is no longer related, we all know Mr. Laliberte

10  was involved and then pulled out.  Well, there you got that.  I

11  don't know what else you need from that except he was and he

12  wasn't.

13         Then you know because you've taken the deposition that

14  the Royal Bank of Canada, right.

15         MR. CHRISTENSEN:  Yes.

16         THE COURT:  Royal Bank of Canada did promise to

17  advance money under a scenario whereby Cruise Connections would

18  get paid from, get money from the bank before such time as

19  Cruise Connections had to pay the shipping companies.

20         Now at least I'm taking that for what Mr. Strauch said

21  it was.  So you've got those two pieces of information.  So

22  where in that sequence do you find proof of an inability to

23  perform such that would excuse your clients argued

24  non-performance?

25         MR. CHRISTENSEN:  I think the reason we're after

1  these documents, Your Honor, is to understand their own

2  estimation of their costs.

3          THE COURT:  Well, that's now you're back to the

4  second point.  If you want to understand costs and profit

5  things, I think that's a question of damages and that's, you

6  know, we got to talk about that.

7          If that's what you want, we have to talk to Mr. Strauch

8  and say okay, this is a very legitimate issue for discovery.

9  How did you estimate your costs and how did you estimate your

10 profits and whatever documentation you have on that large or

11 small has to be shared.  But the estimate, I don't remember,

12 I'm sorry gentlemen, the case is too old for me to have

13 retained the detailed recollection.  I need to be able to

14 remember who the real people were before Cruise Connections was

15 actually formed and the bid submitted.

16      Were those the same people who are in Cruise Connections

17 or not?

18          MR. CHRISTENSEN:  They are, Your Honor, minus

19 Mr. Laliberte.

20          THE COURT:  Okay.  So then before the bid was

21 actually prepared somebody must have figured out we're going to

22 make money on this.  We're going to make more than a penny.

23 We're going to make enough money to pay our salaries and pay

24 our groceries or something.

25          Now Mr. Strauh, what kind of documentation -- I'm sorry,

1    it's not Strauh it's Strauch.

2             MR. STRAUCH:  Rhymes with cow.

3             THE COURT:  Strauch, thank you.

4        What kind of documentation is there that either predates

5    the bid or that was submitted to the Royal Bank of Canada that

6    would help the defendants understand the claim for damages or

7    how to evaluate the claim for damages?  That is a perfectly

8    arguable subject, I hope you agree.

9             MR. STRAUCH:  I do agree and this is the first time

10   I've heard that defendants want the Laliberte documents for

11   some purpose related to damages rather than the limited

12   purpose. I think that Mr. Christensen is clear that he can't

13   support, is going away from it that somehow undoes financing

14   that was given to Cruise Connections months and months after

15   Laliberte was out of the picture.

16       But with respect to your question, Your Honor, we have

17   produced the estimates provided to the bank, many of them that

18   lists what our anticipated expenses would be.  Mr. Christensen

19   has seen those, he's questioned my clients about them in

20   deposition.

21       With respect to the other part of your question was what

22   exists preformation of Cruise Connection.

23             THE COURT:  No, no, preformation of the bid.

24             MR. STRAUCH:  Right.

25             THE COURT:  Which may or may not have been

1   preformation of Cruise Connections.

2        But what I mean is the analysis that went into the bid.

3   There has to have been some analysis.

4        MR. STRAUCH:  What I was going to say, Your Honor, is

5   that I don't know as I sit here what documents, if any, in the

6   Laliberte era discuss anticipated profits or anticipated costs.

7   I just don't know.

8        THE COURT:  Okay, well look and see what you have

9   because whether the information and the dealings with

10  Mr. Laliberte I don't know if you have any sort of

11  confidentiality agreement or trade secret or whatever with

12  Mr. Laliberte.  That is a separate issue for whether or not any

13  communications with him needs to be produced.

14       What he said is not relevant, but what those remaining

15  in Cruise Connections on whose names the bid was prepared,

16  whether your names are in the company's names, the people who

17  prepared the bid.  We need to know, defendants need to know

18  what they thought they were going to have to spend and what

19  they thought they were going to make as a result of this bid.

20       MR. STRAUCH:  I think that's fair I do and like I

21  said, that's the first time I've heard the purpose of seeking

22  Laliberte documents.

23       THE COURT:  So how long do you think that it will

24  take you to get back through all that stuff to be able to

25  identify what documentation you might have to produce to

1  defendants?

2      MR. STRAUCH:  I have an attorney here, Mr. Jessie

3  Fontenot and I'm trying to get an estimate.

4      Probably a couple of weeks, Your Honor.

5      THE COURT:  All right.  Let's go on to the next one

6  seeking the contract communication or other documents relating

7  to John Sessions and financing the request to the RFP.

8      What is the RFP?

9      MR. CHRISTENSEN:  The response, the request for a

10  proposal from the Government.

11      THE COURT:  Oh, oh, I know what an RFP is.  I thought

12  we were talking about a bank, sorry.

13      MR. CHRISTENSEN:  It's an acronym.

14      THE COURT:  Right.  Okay.  Who is John Sessions?

15      MR. CHRISTENSEN:  John Sessions is the person who

16  from the deposition testimony it was explained provided a

17  supposed letter of credit for five million dollars, technically

18  five million fifty-seven thousand five hundred dollars that

19  would represent ten percent of the financing necessary for this

20  project and that letter of credit for that amount was required

21  to submit the bid.

22      One of plaintiffs partners and plaintiffs CFO testified

23  that they agreed to pay Mr. Sessions dollar for dollar that

24  five, those five million dollars back in exchange for that

25  letter of credit and that cost was revealed for the first time

1  in these depositions and could go, could go straight to

2  plaintiff's claim for lost profits.

3          THE COURT:  Well it, unless there's a contrary

4  argument that they didn't owe it back, five million dollars, it

5  certainly could, but in fact, if it's a letter of credit no

6  money was actually paid, right?

7          MR. CHRISTENSEN:  According to this that was the, why

8  I got the answers that I got from Michael Sloan and Phillip

9  Sloan that they had agreed to pay dollar for dollar.

10         THE COURT:  Yeah, but it never got actually called

11  on.  A letter of credit is just a promise.  I mean, they needed

12  to be able to submit something that said, yeah, yeah, we have

13  ten percent of the money right here in our hip pocket with the

14  bid so they submitted a letter of credit in the amount of five

15  million dollars.  But the contract never really proceeded.

16      Did they ever call on Mr. Sessions to actually provide

17  any money on that letter of credit?

18         MR. CHRISTENSEN:  No, Your Honor, but I may not have

19  explained it clearly enough.

20      Whether or not it was ever drawn down upon, plaintiffs

21  agreed to pay Mr. Sessions dollar for dollar five million

22  dollars to get that letter of credit.  So they owe Mr. Sessions

23  to this day some amount of money.

24      I asked questions about this agreement and about what is

25  still owed and plaintiffs were not, Mr. Sloan was not sure when

1  Mr. Sessions was to be paid and when I asked how much, he was

2  instructed not to answer on the basis of attorney client.

3          THE COURT:  Right, right.

4      So your argument is from this that whatever the

5  anticipated profit would be it needs to be at least reduced by

6  five million dollars because that's what they owed

7  Mr. Sessions?

8          MR. CHRISTENSEN:  Yes.

9          THE COURT:  Okay.  So you have that information

10 already, right?  So what is it you want now?  What is it you

11 haven't gotten?

12         MR. CHRISTENSEN:  I want to understand the terms of

13 the agreement which there is a written agreement according to

14 Phillip Sloan for what was owed and how it was to be paid.

15         THE COURT:  Nobody has ever shown you a written

16 agreement?

17         MR. CHRISTENSEN:  No.  I've asked, no.

18         THE COURT:  Okay, do you have a written agreement,

19 Mr. Strauch?

20         MR. STRAUCH:  Yes.  Your Honor.

21     What is going on here is that Mr. Christensen simply

22 does not understand that Mr. Sessions to the extent he is

23 entitled to any money at all, and I will let the Court know and

24 it probably comes as no surprise to the Court that there is in

25 their discussions with Mr. Session's counsel whether or not

1  he's entitled to anything.

2       But to the extent that he is entitled to anything, he is

3  entitled only out of any profits that Cruise Connections would

4  have earned on the deal but now that we're in litigation, out

5  of anything paid by RCMP on judgment resolution of the case.

6       This is much like if I was to say to my friend Joe, Joe

7  I have just won a contract.  When I get paid on that contract I

8  will give you $5.  The person who owed the money on the

9  contract is not entitled to the $5 because after I get it, I'm

10  going to give it to Joe.

11       And so what CCM posed if anything, if anything to

12  Mr. Laliberte in no way effects what CCM Cruise Connections is

13  entitled to get by way of damages in this case.   If

14  Mr. Laliberte is owed anything he is -- Mr. Sessions is owed

15  anything, he is owed money only out of and after my folks

16  recover from the Government of Canada.

17            THE COURT:  Well, okay.

18       I can follow that logic.  I assume that is in logic that

19  is not quite clearly stated in language as you put it in a

20  contract that is behind the letter of credit.  The contract has

21  been sought and you have not produced it.

22       What is the answer to not giving the defendants the

23  contract itself?

24       MR. STRAUCH:  It has absolutely nothing to do with

25  whether or not, what the amount of damages that the defendants

1   have to pay to Cruise Connections.

2          THE COURT:  Well, okay.  I assume for present

3   purposes that because this is what's going on right now that

4   Mr. Christensen doesn't quite credit that and I do.  Okay.  So

5   it has nothing to do with it because in fact, no money is owed

6   to Mr. Sessions unless and until Cruise Connections makes a

7   profit from this contract.  At the moment, they haven't

8   accomplished that yet.

9          Mr. Christensen doesn't have to trust you on that point,

10  though.  And he wants to say, wait, wait, if they owe five

11  million dollars to somebody else, we get to deduct that from

12  their profit.

13         So the only way I can see that you can rebut his

14  argument and turn him away from it is to show him the document.

15  Whether you show him the complete document, whether you want to

16  redact parts of the document, I don't, I leave to you to figure

17  out what privilege or otherwise might apply.

18         But it seems to me that the terms you just described are

19  very relevant to the defendant's position and therefore

20  discoverable.  If you are right, and Mr. Christensen has

21  misunderstood the nature of the deal with Mr. Sessions, then

22  he's just going to have to sit down and be quiet about it.

23         You accept that don't you, Mr. Christensen?

24         MR. CHRISTENSEN:  I do, Your Honor.

25         THE COURT:  Yeah.  But I think that, Mr. Strauch, you

1   have to at least show him even as I say, even in redacted form,

2   and we can argue later if somebody thinks it's overly redacted,

3   the specifics of the agreement that reflect that Mr. Sessions

4   would be repaid from profits.

5        If he is to be repaid from profits, then I agree with

6   your analysis that first we have to decide whether there would

7   be any if you had, you know, if the contract had continued the

8   way it was negotiated.

9             MR. STRAUCH:  Okay.

10            THE COURT:  Okay.  All right, let's go on to the next

11   one.

12        All projection documents provided to potential investors

13   are to seek financing.  This is the same point isn't it that

14   you just want to understand cost and profits projections.

15            MR. CHRISTENSEN:  Yes, Your Honor.  There were two

16   such documents described as preliminary in the depositions that

17   contain either estimates of costs and profits prepared by

18   Cruise Connections in order to convince investors to provide

19   them with financing.

20        I want to understand if there are any other such

21   documents in which the partners of Cruise Connections estimated

22   what their costs and profits would be.

23            THE COURT:  Well, what Mr. Strauch said the last time

24   was that they had produced everything they have.  I have now

25   told him he has to go back and look at whatever documentation

1   might have existed prior to the bid on which the bid itself was

2   based.  So that there will be more than here than you've gotten

3   so far.

4        But in terms of the financing documents to the Royal

5   Bank of Canada or elsewhere, are there any others, Mr. Strauch,

6   that have not been produced, other than the Laliberte era?

7             MR. STRAUCH:  No, Your Honor.

8             THE COURT:  So you have what there is.  It was all

9   done very casually.

10            MR. STRAUCH:  It was all done very quickly.  The

11  period of time between Laliberte and when he was not going to

12  appear with the finance and my folks hunting down other

13  financing was very short.  Probably why it was explained as

14  preliminary but what we produced is what we have.

15            THE COURT:  Okay.  Now we're up to number 6.  All pre

16  first RFP communications or other documents relating to the

17  draft RFP concerning cost estimates, communications with Cruise

18  Lines in attempts to secure financing.

19        Now, cost estimates and attempt to -- wait a minute.

20  Communications with Cruise Lines and attempts to secure

21  financing before the first RFP, that was all in the Laliberte

22  era?

23            MR. CHRISTENSEN:  It's all in that era, Your Honor,

24  and your request of Mr. Strauch to go back and look for these

25  documents I think addresses this request as well.

1          THE COURT:  Okay.  What about documents sent to or

2  from Cruise Connections to or from Cruise Lines or others

3  regarding the second RFP.

4       When was the second RFP?

5          MR. CHRISTENSEN:  In November of 2008 after this,

6  after the RCMP terminated the agreement with Cruise

7  Connections.

8          THE COURT:  Okay.  I just wanted to make sure that I

9  had the second RFP correctly identified.

10      All right, and what is the relevance of these documents

11 if Cruise Connections was cut out of participating in the

12 second RFP?

13         MR. CHRISTENSEN:  Cruise Connections, Your Honor,

14 sought to participate with Cruise Lines in the second RFP.  We

15 learned this only from documents produced from World Caribbean

16 Cruise Lines which included e-mail communications from Cruise

17 Connections partners asking to partner with the Cruise Lines

18 such that Cruise Connections would serve as the Cruise Lines'

19 agent and those communications included the projections of

20 costs and profits for executing the second RFP.

21      Those documents were responsive to our requests.  They

22 should continue to exist in plaintiff's files because they were

23 documents created after this litigation began.  So they should

24 have been preserved.

25         THE COURT:  But I hate to keep pressing you I'm

1    sorry, Mr. Christensen, I sound rude.  But what difference does

2    it make what the cost and profit estimate was by Cruise

3    Connections if it became, if it were accepted as an agent for a

4    Cruise Line instead of presenting or doing the, performing the

5    contract in the way that it had initially proposed?  You're

6    adding a layer and presumably putting on additional cost or at

7    minimum cutting profit.

8         So I'm not quite sure if the second RFP presents itself

9    in a way that Cruise Connections asks well to Royal Caribbean

10   you are the only one that can bid but we can be your agents and

11   take care of this for you.  Isn't that a different cost

12   structure, profit structure than in the first contract, first

13   RFP which is the one on which the suit is based?

14        MR. CHRISTENSEN:  Not if the projected costs are

15   performing the contract.  The overall contract would speak to

16   what the cost and profit balance would be at the end and the

17   documents that we've seen show what, what Cruise Connections

18   thought performance of the overall contract would cost.

19        THE COURT:  Okay.  And is it different from what you

20   have before?

21        MR. CHRISTENSEN:  Yes.  Especially because if the

22   contract can still be performed with a profit both by the

23   Cruise Lines and Cruise Connections with this additional layer

24   for some of the same dollar amounts that effects the, that can

25   be relevant to what the cost estimates were and profit

1  projections were on the first RFP because the, at the end of

2  the day the Government of Canada wanted to, you know, have the

3  same number of ships and beds for the olympics in the first RFP

4  as in the second RFP.

5          THE COURT:  And what's your response, Mr. Strauch?

6          MR. STRAUCH:  Well, I can shortchange it.  I do want

7  to address what Mr. Christensen just said.  I can shortchange

8  it by saying that we have reviewed documents.  Mr. Christensen

9  has the only one that says anything about profits and costs and

10 that was produced by the Cruise Lines' personnel because my

11 folks didn't even have it anymore.  And so there's nothing to

12 produce on this number 8.

13         I do want to address Mr. Christensen saying that these

14 were identical RFPs and seeking the same number of ships.  I

15 find that interesting because when the RCMP put out its new RFP

16 terminating our contract and were getting hammered and pressed

17 over the fact that they had just signed a contract for a larger

18 dollar amount to house security forces, the RCMP took upon

19 itself to explain to the press that the contract was different

20 provided for more beds and more nights and accommodations for

21 their folks than the first one.  So the press was spending more

22 on contract.

23         So it is my understanding that they're not the same

24 contract and therefore, as the Court has pointed out how the

25 projections would not be relevant.  But nonetheless, if the

1   lawyer felt compelled --

2           THE COURT:  Oh, yes, you are both wonderful because

3   you just can't help being lawyers, I understand that.

4           MR. STRAUCH:  We do not have --

5           THE COURT:  They don't have anything else.  Whether

6   they should have but didn't is a different issue,

7   Mr. Christensen.  But you, the fact of the matter is at this

8   point and it's now 2012, almost 13, they don't have any more

9   except for what you already found from somebody else.

10          MR. CHRISTENSEN:  There is nothing I can do but

11  wonder why since these documents were created post litigation.

12  But as you say, Your Honor, that's a separate question why they

13  weren't preserved.

14          THE COURT:  That is a separate question.  If we need

15  to get into the separate question we need to look at the two

16  RPFs and the structures and see if they're actually relevant to

17  the question of costs and profit that would come up under the

18  first RFP if in fact Cruise Connections had performed under it.

19          So even if we spent a lot of time on that we still may

20  go around and around and decide it's just not sufficiently

21  relevant to worry about.

22          MR. CHRISTENSEN:  I understand, Your Honor.

23          THE COURT:  Okay.

24          MR. STRAUCH:  Before we get there I don't want to

25  leave this without saying Mr. Christensen is assuming that

1    there existed documents of the second RFP other than the one

2    that he already has that talked about profit and loss.  And I

3    don't know how he's making that assumption.

4          THE COURT:  Well, he just knows people I guess.  That

5    oftentimes one document sits in a drawer and gives birth to

6    more all by itself.  It's the immaculate document conception.

7          Anyway, all right.  I think we've come to the end.

8          Have we come to the end, Mr. Christensen?

9          MR. CHRISTENSEN:  Yes, Your Honor.

10         THE COURT:  Okay.

11         Mr. Strauch, Mr. Christensen, thank you gentlemen.  You

12   have been exceptionally polite and helpful to the resolution of

13   these issues.

14         Call me back if you need me.

15         MR. STRAUCH:  Thank you, Your Honor.

16         MR. CHRISTENSEN:  Thank you.

17         THE COURT:  Bye-bye.

18                              -o0o-

19

20

21

22

23

24

25

1                              CERTIFICATE

2        I certify that the foregoing is a true and correct

3  transcript, to the best of my ability, of the above pages, of

4  the stenographic notes provided to me by the United States

5  District Court, of the proceedings taken on the date and time

6  previously stated in the above matter.

7        I further certify that I am neither counsel for, related

8  to, nor employed by any of the parties to the action in which

9  this hearing was taken, and further that I am not financially

10  nor otherwise interested in the outcome of the action.

11

12  _____          _____

13  /s/Crystal M. Pilgrim, RPR          Date: December 17, 2012

14

15

16

17

18

19

20

21

22

23

24

25

18/9 18/15 22/5 22/6
22/21

17/24 18/19 20/1 20/16
21/15 21/25 22/18 23/3
24/4 24/24 25/12

**$**

$5 [2]   18/8 18/9

**−**

--------------------------

1/8

-oOo [1]   26/18

**/**

/s/Crystal [1]   27/12

**0**

08-2054 [2]   1/4 2/2

**1**

118 [1]   1/15
11:00 [1]   1/6
13 [1]   25/8
16 [1]   5/15
17 [1]   27/12
1775 [1]   1/18

**2**

20 [1]   5/15
20001 [1]   1/22
20006-2401 [1]   1/18
2008 [2]   8/12 22/5
2012 [3]   1/5 25/8 27/12
2054 [2]   1/4 2/2
24 [1]   4/4
2401 [1]   1/18
27 [1]   4/22
27101 [1]   1/16

**3**

333 [1]   1/21

**4**

44 [1]   4/20

**A**

a.m [1]   1/6
AA [1]   2/24
ability [2]   7/21 27/3
able [5]   4/9 8/2 12/13
 14/24 16/12
about [12]   6/11 9/6 12/6
 13/19 15/12 16/24 16/24
 19/22 22/1 24/9 25/21
 26/2
above [2]   27/3 27/6
absolutely [1]   18/24
accept [1]   19/23
accepted [2]   6/8 23/3
accommodations [1]   24/20
accomplished [1]   19/8
according [2]   16/7 17/13
acknowledged [1]   6/16
acronym [1]   15/13
acted [1]   9/18
action [3]   2/2 27/8 27/10
actually [8]   3/15 4/17
 12/15 12/21 16/6 16/10
 16/16 25/16
adding [1]   23/6
additional [2]   23/6 23/23
address [2]   24/7 24/13
addresses [1]   21/25
advance [2]   5/22 11/17
adversely [1]   6/17
after [7]   11/25 13/14

afterwards [1]   8/18
agent [3]   8/22 22/19 23/3
agents [1]   23/10
agree [5]   3/6 6/2 13/8
 13/9 20/5
agreed [6]   3/12 5/8 8/7
 15/23 16/9 16/21
agreement [10]   2/24 4/18
 14/11 16/24 17/13 17/13
 17/16 17/18 20/3 22/6
aided [1]   1/24
al [3]   1/3 1/7 2/4
all [24]   2/15 3/12 3/19
 3/21 4/2 4/2 4/23 9/11
 9/17 10/6 11/9 14/24 15/5
 17/23 20/10 20/12 21/8
 21/10 21/15 21/21 21/23
 22/10 26/6 26/7
almost [1]   25/8
already [5]   3/12 4/4
 17/10 25/9 26/2
also [2]   8/12 10/21
am [2]   27/7 27/9
American [1]   3/15
amount [5]   15/20 16/14
 16/23 18/25 24/18
amounts [1]   23/24
analysis [3]   14/2 14/3
 20/6
animal [2]   3/1 3/5
answer [2]   17/2 18/22
answers [1]   16/8
antecedent [1]   10/4
anticipated [4]   13/18
 14/6 14/6 17/5
anticipation [1]   6/1
any [16]   5/18 6/13 7/11
 8/25 9/7 14/5 14/10 14/12
 16/17 17/23 18/3 20/7
 20/20 21/5 25/8 27/8
anymore [1]   24/11
anything [9]   18/1 18/2
 18/5 18/11 18/11 18/14
 18/15 24/9 25/5
Anyway [1]   26/7
apart [1]   6/6
appear [1]   21/12
APPEARANCES [1]   1/13
apply [1]   19/17
April [2]   4/4 5/7
are [24]   2/8 2/10 2/12
 2/12 2/19 2/21 3/23 4/2
 4/3 4/7 6/1 8/23 10/10
 12/16 12/18 14/16 19/18
 19/20 20/13 20/20 21/5
 23/10 23/14 25/2
arguable [1]   13/8
argue [2]   2/21 20/2
argued [1]   11/23
arguing [1]   4/7
argument [19]   4/11 4/25
 5/2 5/18 6/4 6/21 7/1 7/7
 7/14 7/15 7/16 9/10 9/21
 9/22 10/15 11/1 16/4 17/4
 19/14
around [2]   25/20 25/20
articulated [1]   10/13
as [19]   4/11 4/11 4/18
 8/3 9/20 11/18 14/5 14/19

asked [4]   8/21 16/24 17/1
 17/17
asking [1]   22/17
asks [1]   23/9
assume [2]   18/18 19/2
assuming [1]   25/25
assumption [1]   26/3
attempt [1]   21/19
attempts [2]   21/18 21/20
attorney [4]   1/6 2/3 15/2
 17/2
Avenue [1]   1/21
awarded [2]   7/2 7/6
away [2]   13/13 19/14

**B**

back [8]   7/12 12/3 14/24
 15/24 16/4 20/25 21/24
 26/14
badly [1]   9/18
balance [1]   23/16
bank [17]   4/15 4/16 6/14
 6/15 7/4 8/13 8/15 8/19
 10/20 10/21 11/14 11/16
 11/18 13/5 13/17 15/12
 21/5
based [3]   6/16 21/2 23/13
basis [2]   9/4 17/2
be [39]
became [1]   23/3
because [23]   4/8 5/2 5/19
 6/9 6/20 6/22 7/11 7/17
 8/18 9/11 9/20 11/13 14/9
 17/6 18/9 19/3 19/5 22/22
 23/21 24/1 24/10 24/15
 25/2
becomes [1]   10/3
beds [2]   24/3 24/20
been [13]   5/13 5/14 5/21
 6/16 7/10 8/21 8/24 13/25
 14/3 18/21 21/6 22/24
 26/12
before [17]   1/10 4/21 5/1
 5/16 5/19 6/6 6/8 7/6
 7/11 8/18 9/3 11/18 12/14
 12/20 21/21 23/20 25/24
began [1]   22/23
beginning [2]   3/11 9/8
behind [1]   18/20
being [3]   7/1 10/6 25/3
best [1]   27/3
between [1]   21/11
beyond [1]   8/14
bid [24]   5/16 5/17 5/19
 5/20 6/7 6/8 7/12 8/4
 8/18 8/25 9/4 12/15 12/20
 13/5 13/23 14/2 14/15
 14/17 14/19 15/21 16/14
 21/1 21/1 23/10
birth [1]   26/5
board [1]   8/22
both [6]   5/16 8/16 9/4
 10/12 23/22 25/2
bye [2]   26/17 26/17
Bye-bye [1]   26/17

**C**

CA [1]   1/4

**C**

call [2]   16/16 26/14
called [3]   2/20 7/4 16/10
calls [1]   3/16
can [18]   2/14 7/16 9/1
9/4 9/19 9/25 10/11 18/18
19/13 19/13 20/2 23/10
23/10 23/22 23/24 24/6
24/7 25/10
can't [5]   2/15 2/17 3/5
13/12 25/3
CANADA [14]   1/6 2/4 4/15
4/16 6/14 6/15 7/4 8/20
11/14 11/16 13/5 18/16
21/5 24/2
cannot [1]   8/24
care [1]   23/11
Caribbean [2]   22/15 23/9
carried [1]   5/8
case [4]   5/24 12/12 18/5
18/13
casually [1]   21/9
caused [1]   7/4
CCM [2]   18/11 18/12
certain [1]   8/13
certainly [1]   16/5
CERTIFICATE [1]   27/1
certify [2]   27/2 27/7
cetera [2]   10/23 10/23
CFO [1]   15/22
chart [1]   2/21
CHARTER [3]   1/3 2/3 3/22
Cherry [1]   1/15
CHRISTENSEN [21]   1/17 2/6
2/9 3/8 4/12 7/2 13/12
13/18 17/21 19/4 19/9
19/20 19/23 23/1 24/7
24/8 24/13 25/7 25/25
26/8 26/11
circumstances [1]   6/13
Civil [1]   2/2
ckck [1]   4/10
claim [4]   9/5 13/6 13/7
16/2
clear [1]   13/12
clearly [3]   2/18 16/19
18/19
client [1]   17/2
clients [2]   11/23 13/19
COLLYER [2]   1/10 2/8
COLUMBIA [2]   1/1 1/21
come [4]   8/2 25/17 26/7
26/8
comes [1]   17/24
Commercial [1]   4/14
communication [1]   15/6
communications [8]   3/13
6/2 14/13 21/16 21/17
21/20 22/16 22/19
companies [1]   11/19
company's [1]   14/16
compel [2]   2/20 4/5
compelled [1]   25/1
complete [1]   19/15
completely [1]   7/15
computer [1]   1/24
computer-aided [1]   1/24
conception [1]   26/6
concerning [1]   21/17
CONFERENCE [1]   1/10

confidentiality [1]   14/11
conjectural [1]   5/20
conjecture [2]   6/20 10/18
Connection [2]   4/3 13/22
CONNECTIONS [48]
Connections' [2]   9/5 11/7
Constitution [1]   1/21
contain [1]   20/17
contemporaneously [1]
10/23
contingent [1]   8/13
continue [1]   22/22
continued [1]   20/7
contract [24]   7/2 7/6
7/12 15/6 16/15 18/7 18/7
18/9 18/20 18/20 18/23
19/7 20/7 23/5 23/12
23/15 23/15 23/18 23/22
24/16 24/17 24/19 24/22
24/24
contrary [1]   16/3
control [1]   3/23
conversations [1]   8/22
convince [1]   20/18
copy [2]   2/23 2/23
correct [4]   3/3 3/24 4/2
27/2
correctly [3]   2/25 3/15
22/9
cost [13]   5/22 9/14 9/24
15/25 20/14 21/17 21/19
23/2 23/6 23/11 23/16
23/18 23/25
costs [14]   5/23 5/25 8/17
9/1 12/2 12/4 12/9 14/6
20/17 20/22 22/20 23/14
24/9 25/17
could [6]   5/8 6/12 8/5
16/1 16/1 16/5
couldn't [1]   9/17
counsel [2]   17/25 27/7
couple [1]   15/4
COURT [10]   1/1 1/19 1/20
1/20 2/15 4/4 17/23 17/24
24/24 27/5
cow [1]   13/2
crazy [1]   10/8
created [2]   22/23 25/11
credit [15]   6/12 7/1 8/3
8/5 8/9 15/17 15/20 15/25
16/5 16/11 16/14 16/17
16/22 18/20 19/4
cruise [64]
CRYSTAL [2]   1/19 27/12
cut [1]   22/11
cutting [1]   23/7

**D**

D.C [1]   1/5
damages [9]   9/5 9/13 9/25
12/5 13/6 13/7 13/11
18/13 18/25
date [2]   27/5 27/12
day [2]   16/23 24/2
days [3]   6/6 6/7 7/22
DC [2]   1/18 1/22
deal [2]   18/4 19/21
dealings [3]   3/21 6/13
14/9
December [1]   27/12
decide [2]   20/6 25/20

deduct [1]   19/11
defendant [3]   1/7 1/17
3/6
defendant's [1]   19/19
defendants [8]   3/6 4/7
13/6 13/10 14/17 15/1
18/22 18/25
defense [1]   2/6
Dennis [1]   3/14
deny [1]   5/11
depending [1]   10/5
depends [1]   6/3
deposition [7]   4/13 4/18
6/14 8/7 11/13 13/20
15/16
depositions [4]   5/13 5/13
16/1 20/16
described [2]   19/18 20/16
detailed [1]   12/13
determination [1]   9/8
did [7]   5/11 9/23 9/24
11/16 12/9 12/9 16/16
didn't [8]   5/18 5/20 7/11
9/11 10/22 16/4 24/11
25/6
difference [1]   23/1
different [8]   9/7 9/16
9/25 10/1 23/11 23/19
24/19 25/6
disappeared [1]   5/15
discoverable [2]   4/6
19/20
discovery [3]   5/12 11/6
12/8
discuss [2]   2/19 14/6
discussions [1]   17/25
dispute [1]   8/14
DISTRICT [6]   1/1 1/1 1/11
1/20 1/21 27/5
do [22]   2/24 3/6 3/20
9/25 10/3 10/3 10/7 10/11
10/24 11/22 13/9 14/20
14/23 17/18 18/24 19/4
19/5 19/24 24/6 24/13
25/4 25/10
Docket [1]   1/4
document [5]   19/14 19/15
19/16 26/5 26/6
documentation [6]   8/19
12/10 12/25 13/4 14/25
20/25
documents [38]
does [6]   3/6 3/17 6/8 6/9
17/22 23/1
doesn't [3]   6/8 19/4 19/9
doing [1]   23/4
dollar [10]   8/8 8/8 15/23
15/23 16/9 16/9 16/21
16/21 23/24 24/18
dollars [12]   4/20 4/22
5/5 8/8 15/17 15/18
15/24 16/4 16/15 16/22
17/6 19/11
don't [18]   3/14 6/25 7/14
7/16 7/18 9/19 10/14
11/11 12/11 14/5 14/7
14/10 19/16 19/23 25/5
25/8 25/24 26/3
done [2]   21/9 21/10
down [5]   6/13 8/6 16/20
19/22 21/12

**D**

draft [1]   21/17
drawer [1]   26/5
drawn [3]   6/13 8/6 16/20
driving [1]   10/8
during [1]   4/13

**E**

e-mail [1]   22/16
each [1]   2/14
earlier [1]   4/5
earned [1]   18/4
effected [1]   6/17
effects [2]   18/12 23/24
either [3]   2/15 13/4
 20/17
else [5]   2/17 11/11 19/11
 25/5 25/9
elsewhere [1]   21/5
employed [1]   27/8
end [6]   9/9 9/12 23/16
 24/1 26/7 26/8
ended [1]   10/5
enough [2]   12/23 16/19
entirely [2]   9/16 10/1
entitled [6]   17/23 18/1
 18/2 18/3 18/9 18/13
era [4]   14/6 21/6 21/22
 21/23
Especially [1]   23/21
Esquire [3]   1/14 1/14
 1/17
establishment [2]   3/22
 11/8
estimate [6]   5/23 12/9
 12/9 12/11 15/3 23/2
estimated [3]   9/1 9/1
 20/21
estimates [7]   5/25 9/15
 13/17 20/17 21/17 21/19
 23/25
estimating [1]   5/22
estimation [1]   12/2
et [5]   1/3 1/7 2/4 10/22
 10/23
evaluate [2]   9/25 13/7
even [6]   5/1 7/6 20/1
 20/1 24/11 25/19
event [1]   6/22
events [1]   9/20
ever [4]   6/22 16/16 16/20
 17/15
everybody [1]   5/2
everyone [1]   2/7
everything [1]   20/24
evidence [1]   8/14
exactly [1]   5/17
except [3]   5/25 11/11
 25/9
exceptionally [2]   2/13
 26/12
exchange [1]   15/24
excuse [1]   11/23
executing [1]   22/20
exhibit [1]   4/18
exist [2]   5/20 22/22
existed [2]   21/1 26/1
existence [1]   11/7
exists [1]   13/22
expenses [1]   13/18

**F**

expire [1]   8/6
explain [3]   7/17 10/15
 24/19
explained [5]   4/16 4/19
 15/16 16/19 21/13
extent [2]   17/22 18/2

face [3]   6/12 8/5 8/8
fact [7]   6/6 6/21 16/5
 19/5 24/17 25/7 25/18
facts [2]   7/17 7/20
failure [1]   7/3
fair [2]   4/23 14/20
far [1]   21/3
fell [1]   6/6
felt [1]   25/1
few [1]   2/12
fifty [1]   15/18
fifty-seven [1]   15/18
figure [3]   10/11 11/6
 19/16
figured [1]   12/21
files [1]   22/22
final [1]   2/23
finance [3]   7/21 8/10
 21/12
financial [2]   4/14 9/11
financially [1]   27/9
financing [27]   4/9 4/17
 4/18 4/19 5/2 5/3 5/9
 5/15 6/5 6/5 6/6 6/11
 6/18 7/5 7/10 8/4 8/12
 10/16 13/13 15/7 15/19
 20/13 20/19 21/4 21/13
 21/18 21/21
find [2]   11/22 24/15
first [16]   2/23 4/1 6/18
 9/16 13/9 14/21 15/25
 20/6 21/16 21/21 23/12
 23/12 24/1 24/3 24/21
 25/18
fish [1]   10/2
Fitzgerald [1]   1/15
five [12]   6/7 8/8 15/17
 15/18 15/18 15/24 15/24
 16/4 16/14 16/21 17/6
 19/10
fluid [1]   10/7
fold [1]   4/1
folks [4]   18/15 21/12
 24/11 24/21
follow [3]   2/13 10/24
 18/18
FONTENOT [3]   1/14 2/5
 15/3
forces [1]   24/18
foregoing [1]   27/2
forgive [1]   3/15
form [1]   20/1
formation [1]   4/5
formed [3]   5/1 5/17 12/15
found [1]   25/9
four [1]   6/6
friend [1]   18/6
full [2]   7/1 7/3
funded [1]   4/24
further [3]   10/15 27/7
 27/9

**G**

GENERAL [2]   1/6 2/3

**H**

generous [1]   6/10
gentlemen [2]   12/12 26/11
get [15]   2/15 5/1 7/18
 8/25 11/18 11/18 14/24
 15/3 16/22 18/7 18/9
 18/13 19/11 25/15 25/24
getting [1]   24/16
give [5]   7/1 7/3 10/20
 18/8 18/10
given [3]   4/12 10/22
 13/14
gives [1]   26/5
giving [1]   18/22
go [9]   2/18 5/24 15/5
 16/1 16/1 20/10 20/25
 21/24 25/20
going [17]   4/20 4/23 8/17
 9/23 9/24 12/21 12/22
 12/23 13/13 14/4 14/18
 14/19 17/21 18/10 19/3
 19/22 21/11
Good [3]   2/7 2/9 2/11
got [8]   5/2 10/9 11/10
 11/21 12/6 16/8 16/8
 16/10
gotten [3]   4/10 17/11
 21/2
Government [3]   15/10
 18/16 24/2
Green [1]   1/15
groceries [1]   12/24
guess [1]   26/4

had [16]   5/14 6/16 6/24
 7/6 8/21 8/21 10/19 11/19
 16/9 20/7 20/7 20/24 22/9
 23/5 24/17 25/18
hammered [1]   24/16
happen [1]   7/11
happened [5]   7/7 7/8 7/12
 10/19 10/19
hard [1]   9/7
has [13]   5/13 12/11 13/19
 14/3 17/15 18/20 18/24
 19/5 19/20 20/25 24/9
 24/24 26/2
hate [1]   22/25
have [62]
haven't [2]   17/11 19/7
he [17]   10/2 11/11 11/11
 13/12 14/14 17/1 17/22
 18/2 18/2 18/14 18/15
 19/10 20/5 20/25 21/11
 26/2 26/4
he's [5]   3/15 13/19 18/1
 19/22 26/3
heard [4]   2/14 2/17 13/10
 14/21
hearing [2]   4/11 27/9
heart [2]   5/24 6/25
help [2]   13/6 25/3
helpful [1]   26/12
here [6]   9/7 14/5 15/2
 16/13 17/21 21/2
him [6]   14/13 19/14 19/14
 19/15 20/1 20/25
hinged [1]   8/22
hip [1]   16/13
his [3]   3/17 4/18 19/13
hollow [1]   5/2

**H**

Honor [28]
HONORABLE [1]   1/10
hope [1]   13/8
house [1]   24/18
how [19]   2/8 2/10 3/17
 4/19 7/16 9/18 9/19 9/24
 10/7 10/11 10/15 12/9
 12/9 13/7 14/23 17/1
 17/14 24/24 26/3
however [1]   9/22
Hubbard [1]   1/17
Hughes [1]   1/17
hundred [1]   15/18
hunting [1]   21/12

**I**

I'm [11]   3/14 7/19 7/20
 11/5 11/20 12/12 12/25
 15/3 18/9 22/25 23/8
I've [3]   13/10 14/21
 17/17
identical [1]   24/14
identified [1]   22/9
identify [1]   14/25
immaculate [1]   26/6
impossibility [2]   9/10
 10/17
inability [1]   11/22
included [2]   22/16 22/19
information [7]   7/3 9/12
 9/14 10/10 11/21 14/9
 17/9
initially [1]   23/5
instead [1]   23/4
instructed [1]   17/2
insufficient [3]   2/21 6/5
 10/16
interested [1]   27/10
interesting [1]   24/15
intervening [1]   6/22
investors [2]   20/12 20/18
involved [1]   11/10
involvement [1]   3/13
irrelevant [1]   10/3
is [90]
isn't [3]   6/20 20/13
 23/11
issue [5]   9/17 10/1 12/8
 14/12 25/6
issues [1]   26/13
it [69]
it's [14]   3/18 9/7 10/12
 11/2 11/4 13/1 13/1 15/13
 16/5 20/2 21/23 25/8
 25/20 26/6
its [7]   3/23 6/12 7/5 8/5
 8/17 10/4 24/15
itself [6]   5/17 18/23
 21/1 23/8 24/19 26/6

**J**

JACK [4]   1/14 2/5 3/2
 3/25
JESSIE [3]   1/14 2/5 15/2
Joe [3]   18/6 18/6 18/10
John [3]   15/7 15/14 15/15
JR [1]   1/14
JUDGE [3]   1/11 2/7 9/22
judgment [3]   11/2 11/3

**K**

keep [1]   22/25
kettle [1]   10/2
kind [2]   12/25 13/4
knew [1]   7/9
know [18]   3/14 6/20 9/23
 10/22 11/9 11/11 11/13
 12/6 14/5 14/7 14/10
 14/17 14/17 15/11 17/23
 20/7 24/2 26/3
known [1]   10/21
knows [2]   5/2 26/4

**L**

lack [2]   5/9 6/5
Laliberte [25]   3/14 3/16
 3/18 3/19 3/21 4/3 5/1
 6/2 6/4 7/25 10/2 10/4
 11/9 12/19 13/10 13/15
 14/6 14/10 14/12 14/22
 18/12 18/14 21/6 21/11
 21/21
language [1]   18/19
large [1]   12/10
larger [1]   24/17
last [1]   20/23
later [3]   6/8 8/6 20/2
lawyer [1]   25/1
lawyers [1]   25/3
layer [2]   23/6 23/23
learned [1]   22/15
least [3]   11/20 17/5 20/1
leave [2]   19/16 25/25
left [1]   2/19
legal [1]   7/14
legitimate [1]   12/8
let [1]   17/23
let's [5]   2/18 6/6 7/2
 15/5 20/10
letter [13]   6/12 8/3 8/5
 8/9 15/17 15/20 15/25
 16/5 16/11 16/14 16/17
 16/22 18/20
light [1]   4/8
like [2]   14/20 18/6
limited [1]   13/11
Line [1]   23/4
Lines [8]   4/22 21/18
 21/20 22/2 22/14 22/16
 22/17 23/23
Lines' [2]   22/18 24/10
lists [1]   13/18
litigation [3]   18/4 22/23
 25/11
logic [2]   18/18 18/18
long [1]   14/23
longer [1]   11/9
look [4]   14/8 20/25 21/24
 25/15
looking [1]   10/10
lose [1]   6/25
loss [1]   26/2
lost [3]   7/21 7/23 16/2
lot [1]   25/19
LP [1]   1/3

**M**

machine [1]   1/23
made [3]   7/1 8/13 10/16
mail [1]   22/16
make [10]   7/15 7/16 9/7
 9/23 12/22 12/22 12/23
 14/19 22/8 23/2
makes [1]   19/6
making [2]   6/21 26/3
man [1]   4/13
man's [1]   3/14
MANAGEMENT [3]   1/3 2/3
 3/22
many [1]   13/17
marked [1]   4/17
matter [4]   6/8 9/18 25/7
 27/6
may [5]   10/4 13/25 13/25
 16/18 25/19
maybe [4]   7/9 7/9 7/10
 7/20
me [13]   3/15 3/19 4/11
 7/17 10/1 10/9 10/15
 10/24 12/22 19/18 26/14
 26/14 27/4
mean [7]   6/3 6/20 6/23
 10/7 11/5 14/2 16/11
mentioned [1]   6/15
merely [1]   8/22
Michael [1]   16/8
microphone [1]   2/17
might [5]   4/10 9/18 14/25
 19/17 21/1
million [12]   4/20 4/22
 5/15 8/8 15/17 15/18
 15/24 16/4 16/15 16/21
 17/6 19/11
minimum [1]   23/7
minus [1]   12/18
minute [1]   21/19
misrepresentations [2]
 6/17 8/14
misunderstanding [1]   7/20
misunderstood [1]   19/21
moment [1]   19/7
money [15]   9/24 10/20
 10/22 11/17 11/18 12/22
 12/23 16/6 16/13 16/17
 16/23 17/23 18/8 18/15
 19/5
months [3]   8/6 13/14
 13/14
more [7]   12/22 21/2 24/20
 24/20 24/21 25/8 26/6
morning [2]   2/7 2/9
motion [2]   2/20 4/5
MR [6]   2/9 2/10 13/12
 16/25 17/25 19/20
Mr. [55]
Mr. Christensen [15]   4/12
 7/2 13/18 17/21 19/4 19/9
 19/23 23/1 24/7 24/8
 24/13 25/7 25/25 26/8
 26/11
Mr. Jessie [1]   15/2
Mr. Laliberte [12]   3/21
 6/2 6/4 7/25 10/2 10/4
 11/9 12/19 14/10 14/12
 18/12 18/14
Mr. Seaman [2]   4/16 4/19

**M**

Mr. Sessions [11]   15/23
 16/16 16/21 16/22 17/1
 17/7 17/22 18/14 19/6
 19/21 20/3
Mr. Strauch [13]   6/11
 6/14 6/25 8/10 11/20 12/7
 17/19 19/25 20/23 21/5
 21/24 24/5 26/11
Mr. Strauh [1]   12/25
much [5]   2/11 4/22 9/24
 17/1 18/6
must [2]   10/8 12/21
my [7]   13/19 18/6 18/15
 21/12 24/10 24/23 27/3

**N**

name [2]   3/15 3/17
named [1]   4/13
names [3]   14/15 14/16
 14/16
nature [2]   9/20 19/21
NC [1]   1/16
necessary [1]   15/19
need [11]   9/12 9/13 9/14
 9/22 11/11 12/13 14/17
 14/17 25/14 25/15 26/14
needed [1]   16/11
needs [2]   14/13 17/5
negotiated [2]   8/11 20/8
neither [1]   27/7
never [9]   2/25 3/4 5/8
 6/13 6/23 8/6 10/23 16/10
 16/15
new [1]   24/15
next [3]   3/10 15/5 20/10
nights [1]   24/20
ninety [1]   8/11
no [17]   1/4 5/21 8/23
 9/18 10/25 11/4 11/9
 13/23 13/23 16/5 16/18
 17/17 17/17 17/24 18/12
 19/5 21/7
Nobody [1]   17/15
non [1]   11/24
non-performance [1]   11/24
none [2]   6/21 7/7
nonetheless [1]   24/25
not [37]
notes [1]   27/4
nothing [4]   18/24 19/5
 24/11 25/10
November [2]   1/5 22/5
now [12]   3/20 4/7 11/20
 12/3 12/25 17/10 18/4
 19/3 20/24 21/15 21/19
 25/8
number [5]   4/22 21/15
 24/3 24/12 24/14
NW [1]   1/21

**O**

o0o [1]   26/18
obtain [2]   4/9 8/9
occurred [1]   6/22
October [2]   4/12 8/12
off [2]   2/19 3/9
official [1]   1/20
oftentimes [1]   26/5
oh [3]   15/11 15/11 25/2

okay [22]   3/4 3/10 5/4
 10/11 10/14 12/8 12/20
 14/8 15/14 17/9 17/18
 18/17 19/2 19/4 20/9
 20/10 21/15 22/1 22/8
 23/19 25/23 26/10
old [1]   12/12
olympics [1]   24/3
one [14]   2/14 2/23 3/5
 3/10 3/17 15/5 15/22
 20/11 23/10 23/13 24/9
 24/21 26/1 26/5
only [6]   18/3 18/15 19/13
 22/15 23/10 24/9
oral [1]   2/20
order [3]   6/4 8/9 20/18
other [10]   2/14 2/16 9/3
 13/21 15/6 20/20 21/6
 21/12 21/16 26/1
others [2]   21/5 22/2
otherwise [3]   7/4 19/17
 27/10
ought [1]   5/21
our [6]   12/23 12/24 13/18
 16/13 22/21 24/16
out [12]   10/11 11/6 11/10
 12/21 13/15 18/3 18/4
 18/15 19/17 22/11 24/15
 24/24
outcome [1]   27/10
over [3]   2/14 8/20 24/17
overall [2]   23/15 23/18
overly [1]   20/2
overstates [1]   5/5
owe [3]   16/4 16/22 19/10
owed [8]   16/25 17/6 17/14
 18/8 18/14 18/14 18/15
 19/5
own [1]   12/1

**P**

P-R-O-C-E-E-D-I-N-G-S [1]
 2/1
P.C [1]   1/15
pages [1]   27/3
paid [6]   11/18 16/6 17/1
 17/14 18/5 18/7
part [1]   13/21
partially [1]   3/24
participate [1]   22/14
participating [1]   22/11
parties [2]   9/3 27/8
partner [1]   22/17
partners [3]   15/22 20/21
 22/17
parts [1]   19/16
pay [11]   4/9 4/20 4/21
 8/8 11/19 12/23 12/23
 15/23 16/9 16/21 19/1
penny [1]   12/22
people [4]   12/14 12/16
 14/16 26/4
per [1]   8/8
percent [5]   6/12 8/3 8/11
 15/19 16/13
perfectly [1]   13/7
perform [4]   7/6 7/11 9/17
 11/23
performance [4]   9/11
 10/17 11/24 23/18
performed [2]   23/22 25/18

performing [2]   23/4 23/15
period [2]   8/20 21/11
person [3]   4/11 15/15
 18/8
personnel [1]   24/10
Phillip [2]   16/8 17/14
picking [1]   2/19
picture [1]   13/15
pieces [1]   11/21
PILGRIM [2]   1/19 27/12
place [1]   6/18
plaintiff [3]   1/4 1/14
 2/22
plaintiff's [2]   16/2
 22/22
plaintiffs [6]   2/5 5/8
 15/22 15/22 16/20 16/25
planning [1]   5/14
pocket [1]   16/13
point [5]   9/16 12/4 19/9
 20/13 25/8
pointed [1]   24/24
polite [2]   2/13 26/12
posed [1]   18/11
position [1]   19/19
post [1]   25/11
potential [1]   20/12
pre [1]   21/15
predates [2]   11/7 13/4
preformation [4]   4/3
 13/22 13/23 14/1
prejudice [1]   5/11
preliminary [2]   20/16
 21/14
prepared [5]   2/21 12/21
 14/15 14/17 20/17
present [1]   19/2
presenting [1]   23/4
presents [1]   23/8
preserved [2]   22/24 25/13
president [2]   4/14 6/15
press [2]   24/19 24/21
pressed [1]   24/16
pressing [1]   22/25
presumably [1]   23/6
previously [1]   27/6
prior [4]   3/21 7/22 8/25
 21/1
privilege [1]   19/17
probably [4]   3/15 15/4
 17/24 21/13
proceeded [1]   16/15
proceedings [2]   1/23 27/5
produce [2]   14/25 24/12
produced [11]   1/23 2/22
 3/5 13/17 14/13 18/21
 20/24 21/6 21/14 22/15
 24/10
profit [14]   9/14 9/23
 12/4 17/5 19/7 19/12 23/2
 23/7 23/12 23/16 23/22
 23/25 25/17 26/2
profits [16]   5/22 5/23
 6/1 8/17 9/1 12/10 14/6
 16/2 18/3 20/4 20/5 20/14
 20/17 20/22 22/20 24/9
project [2]   5/9 15/20
projected [1]   23/14
projection [1]   20/12
projections [4]   20/14
 22/19 24/1 24/25

promise [2]   11/16 16/11
promised [1]   7/5
pronounce [1]   3/17
pronouncing [1]   3/14
proof [1]   11/22
proposal [2]   15/10
proposed [1]   23/5
provide [2]   16/16 20/18
provided [6]   4/17 13/17
 15/16 20/12 24/20 27/4
providing [1]   6/18
pull [1]   7/5
pulled [3]   7/9 7/12 11/10
purely [1]   5/19
purported [1]   11/1
purpose [3]   13/11 13/12
 14/21
purposes [2]   6/25 19/3
put [5]   6/23 6/24 9/19
 18/19 24/15
putting [1]   23/6

Q

question [12]   5/21 11/3
 11/3 11/4 11/5 12/5 13/16
 13/21 25/12 25/14 25/15
 25/17
questioned [1]   13/19
questions [1]   16/24
quickly [1]   21/10
quiet [1]   19/22
quite [3]   18/19 19/4 23/8

R

rather [1]   13/11
RBC [1]   4/24
RCMP [5]   4/20 18/5 22/6
 24/15 24/18
real [1]   12/14
really [5]   2/16 7/17 9/13
 10/9 16/15
reason [2]   10/10 11/25
reasons [1]   10/12
rebut [1]   19/13
receiving [1]   5/14
recollection [1]   12/13
reconstructed [2]   6/7
 6/10
record [1]   5/5
recorded [1]   1/23
recover [1]   18/16
redact [1]   19/16
redacted [2]   20/1 20/2
reduced [1]   17/5
referred [1]   8/3
referring [1]   8/10
reflect [1]   20/3
reformulated [1]   7/13
regarding [1]   22/3
related [3]   11/9 13/11
 27/7
relating [2]   15/6 21/16
relationship [2]   7/24
 11/8
relevance [1]   22/10
relevant [10]   4/6 5/10
 10/5 11/5 14/14 19/19
 23/25 24/25 25/16 25/21
relying [1]   10/17

remaining [2]   8/11 14/14
remember [5]   2/24 12/11
 12/14
repaid [2]   20/4 20/5
Reporter [3]   1/19 1/20
 2/15
represent [1]   15/19
representations [1]   8/13
representing [1]   9/3
request [6]   3/9 5/11 15/7
 15/9 21/24 21/25
requests [2]   12/21
required [3]   4/21 8/4
 15/20
resolution [2]   18/5 26/12
respect [2]   13/16 13/21
response [5]   3/20 4/1 5/4
 15/9 24/5
responsive [1]   22/21
result [1]   14/19
retained [1]   12/13
revealed [1]   15/25
reviewed [1]   24/8
RFP [23]   5/23 6/1 7/22
 15/7 15/8 15/11 21/16
 21/17 21/21 22/3 22/4
 22/9 22/12 22/14 22/20
 23/8 23/13 24/1 24/3 24/4
 24/15 25/18 26/1
RFPs [1]   24/14
Rhymes [1]   13/2
right [16]   3/19 8/1 11/14
 13/24 15/5 15/14 16/6
 16/13 17/3 17/3 17/10
 19/3 19/20 20/10 22/10
 26/7
ROSEMARY [1]   1/10
Royal [13]   4/14 4/16 6/14
 6/15 7/4 8/19 10/20 10/20
 11/14 11/16 13/5 21/4
 23/9
RPFs [1]   25/16
RPR [2]   1/19 27/12
rude [1]   23/1
ruled [1]   4/4
rules [1]   2/13

S

said [10]   6/12 10/4 10/20
 10/21 11/20 14/14 14/21
 16/12 20/23 24/7
salaries [1]   12/23
Salem [1]   1/16
same [7]   5/17 12/16 20/13
 23/24 24/3 24/14 24/23
sat [1]   4/12
say [12]   6/6 7/2 10/11
 11/1 11/6 11/8 12/8 14/4
 18/6 19/10 20/1 25/12
saying [3]   24/8 24/13
 25/25
says [2]   2/25 24/9
scenario [1]   11/17
SCOTT [1]   1/17 2/6 3/7
Seaman [3]   4/13 4/16 4/19
second [11]   9/16 12/4
 22/3 22/4 22/9 22/12
 22/14 22/20 23/8 24/4
 26/1
secret [1]   14/11
secure [2]   21/18 21/20

security [1]   24/18
see [59]   3/4 7/7 7/14 7/16 9/6
 9/19 10/7 14/8 19/13
 25/16
seek [1]   20/13
seeking [3]   14/21 15/6
 24/14
seems [2]   10/1 19/18
seen [2]   13/19 23/17
sensible [1]   9/8
sent [1]   22/1
separate [4]   14/12 25/12
 25/14 25/15
September [1]   8/12
sequence [4]   7/16 7/20
 9/19 11/22
serve [1]   22/18
Services [1]   4/14
Session's [1]   17/25
Sessions [14]   15/7 15/14
 15/15 15/23 16/16 16/21
 16/22 17/1 17/7 17/22
 18/14 19/6 19/21 20/3
seven [1]   15/18
shared [1]   12/11
shed [1]   4/8
shift [1]   9/8
shipping [1]   11/19
ships [3]   4/10 24/3 24/14
short [2]   8/20 21/13
shortchange [2]   24/6 24/7
shorthand [1]   1/23
should [3]   22/22 22/23
 25/6
show [5]   9/1 19/14 19/15
 20/1 23/17
showed [1]   5/14
showing [1]   3/13
shown [1]   17/15
shows [1]   8/14
signed [3]   2/23 6/16
 24/17
significantly [1]   8/20
silly [1]   3/19
simplest [1]   3/11
simply [1]   17/21
since [2]   2/12 25/11
sir [1]   5/4
sit [2]   14/5 19/22
sits [1]   26/5
situation [1]   10/8
Sloan [4]   16/8 16/9 16/25
 17/14
small [1]   12/11
smaller [1]   4/22
so [36]
so-to-speak [1]   6/23
some [5]   9/2 13/11 14/3
 16/23 23/24
somebody [5]   11/9 12/21
 19/11 20/2 25/9
somehow [1]   13/13
something [3]   3/16 12/24
 16/12
sorry [4]   12/12 12/25
 15/12 23/1
sort [2]   10/6 14/10
sought [2]   18/21 22/14
sound [1]   23/1
South [1]   1/15
sparse [1]   8/19

speak [2]   6/23 23/15
speaking [1]   10/5
specifics [1]   20/3
spend [1]   14/18
spending [1]   24/21
spent [1]   25/19
spoke [1]   5/7
start [2]   3/11 9/10
stated [2]   18/19 27/6
statement [2]   9/9 9/13
states [5]   1/1 1/11 1/20
  8/5 27/4
stenographic [1]   27/4
still [3]   16/25 23/22
  25/19
straight [2]   7/20 16/1
strange [1]   4/11
STRAUCH [21]   1/14 1/15
  2/5 2/10 3/2 3/25 6/11
  6/14 6/25 8/10 11/20 12/7
  13/1 13/3 17/19 19/25
  20/23 21/5 21/24 24/5
  26/11
Strauh [2]   12/25 13/1
Street [2]   1/15 1/18
strikes [1]   4/11
structure [2]   23/12 23/12
structures [1]   25/16
stuff [2]   10/6 14/24
subject [2]   5/12 13/8
submission [1]   8/25
submit [3]   8/4 15/21
  16/12
submitted [11]   5/16 5/17
  5/19 5/20 6/7 8/18 8/19
  9/3 12/15 13/5 16/14
submitting [3]   5/23 6/1
  7/22
subsequently [1]   8/11
such [8]   3/1 3/4 3/23
  11/18 11/23 20/16 20/20
  22/18
sufficiently [1]   25/20
suit [1]   23/13
summary [2]   11/2 11/2
support [3]   5/10 6/4
  13/13
supposed [3]   6/11 8/12
  15/17
sure [4]   7/19 16/25 22/8
  23/8
surprise [1]   17/24

T

table [1]   3/9
take [2]   14/24 23/11
taken [5]   5/12 5/13 11/13
  27/5 27/9
taking [1]   11/20
talk [4]   2/14 2/16 12/6
  12/7
talked [1]   26/2
talking [4]   2/12 6/11 9/6
  15/12
technically [1]   15/17
telephone [3]   1/10 2/12
  2/17
tell [1]   10/9
ten [4]   6/12 8/3 15/19

terminated [1]   22/6
terminating [1]   24/16
terms [4]   10/2 17/12
  19/18 21/4
test [2]   6/23 6/24
tested [1]   10/23
testified [1]   15/22
testimony [2]   8/7 15/16
than [8]   12/22 13/11 21/2
  21/2 21/6 23/12 24/21
  26/1
thank [5]   2/11 13/3 26/11
  26/15 26/16
that [159]
that's [17]   3/24 7/1 7/17
  9/7 9/12 9/14 9/25 10/1
  11/1 12/3 12/5 12/5 12/7
  14/20 14/21 17/6 25/12
their [15]   5/22 5/22 5/23
  5/25 6/18 7/24 9/13 9/14
  9/25 12/1 12/2 17/25
  19/12 20/22 24/21
them [7]   6/23 6/24 9/20
  9/24 13/17 13/19 20/19
then [14]   5/9 6/7 6/17
  7/3 7/5 7/10 10/10 10/19
  11/2 11/10 11/13 12/20
  19/21 20/5
there [28]
there's [3]   5/21 16/3
  24/11
therefore [5]   3/23 9/18
  10/17 19/19 24/24
these [10]   4/8 5/12 6/25
  12/1 16/1 21/24 22/10
  24/13 25/11 26/13
they [38]
they'd [1]   7/5
they're [2]   24/23 25/16
thing [1]   3/12
things [3]   6/21 9/7 12/5
think [18]   2/20 4/8 4/21
  5/5 7/19 8/14 9/23 9/24
  10/15 11/1 11/25 12/5
  13/12 14/20 14/23 19/25
  21/25 26/7
thinks [1]   20/2
this [39]
those [9]   4/5 6/21 11/21
  12/16 13/19 14/14 15/24
  22/19 22/21
though [1]   19/10
thought [9]   3/10 3/11
  4/10 8/17 9/2 14/18 14/19
  15/11 23/18
thousand [1]   15/18
through [3]   4/24 5/8
  14/24
Thursday [1]   1/5
time [10]   5/17 8/20 11/18
  13/9 14/21 15/25 20/23
  21/11 25/19 27/5
together [2]   4/12 9/19
told [3]   8/21 8/24 20/25
Tom [1]   4/13
too [1]   12/12
took [1]   24/18
totally [2]   6/20 10/3
trade [1]   14/11
transacted [1]   4/23

transcription [1]   1/24
trial [2]   11/3 11/4
true [3]   10/21 10/22 27/2
trust [1]   19/9
trying [3]   8/16 11/5 15/3
turn [1]   19/14
two [6]   4/1 8/6 9/6 11/21
  20/15 25/15
two-fold [1]   4/1

U

unable [2]   7/5 7/11
under [4]   9/19 11/17
  25/17 25/18
underlying [2]   8/21 8/23
understand [20]   2/24 3/20
  6/19 7/15 8/16 8/24 9/4
  9/13 9/20 10/14 10/25
  12/1 12/4 13/6 17/12
  17/22 20/14 20/20 25/3
  25/22
understanding [2]   9/2
  24/23
undoes [1]   13/13
UNITED [4]   1/1 1/11 1/20
  27/4
unless [2]   16/3 19/6
until [3]   5/15 5/20 19/6
up [5]   2/19 8/2 10/5
  21/15 25/17
upon [4]   6/13 8/6 16/20
  24/18

V

versus [1]   2/3
very [10]   2/11 8/19 8/19
  8/20 10/7 12/8 19/19 21/9
  21/10 21/13
Vice [2]   4/14 6/15
Vice-president [2]   4/14
  6/15

W

wait [3]   19/10 19/10
  21/19
want [19]   4/7 6/3 6/3
  7/15 8/24 10/9 11/7 11/8
  12/4 12/7 13/10 17/10
  17/12 19/15 20/14 20/20
  24/6 24/13 25/24
wanted [2]   22/8 24/2
wants [1]   19/10
was [74]
Washington [3]   1/5 1/18
  1/22
wasn't [1]   11/12
way [6]   18/12 18/13 19/13
  20/8 23/5 23/9
we [46]
we'd [2]   3/11 10/21
we're [7]   8/16 11/25
  12/21 12/22 12/23 18/4
  21/15
we've [3]   8/24 23/17 26/7
week [1]   5/16
weeks [1]   15/4
well [20]   2/25 3/19 5/25
  6/19 7/5 7/14 9/6 9/13
  10/21 11/10 12/3 14/8

**W**

well... [8]   16/3 18/17
 19/2 20/23 21/25 23/9
 24/6 26/4
went [2]   4/25 14/2
were [24]   3/21 4/6 6/16
 7/6 8/2 8/14 8/17 9/23
 11/1 12/14 12/16 14/18
 14/19 15/12 16/25 20/15
 22/21 22/22 23/3 23/25
 24/1 24/14 24/16 25/11
weren't [1]   25/13
what [64]
what's [2]   19/3 24/5
whatever [5]   11/8 12/10
 14/11 17/4 20/25
when [8]   5/7 8/20 16/25
 17/1 18/7 21/11 22/4
 24/15
where [2]   2/19 11/22
whereby [1]   11/17
wherewith [1]   9/11
whether [13]   4/9 6/24
 11/6 14/9 14/12 14/16
 16/20 17/25 18/25 19/15
 19/15 20/6 25/5
which [15]   2/19 4/10 6/12
 8/4 8/13 10/8 11/7 13/25
 17/13 20/21 21/1 22/16
 23/13 23/13 27/8
who [10]   4/13 10/5 10/5
 11/9 12/14 12/16 14/16
 15/14 15/15 18/8
whom [1]   7/23
whose [1]   14/15
why [8]   9/7 9/12 9/14
 11/1 16/7 21/13 25/11
 25/12
will [6]   4/8 6/25 14/23
 17/23 18/8 21/2
willing [1]   10/3
win [1]   9/18
Winston [1]   1/16
Winston-Salem [1]   1/16
within [2]   3/23 7/22
without [3]   5/11 10/17
 25/25
won [1]   18/7
wonder [1]   25/11
wonderful [1]   25/2
worked [1]   4/19
World [1]   22/15
Worldwide [1]   2/24
worry [1]   25/21
would [30]
wouldn't [1]   10/21
written [3]   17/13 17/15
 17/18

**Y**

yeah [4]   16/10 16/12
 16/12 19/25
year [2]   4/4 5/7
yes [9]   3/7 10/20 11/15
 17/8 17/20 20/15 23/21
 25/2 26/9
yet [1]   19/8
you [87]
you're [5]   6/21 9/6 10/7
 12/3 23/5

you've [4]   10/9 11/13
 11/21 21/2
your [44]