UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CRUISE CONNECTIONS CHARTER MANAGEMENT 1, LP and CRUISE CONNECTIONS CHARTER MANAGEMENT GP, INC.,<br><br>                              Plaintiffs,<br><br>          v.<br><br>ATTORNEY GENERAL OF CANADA, representing the Royal Canadian Mounted Police; ROYAL CANADIAN MOUNTED POLICE, an agency of the Ministry of Public Safety Canada; and HER MAJESTY THE QUEEN IN RIGHT OF CANADA, the Government of Canada, Royal Canadian Mounted Police, representing the Vancouver 2010 Integrated Security Unit,<br><br>                              Defendants. | Case No. 08-CV-02054-RMC |

## DEFENDANTS' PRE-TRIAL STATEMENT

Defendants submit this pre-trial statement pursuant to Rule 16.5 of the Local Rules of this Court.

## I.      STATEMENT OF THE CASE

### A.      Nature of the Case

This case involves a solicitation by the Royal Canadian Mounted Police ("RCMP") to provide housing on cruise ships for Canada's Integrated Security Unit that protected the 2010 Vancouver Winter Olympic Games.  On September 9, 2013, the Court granted Plaintiffs' motion for summary judgment and found that a contract had been formed

between Plaintiffs and the RCMP, and that Defendants had breached the contract with Plaintiffs. A bench trial regarding damages is set for November 18, 2013.[1]

Plaintiffs have asserted claims for $24.8 million in lost profit damages and for an additional $4 million in prejudgment interest. Plaintiffs' damages claims are supported by neither the facts nor British Columbia law.

- First, two of the major sources of revenue claimed by Plaintiffs, the "on board" revenue and relocation cruise revenue, are speculative and untethered to any known facts.

- Second, Plaintiffs significantly underestimate the actual costs they would have incurred had the contract been performed.

- Third, Plaintiffs failed to mitigate their damages by finding alternative projects.

- Fourth, Plaintiffs failed to include the amount they agreed to pay to John Sessions as a cost they would have incurred had the contract gone forward, which would reduce by more than $5 million Plaintiffs' expected profits.

- Fifth, Plaintiffs failed to include the amount due to one of its employees, Phillip Sloane, as a salary as a cost that would have been incurred had the contract gone forward, reducing Plaintiffs' expected profits by an additional $500,000.

- Sixth, Plaintiffs have not selected the proper exchange rate at which the payments from the RCMP in Canadian dollars would be converted to American dollars.

- Finally, Plaintiffs miscalculate the prejudgment interest rate, which should be that applied under British Columbia law.

---

1. For purposes of this pretrial statement, and for the purposes of the trial on damages, Defendants assume the findings and conclusions set forth in the Court's September 9, 2013 Order to be established for the purpose of the case, without prejudice to Defendants' right to challenge that Order, and its findings and conclusions, on appeal.

In addition, Plaintiffs' conduct contributed to the damages that they now claim. Under British Columbia law of contributory fault, any damages that may be awarded should be reduced to account for Plaintiffs' contribution to the damages they now assert.

**B.      Identities of the Parties**

Plaintiffs are Cruise Connections Charter Management 1, LP and Cruise Connections Charter Management GP, Inc (together "CCCM").  Defendants are Her Majesty the Queen in Right of Canada, the Attorney General of Canada and the Royal Canadian Mounted Police (together "the Government of Canada").

**C.      Jurisdiction**

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1330(a), 28 U.S.C. § 1605(a)(2), and 28 U.S.C. § 1391(f)(4).

**II.      PROPOSITIONS OF LAW**

The Court concluded in its September 9, 2013 Opinion (Docket No. 73) that the Articles of Agreement provided that "The Contract must be interpreted and governed, and the relations between the parties determined, by the laws in force in British Columbia."  (Op. at 51.) The "laws in force in British Columbia" with respect to contracts and damages for their breach is the common law of Canada, which draws on English law.  *See* Gerald L. Gall, *The Canadian Legal System*, 431–32 (5th ed. 2004).

Defendants will rely on the following propositions of law in connection with the trial on damages.  Defendants will provide copies of the authorities cited to the Court at trial, or at such earlier time as the Court may direct.

- In order to recover damages for breach of contract, a plaintiff must establish on a balance of probabilities (1) that the defendant's breach of contract resulted in the damages

claimed, and (2) that the damages are not too remote. *Houweling Nurseries Ltd. v. Fisons Western Corp.*, 1988 CarswellBC 471, 37 B.C.L.R. (2d) 2 (B.C. Ct. App. 1988).

- Where damages are awarded for loss of "more conjectural profits," "the court should make a moderate award, recognizing that some of the contracts may not have materialized had there been no breach." *Id.*

- Actual results experienced by the substitute contractor hired to carry out work that was the subject of the breached contract may be used as a benchmark for calculating damages. *Tercon Contractors Ltd. v. British Columbia (Minister of Transportation and Highway)*, 2006 CarswellBC 730, 53 B.C.L.R. (4th) 138 (B.C. Sup. Ct. 2006).

- A plaintiff has a duty to take all reasonable steps to mitigate the loss consequent upon a breach of contract, and may not recover any part of the damage that is due to his neglect to take such steps. *Southcott Estates Inc. v. Toronto Catholic District School Board*, 2012 CarswellOnt 12505, ¶ 24, [2012] 2 S.C.R. 675 (Can. 2012).

- A single-purpose company is not excused from the obligation to mitigate its damages. *Southcott Estates Inc.* at ¶ 24 (where the plaintiff, a real estate company formed for the sole purpose of purchasing a parcel of land, was required to mitigate by making diligent efforts to find a substitute property).

- If the plaintiff unreasonably fails to mitigate, its damages for breach of contract may be reduced. *Asamera Oil Corporation Ltd. v. Sea Oil & General Corporation,* 1978 CarswellAlta 268, [1978] 6 W.W.R. 301 (Can. 1978).

- No legal consequence follows from a simple declaration by one party to a contract that it does not intend to carry out its part in that contract. When such a declaration is made, however, the other party may elect either to insist on holding its co-contractor to the

bargain or to treat the contract as at an end and claim damages for its breach. *Canada Egg Products, Ltd. v. Canadian Doughnut Company*, 1955 CarswellSask 80, [1955] S.C.R. 398 (Can. 1955).

- A party that is entitled to terminate a contract because of an anticipatory repudiation by the other party is required to elect one of two options: to accept the repudiation and terminate the contract, or to affirm the contract. An election to accept the repudiation and terminate the contract must be clearly communicated to the other party. Where the innocent party acts in a manner consistent only with its having chosen to affirm the contract, then it will be held to have made an election to affirm, and the contract will continue in effect. An election may be communicated by words or conduct. *Homestar Industrial Properties Ltd. v. Philps*, 1992 CarswellBC 283, 72 BCLR (2d) 69 (B.C. Ct. App. 1992).

## III.    STATEMENT OF DEFENSES

Defendants have raised the following defenses: (1) Plaintiffs' claims for damages are barred, in whole or in part, to the extent the damages sought are punitive, speculative, duplicative, or cumulative, (2) Plaintiffs failed to mitigate damages when they did not obtain currency exchange rate protection during their attempts to obtain financing, when they did not attempt to convey the cruise charters to another party, and when they did not pursue other comparable projects, and (3) Plaintiffs contributed to their damages by failing to deal honestly and forthrightly with the RCMP.

## IV.    SCHEDULE OF WITNESSES

### Ms. Normande Morin

Ms. Morin may be contacted through the Government of Canada's counsel. (Ms. Morin is an employee with the RCMP, and as such, her address must remain protected.)

Ms. Morin will provide testimony regarding the similarities between the Plaintiffs' planned charters and those actually entered into between the RCMP and Holland America and Carnival Cruise Lines, the levels of expected services on each, as well as on her communications with Plaintiffs, to the extent that such communications have a bearing on Plaintiffs' damages claims.

Estimate:  1.5 hours.

**Ms. Donna Jean Kaluza-Genick**

Ms. Kaluza may be contacted through the Government of Canada's counsel.  (Ms. Kaluza is a former officer with the RCMP, and as such, her address must remain protected.)

Ms. Kaluza will provide testimony regarding the similarities between the Plaintiffs' planned charters and those actually entered into between the RCMP and Holland America and Carnival Cruise Lines, the levels of expected services on each, as well as on her communications with Plaintiffs, to the extent that such communications have a bearing on Plaintiffs' damages claims.

Estimate:  1.5 hours.

**Holland America Line**

Defendants may call a Holland America Line employee to testify as to Holland America's onboard revenues on the charters used to house security personnel during the 2010 Olympics, and communications with Plaintiffs to the extent that such communications have a bearing on Plaintiffs' damages claims.  Defendants plan for this representative to testify via a *de bene esse* deposition.

**Carnival Cruise Lines**

Defendants may call a Carnival Cruise Lines employee to testify as to Carnival's onboard revenues on the charters used to house security personnel during the 2010 Olympics,

and communications with Plaintiffs to the extent that such communications have a bearing on

Plaintiffs' damages claims.  Defendants plan for this representative to testify via a *de bene esse*

deposition.

## V.      LIST OF EXHIBITS

For Defendants' list of exhibits, please see Attachment A to this filing.

Defendants are listing exhibits that may be used at trial in the direct examination of their

witnesses and exhibits Defendants can anticipate using during the cross-examination of

Plaintiffs' witnesses.  Defendants reserve the right to offer into evidence any exhibits identified

by Plaintiffs and any other documents needed for cross-examination.

## VI.     DESIGNATION OF DEPOSITIONS

For Defendants' designation of deposition excerpts, please see Attachment B to

this filing.  Defendants are providing designations only for witnesses that are not scheduled to

testify.  To the extent that any of Plaintiffs' witnesses become unable to testify at trial,

Defendants reserve the right to put forth deposition designations at a later time.

## VII.    OPPOSITION TO PLAINTIFFS' ITEMIZATION OF DAMAGES

Defendants will challenge Plaintiffs' Itemization of Damages as follows.

### A.      Lost Profits from RCMP Contract

#### 1.      Contract Amount

Defendants dispute that September 26, 2008 should be used to determine the

contract amount as a matter of law.  Under British Columbia law, after an anticipatory breach has

occurred, the innocent party to the breach must decide whether (1) to confirm the breach or (2) to

elect to continue working on the contract.  Plaintiffs did not confirm an anticipatory breach on or

after September 26, 2008, but instead chose to continue working on the RCMP contract

throughout October and into mid-November.  Moreover, the earliest that Plaintiffs could have

entered into a forward contract to set an exchange rate was October 6, 2008.  Based on the

prevailing exchange rates during the month of October, the gross value of the contract in U.S.

dollars could be no greater than $50,193,010.61.  Alternatively, assuming that Plaintiffs never

entered any contract to fix the exchange rate, the date on which Plaintiffs claim to have accepted

the anticipatory repudiation is November 13, 2008.[2]  The exchange rate on that date was 0.8033,

and the gross value of the contract in U.S. dollars on that date was $44,461,157.65.

### 2.      Sale of Repositioning Cruises

Plaintiffs should not be permitted to include the sale of repositioning cruises in

their lost profits, because no contract was ever formalized between Plaintiffs and AA Worldwide

Travel before the RCMP contract terminated.  Therefore, Plaintiffs claims for lost profits should

be reduced by $1,252,000.

### 3.      Other Cost and Expenses

Plaintiffs' itemizations of Other Cost and Expenses are based on no written

evidence to support the listed amounts and significantly underestimate certain costs.  The

following are key examples:

a.      *Stevedoring* – Plaintiffs allege that the ships' stevedoring would have cost

$220,610.  Defendants' estimate for stevedoring in connection with the lease of cruise ships that

actually occurred in 2010 was $1,660,221.  (CAN0017074.)

b.      *Garbage Disposal and Recycling* – Plaintiffs list the three ships' garbage

disposal and recycling costs respectively at $207,468 and $207,864.  In contrast, on July 29,

2008, Plaintiffs estimated $880,000 for garbage disposal and recycling.  (CCCM009215.)  A

---

2.      Plaintiffs assert that it is an undisputed fact that November 13, 2008 is the date on which
        the contract ended because they accepted the Defendants' alleged anticipatory
        repudiation.  *See* Plaintiffs' Memorandum in Support of its Motion for Summary
        Judgment 23, 41, 42, 43 (Nov. 30, 2012) (Docket No. 60).

different cruise line estimated the cost of garbage disposal for only one ship would be $820,000. (CCCM000604.)  Based on this estimate from the cruise line, the cost of garbage disposal for all three ships would have been $2,400,000.

        *c.*     *Water Bunkering* – Plaintiffs claim that the ships' water bunkering costs would have been only $121,902.  However, a June 25, 2008 estimate by Plaintiffs places water bunkering costs at $200,000.  (CCCM000526.)  In contrast, another cruise line estimated that water bunkering for one ship would be $82,000 (CCCM000604), which for three ships would be a total of $240,000, approximately double the amount alleged by Plaintiffs.

        Plaintiffs' other alleged costs and expenses fail to include significant known expenses.  The following are key examples:

        *d.*     *Snow Removal* – Plaintiffs' list of other cost and expenses does not provide for any maintenance costs related to the winter conditions of Canada.  Actual invoices that the Canadian government received show that $79,800 and $76,000 was spent on snow removal for two of the ships on two separate occasions in February 2010.  (CAN0011464; CAN0011905.)  Presuming a third ship would bear similar costs, the total snow removal services for those two instances would have respectively been $119,700 and $114,000.

        *e.*     *Additional CCCM staff* – Although Plaintiffs include the cost of a forensic accountants, they do not include the costs for additional staff they intended to hire, which included an assistant Project Manager, three Food and Beverage staff, and three Housekeeping staff.  (CCCM007636.)

        *f.*     *Letter of Credit by John Sessions* – Plaintiffs' list of costs and expenses does not include the cost Plaintiffs agree to pay for the letter of credit that Plaintiffs received

from John Sessions.  The plain language of the agreement states that Mr. Sessions was to be paid $5,057,500 from the first payment made to the cruise lines in April 2009.  (CCCM015132.)

       g.     *Letter of Credit Fee to Royal Bank of Canada* – Plaintiffs' list of cost and expenses does not include the fee owed to Royal Bank of Canada for arranging the charter project financing.  According to Plaintiffs' October 28, 2008 cash-flow projection, this fee was to be $628,063.  (CCCM012469.)

       h.     *Salary of Phillip Sloane* – Plaintiffs' list of cost and expenses does not include the salary of Phillip Sloane, who was to have been paid $500,000.  (M. Sloane Dep. at 135:15–138:7.)

       Defendants reserve the right to demonstrate at trial that other costs were either underestimated or omitted.

### 4.    Lost Onboard Revenue

       a.     *Lost Onboard Revenue While In Port* – For Plaintiffs' lost onboard revenue while in port, Plaintiffs rely on estimates by Adam Snitzer and Tracey Kelly that range from $9,055,330 to $10,029,528.  These estimates are exaggerated.  Defendants dispute these proposed amounts and will show at trial that the actual onboard revenue that Holland America Line and Carnival Cruise Lines earned from the charters was significantly lower and provide the appropriate benchmark for estimating Plaintiffs' damages.  Holland America Line realized only $454,783 in net onboard revenue for its two ships and that Carnival Cruise Line earned $221,820 in gross onboard revenue for its one ship.  Actual onboard revenue, thus, totaled $676,603.

       b.     *Lost Onboard Revenue During Reposition Cruises* – Plaintiffs' claim for lost on board revenue during repositioning cruises, relies on estimates by Adam Snitzer and Tracey Kelly that range from $413,961 to $640,000.  Defendants dispute that Plaintiffs are

entitled to any lost onboard revenue from repositioning cruises, because no contract for the repositioning cruises was signed prior to the contract termination.

### B.      Duty to Mitigate

Plaintiffs had a duty to mitigate their losses, but failed to do so in three different ways.  First, Plaintiffs failed to obtain currency protection during their attempts to obtain financing when the U.S. dollar weakened against the Canadian dollar despite discussing the very idea in September and October 2008.  (CCCM0003836;  CCCM004231;  CCCM004301; CCCM4691; CCCM011531;  CCCM005190;  CCCM005526;  CCCM005776;  CCCM005802; CCCM005803;  CCM005804;  CCCM005794;  CCCM006323;  CCCM006671;  CCCM006713; CCCM012495.)  Second, after the alleged contract breach, Plaintiffs made no effort to sell or otherwise convey the Royal Caribbean Cruise Line and Holland America Line charters to another party, an idea that Plaintiffs considered in October 2008.  (CCCM006229.)  According to Plaintiffs, they had the skills and contacts within the cruise industry to have located a suitable purchaser for the charters if they had had seriously attempted to do so.  (CCCM009510.)  Third, Plaintiffs failed to pursue any alternative projects that would have lessened their claimed damages.

## VII.    PREJUDGMENT INTEREST

The determination of prejudgment interest in a breach of contract action is a matter of substantive law.  *See, e.g.*, *McKesson Corp. v. Islamic Republic of Iran*, 116 F. Supp. 2d 13, 40 (D.D.C. 2000), citing *Terwilliger v. Terwilliger*, 206 F.3d 240, 249 (2d Cir. 2000) ("The award of prejudgment interest is a substantive issue . . . ").  The substantive law governing this dispute is that of British Columbia, Canada.  (*See* Propositions of Law, above.)  The law defining the element of damages also establishes the rules for determining the proper amount and rate of prejudgment interest.  *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1333 (7th Cir.

1992).  Federal courts award prejudgment interest at the rate proscribed by foreign law when the foreign law governs the dispute.  *See id.*

The rate of prejudgment interest in British Columbia is governed by the Court Order Interest Act, R.S.B.C. 1996, c. 79 ("COIA").  The Crown Liability and Proceeding Act, R.S.B.C. 1996 c. 89 ("CLPA"), which allows for civil proceedings against the Canadian government, specifies that "[a] judgment debt due to or from the government bears interest in the same way as a judgment debt due from one person to another."  CLPA § 12.  The provisions of the COIA relating to prejudgment interest therefore bind the Crown as they would any other person subject to the jurisdiction of the court.

The rate of prejudgment interest is set by the court registrar under the COIA; courts may not depart from that rate unless presented with evidence of special circumstances. *See Battrum v. MacKenzie*, 2010 BCSC 1285 ("there is no evidence that would support an exercise of discretion to award rates higher than those set by the registrar").  Interest is awarded from the date on which the cause of action arose to the date of the order.  COIA § 1; s*ee also Trozzo Holdings v. M.V.S. Construction*, 2002 BCSC 1514.  Since July–December 2008, the interval in which the cause of action in this case arose, the registrar's interest rate has ranged from 0.25% to 2.75%.[3]

The COIA prohibits compounding prejudgment interest.  *See* COIA § 2(c) ("The court must not award interest under section 1 . . . on interest or on costs."); *British Columbia (Forests) v. Teal Cedar Products*, 2013 S.C.C 511 (simple interest "remains the rule in British

---

3.      The Courts of British Columbia, *Court Order Interest Rates*, http://www.courts.gov.bc.ca/supreme_court/about_the_supreme_court/ Court_Order_Interest_Rates.aspx (last visited Oct. 23, 2013).

Columbia," because the legislature has not removed the prohibition on compound interest under the COIA).

Dated:  October 29, 2013

Respectfully submitted,

  /s/ Scott H. Christensen
John M. Townsend, D.C. Bar No. 422674
Scott H. Christensen, D.C. Bar No. 476439
Corinne O. Lane, D.C. Bar No. 992715
HUGHES HUBBARD & REED LLP
1775 I Street, N.W., Suite 600
Washington, D.C. 20006-2401
Telephone:  (202) 721-4600
Facsimile:  (202) 721-4646
Email:  townsend@hugheshubbard.com
Email:  christensen@hugheshubbard.com
Email:  laneco@hugheshubbard.com

*Attorneys for Defendants*

## ATTACHMENT A:  LIST OF EXHIBITS TO BE OFFERED BY DEFENDANTS

1.      **Exhibits Defendants Expect To Offer:**

● Email from Kelly Meikle to Normande Morin dated September 30, 2008 (CAN0007678)

● Email from Tracey Kelly to Phillip Sloane dated October 9, 2008 (CCCM0005764)

● Email and attachment from Tracey Kelly to Normande Morin dated October 9, 2008 (CCCM005766, CCCM005768)

● Email from Normande Morin to Kelly Meikle dated September 19, 2008 (CAN0002981)

● Letter from Normande Morin to Cruise Connections Charters Management 1, LP dated September 26, 2008 (CAN0002101)

● Email and attachment from Tracey Kelly to Normande Morin dated September 28, 2008 (CCCM005093, CCCM005097, CCCM005100)

● Email from Normande Morin to Kelly Meikle dated September 29, 2008 (CAN0001049)

● Email and attachment from Kelly Meikle to Normande Morin dated September 29, 2008 (CAN0001498, CAN0001504)

● Email and attachment from Kelly Meikle to Normande Morin dated September 29, 2008 (CAN0007687, CAN0007688)

● Email and attachment from Kelly Meikle to Normande Morin dated September 30, 2008 (CAN0002031, CAN0002032)

● Letter from Normande Morin to Cruise Connections Charters Management 1, LP dated September 30, 2008 (CAN0001984)

● Email from Normande Morin to Kelly Meikle dated September 30, 2008 (CAN0001055)

● Letter and enclosure from Cruise Connections Charter Management Team to Normande Morin dated September 30, 2008 (CAN0001380, CAN0001382, CAN0001383)

● Normande Morin Handwritten Notes dated September 30, 2008 (CAN0001982)

● Email from Normande Morin to Tracey Kelly dated September 30, 2008 (CAN0001152)

● Email from Tracey Kelly to Normande Morin dated October 1, 2008 (CCCM005430, CCCM005431)

● Email from Tracey Kelly to Normande Morin dated October 1, 2008 (CCCM005433, CCCM005434, CCCM005435)

- Email from Tracey Kelly to Normande Morin dated October 1, 2008 (CCCM005463, CCCM005464, CCCM005485)

- Email from Normande Morin to Michael Day, Mike McAuley, and Kelly Meikle dated October 1, 2008 (CAN0001058)

- Email from Tracey Kelly to Normande Morin dated October 2, 2008 (CAN0001377)

- Letter from Normande Morin to Cruise Connections Charter Management 1, LP dated October 2, 2008 (CAN0001375)

- Email and attachment from Tracey Kelly to Normande Morin dated October 3, 2008 (CCCM005618, CCCM005619)

- Fax from Normande Morin to Michael Day, Kevin Debruyckere, Donna Kaluza and Kelly Meikle (CAN0000274, CAN0000275)

- Email from Normande Morin to Tracey Kelly dated October 3, 2008 (CAN0001357)

- Email from Barry Nickerson to Donna Kaluza; Kelly Meikle, Michael Day, and Normande Morin dated October 3, 2008 (CAN0001358)

- Email from Normande Morin to Tracey Kelly dated October 6, 2008 (CAN0001145)

- Email from Tracey Kelly to Normande Morin dated October 5, 2008 (CAN0001352)

- Email and attachment from Tracey Kelly to Normande Morin dated October 8, 2008 (CAN0001965)

- Email from Tracey Kelly to Phillip Sloane, Mike Sloane, and Susan Edwards dated October 16, 2008 (CCCM006230)

- Email from Normande Morin to Tracey Kelly dated October 16, 2008 (CAN0011640)

- Letter from Normande Morin to Royal Bank of Canada dated October 16, 2008 (CAN0001949)

- Email from Tracey Kelly to Normande Morin dated October 21, 2008 (CAN0001931)

- Letter from Normande Morin to Royal Bank of Canada dated October 24, 2008 (CAN0001898)

- Email from Normande Morin to Tracey Kelly dated October 27, 2008 (CAN0001065)

- Email and attachment from Tracey Kelly to Bud Mercer and Kevin Debruyckere dated October 28, 2008 (CCCM006674, CCCM006675)

- Email from Michael Day to Normande Morin dated October 28, 2008 (CAN0001070)

- Email from Michael Day to Kelly Meikle dated November 6, 2008 (CAN0006597, CAN0006598)

- Fax and enclosure from Susan Edwards to Normande Morin dated October 1, 2008 (CAN0001379, (Exhibit 3 to the Depositions of Tracey Kelly and Susan Edwards))

- Email and attachments from Ben Roth to Normande Morin dated November 27, 2008 (CAN0005077, CAN0005078, CAN0005113)

- Email from Kelly Meikle to Normande Morin dated September 19, 2008 (CAN0007791)

- Email from Kelly Meikle to Normande Morin dated October 1, 2008 (CAN0011759)

- Email from Normande Morin to Tracey Kelly dated October 9, 2008 (CAN0001963)

- Email from Susan Edwards to Michael Sloane, Phillip Sloane, and Tracy Kelly dated October 25, 2008 (CCCM006548)

- Email and attachment from Tracey Kelly to Michael Day dated October 28, 2008 (CCCM012393, CCCM012394)

- Email from Normande Morin to Tracey Kelly dated October 3, 2008 (CCCM013414)

- Letter from William Joyner to Normande Morin dated October 31, 2008 (CAN0001108)

- Letter from Normande Morin to Cruise Connections Charter Management 1, LP dated October 29, 2008 (CAN0001115)

- Letter from Normande Morin to William Joyner dated November 3, 2008 (CAN0001861)

- Letter from William Joyner to Normande Morin dated November 4, 2008 (CAN0001106)

- Letter from Normande Morin to William Joyner dated November 5, 2008 (CAN0001103)

- Letter from William Joyner to Normande Morin dated November 6, 2008 (CAN0001097)

- Letter from Normande Morin to William Joyner dated November 7, 2008 (CAN0001076)

- Letter from William Joyner to Normande Morin dated November 10, 2008 (CAN0001083)

- Letter from Normande Morin to William Joyner dated November 12, 2008 (CAN0001833)

- Letter from William Joyner to Normande Morin dated November 14, 2008 (CAN0001081)

- Letter from Normande Morin to William Joyner dated November 17, 2008 (CAN0001175)

- Donna Kaluza Handwritten Notes dated June 3, 2008 (CAN0020641)

- Donna Kaluza Handwritten Notes dated June 11, 2008 (CAN0020664)

- Donna Kaluza Handwritten Notes dated June 23, 2008 (CAN0020666)

- Email and attachment from Ian Arboleda to Normande Morin, Ben Roth, and Michael Roth dated December 12, 2008 (CAN0005231, CAN0005233)

- Email from Tracey Kelly to Kelly Meikle dated September 15, 2008 (CAN0007859, CAN0007860, CAN0007863)

- Holland America Line Inc. 2010 Net Onboard Revenue Reports for the ms Oosterdam and ms Statendam (CCCM014793)

- Letter and enclosure from Carnival Cruises to Jack Strauch dated December 28, 2010 (CCCM014090)

- Email from Tracey Kelly to Normande Morin dated September 29, 2008 (CCCM005127)

- Email from Tracey Kelly to Normande Morin dated September 29, 2008 (CCCM005189)

- Email from Normande Morin to Mike McAuley and Kelly Meikle dated September 30, 2008 (CAN0010945, CAN0010946)

- Email from Tracey Kelly to Normande Morin dated October 16, 2008 (CAN0001951)

- Whole Vessel Guest Accommodations Purchase and Resale Agreement between Cruise Connections Charter Management 1, LP and Royal Caribbean International dated October 24, 2008 (RCCL00001 (Shaw Dep. Ex. 45))

- Charter Party Agreement between Holland America Line N.V. and Cruise Connections Charter Management 1, LP (Coleman Dep. Ex. 26)

- Charter Party Agreement between Carnival Cruise Lines and the Royal Canadian Mounted Police (CAN0002479 (Morin Dep. Ex. 203))

- Charter Party Agreement between Holland America Line N.V. and the Royal Canadian Mounted Police for the ms Statendam (CAN0002538 (Morin Dep. Ex. 205))

- Charter Party Agreement between Holland America Line N.V. and the Royal Canadian Mounted Police for the ms Oosterdam (CAN0002509 (Morin Dep. Ex. 204))

**2.** **Exhibits Defendants May Offer If The Need Arises:**

- Contract Dated May 22, 2008 between John Sessions, Michael Sloane, Susan Edwards, Tracey Kelly, and Phillip Sloane (CCCM015132)

- June 6, 2008 Meeting Minutes between Cruise Charters Management 1, LP and Royal Canadian Mounted Police (CAN0000198)

- Email from Tracey Kelly to Cindy Brand dated June 25, 2008  (CCCM000526, CCCM000527, CCCM000528)

- Email and attachments from Tracey Kelly to Elena Rodriguez dated June 27, 2008 (CCCM0000604, CCCM000607, CCCM000608)

- Email from Kelly Meikle to Ben Roth, Kevin Debruyckere, and Michael Day dated July 8, 2008 (CAN0003168)

- Email from Susan Edwards to RCMP employees dated July 30, 2008 (CAN0002438)

- Email and attachments from Susan Edwards to Phillip Sloane, Michael Sloane and Tracey Kelly dated July 29, 2008  (CCCM009214, CCCM009215, CCCM009216, and CCCM009219).

- Email from Susan Edwards to Michael Day dated August 28, 2008 (CAN0002144)

- Email from Susan Edwards to Tracey Kelly dated September 3, 2008  (CCCM003730)

- Email from Phillip Sloane to Cindy Brand dated September 3, 2008  (CCCM003836)

- Email from Tracey Kelly to Susan Edwards, Phillip Sloane, and Michael Sloane dated September 4, 2008  (CCCM003981)

- Email from Phillip Sloane to Michael Sloane, Tracey Kelly, and Susan Edwards dated September 11, 2008  (CCCM004231)

- Email from Phillip Sloane to Skip Brown dated September 12, 2008  (CCM004310)

- Email from Phillip Sloane to Cindy Brand dated September 12, 2008  (CCCM004301)

- Email from Phillip Sloane to Tracey Kelly, Susan Edwards, and Michael Sloane dated September 16, 2008  (CCCM004479)

- Email from Phillip Sloane to Cindy Brand dated September 16, 2008  (CCCM004403)

- Email from Susan Edwards to Tracey Kelly dated September 18, 2008  (CCCM004691)

- Email from Normande Morin to Tracey Kelly dated September 30, 2008 (CAN0001154)

- Email from Susan Edwards to Phillip Sloane, Tracey Kelly, and Michael Sloane dated September 30, 2008  (CCCM011531)

- Email from Tracey Kelly to Susan Edwards dated September 30, 2008  (CCCM005190)

- Email from Phillip Sloane to Tracey Kelly dated October 1, 2008  (CCCM005526)

- Letter from Royal Bank of Canada to Cruise Connections Charter Management 1, LP dated October 1, 2008  (CCCM015008)

- Email with attachment from Normande Morin to Tracey Kelly dated October 2, 2008 (CAN0011370, CAN0011372)

- Letter from RBC to CCCM, dated and signed October 6, 2008 (CCCM015008)

- Email from Susan Edwards to Tracey Kelly, Phillip Sloane, and Mike Sloane dated October 9, 2008  (CCCM005776)

- Email and attachment from Phillip Sloane to Tracey Kelly and Susan Edwards dated October 9, 2008  (CCCM005802, CCCM005803)

- Email from Tracey Kelly to Phillip Sloane and Susan Edwards dated October 9, 2008 (CCCM005804)

- Email from Phillip Sloane to Tracey Kelly and Susan Edwards dated October 9, 2008 (CCCM005794)

- Email from Susan Edwards to Michael Sloane, Phillip Sloane, and Tracey Kelly dated October 15, 2008  (CCCM006229)

- Email from Tracey Kelly to Colleen Ladwig dated October 16, 2008  (CCCM011901)

- Email from Tracey Kelly to Normande Morin dated October 17, 2008 (CCCM006289)

- Email from Tracey Kelly to Normande Morin dated October 17, 2008 (CCCM006296)

- Email from Tracey Kelly to Phillip Sloane, Susan Edwards and Michael Sloane dated October 20, 2008  (CCCM006323)

- Email and attachment from Susan Edwards to Michael Day and Normande Morin dated October 23, 2008 (CCCM006501)

- Email from Ruth Brady to Normande Morin dated October 25, 2008 (CAN0015346)

- Email from Tracey Kelly to Normande Morin dated October 27, 2008 (CCCM006561)

- Email from Tracey Kelly to Kelly Meikle dated October 27, 2008 (CCCM006597)

- Email from Tom Siemens to Tracey Kelly and Cindy Brand dated October 28, 2008 (CCCM006671)

- Email from Phillip Sloane to Tracey Kelly, Susan Edwards and Michael Sloane dated October 29, 2008 (CCCM006713)

- Email from Susan Edwards to Phillip Sloane, Tracey Kelly, and Michael Sloane dated October 29, 2008 (CCCM012495)

- Email from Tracey Kelly to Colleen Ladwig dated November 3, 2008 (CCCM012511)

- April 2010 Invoice from Holland America Line to Normande Morin (CAN0005448 – CAN0005449)

- February 2010 Invoice from Holland America Line to Normande Morin (CAN0005484)

- March 2010 Invoice from Holland America Line to Normande Morin (CAN0005492-CAN0005497)

- March 2010 Invoice from Holland America Line to Normande Morin (CAN0005498)

- March 2010 Invoice from Holland America Line to Normande Morin (CAN0005610-CAN0005612)

- March 2010 Invoice from Holland America Line to Normande Morin (CAN0005621)

- March 2010 Invoice from Holland America Line to Normande Morin (CAN0005632-CAN0005662)

- March 2010 Invoice from Holland America Line to Normande Morin (CAN0005663-CAN0005679)

- March 2010 Invoice from Carnival to Ian Arboleda (CAN0005736-CAN0005737)

- July 2009 Invoice from Carnival to Steve Ramsden (CAN0006131)

- February 2010 Invoice from Holland America Line to Normande Morin (CAN0011464)

- March 2010 Invoice from Holland America Line to Normande Morin (CAN0011476-CAN0011479)

- March 2010 Invoice from Holland America Line to Normande Morin (CAN0011480-CAN0011482)

- March 2010 Invoice from Holland America Line to Normande Morin (CAN0011485-CAN0011488)

- March 2010 Invoice from Holland America Line to Normande Morin (CAN0011528-CAN0011538)

- February 2010 Invoice from Holland America Line to Normande Morin (CAN0011540-CAN0011541)

- February 2010 Invoice from Holland America Line to Normande Morin (CAN0011905-CAN0011909)

- March 2010 Invoice from Holland America Line to Normande Morin (CAN0014401-CAN0014404)

- February 2010 Invoice from Holland America Line to Normande Morin (CAN0014543-CAN0014645)

- February 2010 Invoice from Holland America Line to Normande Morin (CAN0015147-CAN0015232)

- Recap of Known Port Costs Associated with the RCMP Charter (CAN0017074)

- Cruise Connections Management Team Charter Positions Descriptions (CCCM007636)

- Email from Phillip Sloane to Tracey Kelly, Susan Edwards, and Michael Sloane, with attached spreadsheet, dated September 18, 2008 (CCCM004699, CCCM004700)

- Email from Phillip Sloane to Tracey Kelly, Susan Edwards, and Michael Sloane, dated September 20, 2008 (CCCM000361)

- Email from Phillip Sloane to Cindy Brand, with attached spreadsheet, dated September 22, 2006 (CCCM004913, CCCM004914)

- Email from Tracey Kelly Phillip Sloane, Michael Sloane, and Susan Edwards, forwarding an email to Cindy Brand, with attached cash flow projection, dated June 25, 2008 (CCCM008562, CCCM008563, CCCM008564, CCCM008566)

- Email from Phillip Sloane to Susan Edwards, Tracey Kelly, and Michael Sloane, dated June 26, 2008 (CCCM000561)

- Email from Phillip Sloane to Cindy Brand, with attached spreadsheet, dated June 27, 2008 (CCCM000602, CCCM000603)

- Email from Tracey Kelly to Susan Edwards, Michael Sloane, and Phillip Sloane, dated June 29, 2008 (CCCM000635)

- Email from Susan Edwards to Phillip Sloane, dated June 30, 2008 (CCCM000694)

- Email from Susan Edwards to Phillip Sloane, Michael Sloane, and Tracey Kelly, with attached spreadsheet, dated July 29, 2008 (CCCM009214, CCCM9215)

- Email from Susan Edwards to Phillip Sloane, Michael Sloane, and Tracey Kelly, with attached spreadsheet, dated July 29, 2008 (CCCM001607, CCCM1608)

- Email from Phillip Sloane to Cindy Brand, with attached spreadsheet, dated July 30, 2008 (CCCM001647, CCCM001648)

- Email from Phillip Sloane to Cindy Brand, with attached spreadsheet, dated August 4, 2008 (CCCM002173, CCCM002174)

- Email from Cindy Brand to Phillip Sloane, with attached spreadsheet, dated August 6, 2008 (CCCM007823, CCCM007825)

- Email from Phillip Sloane to Cindy Brand, with attached spreadsheet, dated August 6, 2008 (CCCM007833, CCCM007835)

- Email from Phillip Sloane to Tracey Kelly and Michael Sloane, dated August 20, 2008 (CCCM010017)

- Email from Tracey Kelly to Phillip Sloane and Michael Sloane, dated August 20, 2008 (CCCM010018)

- Email from Phillip Sloane to Tracey Kelly, Susan Edwards, and Michael Sloane, with attached spreadsheet, dated August 23, 2008 (CCCM003009, CCCM003010)

- Email from Tracey Kelly to Susan Edwards, Phillip Sloane, and Michael Sloane dated September 4, 2008.  (CCCM003981)

- Email from Phillip Sloane to Skip Brown dated September 9, 2008  (CCCM004176)

- Email from Phillip Sloane to Tracey Kelly, Susan Edwards, and Michael Sloane dated September 16, 2008.  (CCCM004479)

- Email from Phillip Sloane to Cindy Brand dated September 16, 2008.  (CCCM004403)

- Email from Phillip Sloane to Cindy Brand, with attached spreadsheet, dated September 22, 2008 (CCCM007833, CCCM007835)

- Email from Cindy Brand to Tracey Kelly, with attached spreadsheet, dated October 28, 2008 (CCCM006662, CCCM006664)

- Transcript of the Deposition of Robert Coleman

- Transcript of the Deposition of Deirdre Dare

- Transcript of the Deposition of Michael Day

- Transcript of the Deposition of Kevin Debruyckere

- Transcript of the Deposition of Susan Edwards

- Transcript of the Deposition of Kelly Meikle

- Transcript of the Deposition of Stacy Shaw

- Transcript of the Deposition of Tom Siemens

- Transcript of the Deposition of Michael Sloane

## ATTACHMENT B:  DEPOSITION DESIGNATIONS

1.      **Robert Coleman**
        12:15 to 14:7
        100:1 to 101:5
        109:19 to 111:12
        113:13 to 117:1
        125:2 to 126:24

2.      **Deirdre Dare**
        6:23 to 9:1
        81:23 to 83:23

3.      **Michael Day**
        14:18 to 17:6
        33:7 to 34:20

4.      **Kevin Debruyckere**
        6:25 to 9:12
        93:13 to 94:3

5.      **Susan Edwards (July 21, 2012)**
        38:22 to 39:18
        40:2 to 40:13
        41:7 to 42:8
        43:25 to 44:13
        48:21 to 49:21
        50:6 to 50:11
        51:12 to 51:13
        53:12 to 54:23
        58:20 to 59:9
        59:18 to 61:11
        62:2 to 64:1
        66:24 to 75:20
        79:12 to 88:1
        93:21 to 95:9
        96:2 to 97:15
        121:21 to 123:2

6.      **Susan Edwards (October 3, 2012)**
        171:17 to 173:22
        176:1 to 176:23
        189:14 to 193:15
        203:9 to 205:24
        219:15 to 221:17

**7.      Kelly Meikle**
35:23 to 37:3
237:14 to 239:23
240:20 to 241:9

**8.      Alexis Puma**
6:20 to 8:25
10:11 to 12:5
21:20 to 22:9
22:14 to 24:8
36:15 to 37:8
38:17 to 39:4
68:18 to 71:9
78:16 to 83:10

**9.      Stacy Shaw**
10:25 to 17:12
60:1 to 61:16
64:1 to 64:15
71:9 to 73:23
125:16 to 127:4
135:10 to 137:25
138:14 to 140:4
143:25 to 146:5

**10.     Tom Siemens**
39:7 to 40:5
44:22 to 46:5
47:20 to 48:24
52:7 to 53:19
56:17 to 58:11
64:20 to 65:7

**11.     Michael Sloane**
13:1 to 14:21
17:11 to 17:18
18:5 to 19:1
21:16 to 23:7
26:16 to 26:24
29:8 to 29:19
32:3 to 32:14
32:23 to 34:13
34:22 to 35:25
36:23 to 38:18
39:1 to 39:23
44:2 to 46:23

47:14 to 48:11
52:1 to 54:7
55:5 to 55:8
58:12 to 58:24
67:2 to 69:4
77:7 to 78:1
83:23 to 84:25
97:9 to 98:24
115:17 to 116:10
128:23 to 138:19
140:8 to 142:20
143:1 to 145:11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 29, 2013, I electronically filed the foregoing with the Clerk of the Court for the District Court for the District of Columbia Circuit by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have served the foregoing document by First Class Mail for delivery within 3 calendar days, to the following non-CM/ECF participants:

> David J. Mazza
> WOMBLE, CARLYLE, SANDRIDGE & RICE, PLLC
> One West Fourth Street
> Winston-Salem, NC 27101

Dated:  October 29, 2013                          s/ Corinne O. Lane
                                                          Corinne O. Lane