UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Cruise Connections Charter Management 1, LP, Cruise Connections Charter Management GP, Inc., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:08-CV-02054-RMC |
| Attorney General of Canada, Royal Canadian mounted Police, and Her Majesty the Queen in Right of Canada, the Government of Canada, Royal Canadian Mounted Police. | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFFS' TRIAL BRIEF REGARDING THE DUTY TO MITIGATE UNDER THE CONTRACT

### I.      Duty to Mitigate Must be Reasonable Under the Circumstances

RCMP suggests that CCCM failed to act in ways that would have diminished, or altogether avoided, the damages at issue because CCCM: 1) did not obtain currency protection; 2) made no effort to sell or otherwise convey the cruise ship charters to another party; and 3) CCCM failed to pursue any alternative projects that would have lessened its damages.  RCMP's argument that CCCM did not attempt to mitigate or avoid the damages at issue is without merit.

CCCM does not disagree that there is a general duty to mitigate or avoid damages. Nonetheless, the opportunity to mitigate or avoid damages must be one that is reasonable under the circumstances. "Mitigation is a doctrine based on fairness and common sense, which seeks to do justice between the parties in the particular circumstances of the case." *Southcott Estates Inc. v. Toronto Catholic District School Board*, [2012] 2 S.C.R. 657 at para. 25 (Can.).  Circumstances,

common sense and fairness all lead to one conclusion here – it was impossible for CCCM to have mitigated any of its claimed damages.

## II.   Mitigation Under the Circumstances was Unreasonable

It is absurd to suggest CCCM could have mitigated its damages as asserted by RCMP. First, both Charter Party Agreements ("CPA") contain provisions specifically stating the chartered vessels were for the "express and exclusive use" of the Integrated Security Unit ("ISU") in Vancouver during the 2010 Olympics. *See* Holland America CPA at p.2, ¶2, Royal Caribbean CPA at p.1, ¶1.   Thus, pursuant to the CPAs with each cruise line, the chartered vessels *could not* be used by any entity other than the ISU *during* the 2010 Olympics in Vancouver, the purpose and time period for which the vessels were chartered.[1]

Second, CCCM was required to obtain financing and to post letters of credit but was prevented from doing so by RCMP.   This Court held that RCMP's conduct "was the proximate cause of the failure of bank financing for CCCM's contract with RCMP."   See Opinion and Memorandum Granting Plaintiff's Motion for Summary Judgment ("Opinion") at p. 207. *See also* Opinion at p. 206 ("The Court concludes that Ms. Morin's anticipatory breach of contract on September 26 and 30 and her demands for a 90% letter of credit, which had already been waived, fundamentally changed the financial underpinnings of the contract….If anyone bore the brunt of responsibility for the financing falling through, it was Ms. Morin."); Opinion at p. 208 ("…by its repudiation of its contract obligations, RCMP made it impossible for CCCM to maintain its financing, and RCMP bears responsibility for that loss.")   Because of RCMP's repudiation and

---

[1] In its Memorandum of Points and Authority in Support of Defendant's Motion for Summary Judgment, RCMP not only recognizes that the vessels were obligated to be for the exclusive use of the ISU during the 2010 Vancouver Olympic games, but RCMP states that the exclusive use provision was for its own benefit.  *See* Memorandum of Points and Authority in Support of Defendant's Motion for Summary Judgment, ECF No. 62-1, p. 21.

breach and CCCM's subsequent inability to secure financing, it was impossible for CCCM to charter the vessels such that CCCM could market the ships to other parties.  Nor could CCCM submit another valid bid in response to RCMP's subsequent Request for Proposal because the second Request for Proposal specifically excluded third party brokers.  *See* Deposition of Normande Morin, p. 14, line 25 – p. 15, line 11.

Third, the uncontroverted testimony is that under the negotiated financing agreement with the Royal Bank of Canada ("RBC"), CCCM was required to obtain exchange rate protection.  Mr. Thomas Siemens, Vice President of Commercial Bank Services of the RBC testified the RBC was requiring CCCM to lock in exchange rate protection and the exchange rate protection would have been locked in, at the latest, by the date the financing was funded. See Deposition of Thomas Siemens, p.29, line 23 – p. 30, line 6.  Again, it RCMP's conduct that caused the financing to fall through, eviscerating CCCM's ability to obtain currency protection.

The reasonableness of CCCM's ability, or lack thereof, to mitigate its damages is even further underscored by the fact that there was only one 2010 Olympics.  To suggest CCCM find another venue hosting an event drawing participants worldwide which would necessitate housing for over five thousand security personnel or other persons, or even some lesser number, or find another similar project is simply irrational.

### III.    Onus is on the Defendant to show CCCM Failed to Reasonably Mitigate Damages

Canadian law clearly establishes it is RCMP who has the onus to show CCCM failed to mitigate its damages.  As stated by the Supreme Court of Canada in *Michaels v. Red Deer College:*

> If it is the defendant's position that the plaintiff could reasonably have avoided some part of the loss claimed, it is for the defendant to carry the burden of that issue, subject to the defendant being content to allow the matter to be disposed of on the trial Judge's assessment of the plaintiff's evidence on avoidance consequences....But the burden which lies on the defendant in proving that the plaintiff has failed his duty of mitigation is by no means a light one, for this is a

case where a party already in breach of contract demands positive action from the one who is often innocent of blame.

*Michaels v. Red Deer College,* [1976] 2 S.C.R. 324 at para. 5-6 (Can).    RCMP has made conclusory statements asserting CCCM failed to mitigate its damages but has failed to set forth reasonable and feasible ways of mitigation.

**IV.    RCMP's Reliance Upon *Southcott Estates* is Misplaced**

RCMP cites *Southcott Estates Inc. v. Toronto Catholic District School Board, supra*, in support of its argument CCCM failed to mitigate damages, analogizing CCCM to the single purpose corporation plaintiff in that case.  The facts of the *Southcott* case are inapposite.  In *Southcott*, the plaintiff was a wholly owned subsidiary of a larger corporation whose business was building homes in the Toronto area and was incorporated without any assets for the sole purpose of developing the land belonging to the defendant school board.  The defendant school board entered into an agreement of purchase and sale with the plaintiff for the sale of some of the defendant's surplus land, most of which was zoned for industrial use and therefore required rezoning to be of use to the plaintiff developer.  Pursuant to the agreement of purchase and sale, the defendant was obligated to use its best efforts acting in good faith to obtain consent from the appropriate governmental entity for rezoning the subject properties.  The defendant did not obtain the rezoning by the closing date and took the position that the agreement for purchase and sale was therefore terminated.  Plaintiff then claimed damages for failure to close and an issue arose as to whether the plaintiff mitigated its loss by subsequent purchases of land.  The Supreme Court of Canada held that the plaintiff developer still had the ability to purchase other properties and that the property at issue was not unique but was similar to other investment properties.  Further, the parent company of the plaintiff subsequently purchased other property, demonstrating that mitigation was possible.

Here, as set forth above, CCCM did not have the ability to market the vessels to another entity for charter and CCCM could not submit a valid bid in response to RCMP's second request for proposal.  Further, the vessels were being chartered for a unique event, the Winter Olympics, which occurs in a different location every four years, and no similar event or venue existed at any time proximate to the 2010 Olympics in Vancouver.  Nor has RCMP shown that mitigation was possible by producing another party or entity that would have chartered the vessels, even if the vessels would have been available for charter, notwithstanding the restrictions as enumerated above.

Respectfully submitted, this the 14th day of November, 2013.

/s/ Jack M. Strauch
Jack M. Strauch
*Admitted Pro Hac Vice*
N. C. State Bar No. 22341
Stanley B. Green
*Admitted Pro Hac Vice*
N. C. State Bar No. 25539
Jessie C. Fontenot, Jr.
*Admitted Pro Hac Vice*
N. C. State Bar No. 40597
Strauch Green & Mistretta, PC
530 North Trade Street, Suite 303
Winston-Salem, NC 27101
Telephone:  (336) 837-1061
Facsimile:  (336) 725-8867
jstrauch@sgandm.com
sgreen@sgandm.com
jfontenot@sgandm.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he is an attorney at law admitted pro hac vice to practice in the United States District Court for the District of Columbia for this case, is attorney for plaintiff, and is a person of such age and discretion as to be competent to serve process.  That on November 14, 2013, he personally delivered and electronically filed a copy of the foregoing **PLAINTIFFS' TRIAL BRIEF REGARDING THE DUTY TO MITIGATE UNDER THE CONTRACT** with the Clerk of Court using the CM/ECF system which will electronically notify counsel hereinafter named:

> John M. Townsend, Esq.
> Scott H. Christensen, Esq.
> Hughes Hubbard & Reed, LLP
> 1775 I Street, NW, Ste. 600
> Washington, DC 20006-2402
> townsend@hugheshubbard.com
> christensen@hugheshubbard.com

> /s/ Jack M. Strauch
> Jack M. Strauch
> *Admitted Pro Hac Vice*
> N. C. State Bar No. 40597
> Strauch Green & Mistretta, PC
> 530 North Trade Street, Suite 303
> Winston-Salem, NC 27101
> Telephone:  (336) 837-1061
> Facsimile:  (336) 725-8867
> jstrauch@sgandm.com

> *Attorneys for Plaintiffs*