UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CRUISE CONNECTIONS CHARTER MANAGEMENT 1, LP and CRUISE CONNECTIONS CHARTER MANAGEMENT GP, INC.,<br><br>                                      Plaintiffs,<br><br>              v.<br><br>ATTORNEY GENERAL OF CANADA, representing the Royal Canadian Mounted Police; ROYAL CANADIAN MOUNTED POLICE, an agency of the Ministry of Public Safety Canada; and HER MAJESTY THE QUEEN IN RIGHT OF CANADA, the Government of Canada, Royal Canadian Mounted Police, representing the Vancouver 2010 Integrated Security Unit,<br><br>                                      Defendants. | Case No. 08-CV-02054-RMC |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' TRIAL BRIEF
REGARDING THE CONVERSION OF THE CONTRACT
FROM CANADIAN DOLLARS TO US DOLLARS**

At the final pre-trial conference, Plaintiffs Cruise Connections Charter Management 1, LP and Cruise Connections Charter Management, GP Inc. (together, "CCCM") submitted a brief to the Court asking it to use September 26, 2008 as the date of breach of the contract the foreign exchange rate for the contract between CCCM and Defendant the Royal Canadian Mounted Police ("RCMP") for purposes of calculating the value of that contract in U.S. dollars. This request should be denied.[1] The proper exchange rate under British Columbia

---

1. CCCM's extensive footnote discussing the Foreign Money Claims Act (Pls.' Br. at 5-6 n.1) is without merit. As CCCM itself notes, the statute is not applicable to this matter (*id*.), and RCMP has never suggested that it was.

law is not the date of anticipatory repudiation of a contract, but the date on which the contract was terminated. In this case that date was either November 13 or 17, 2008.

        1.        The Court has already ruled that "'[t]he Contract must be interpreted and governed, and the relations between the parties determined, by the laws in force in British Columbia.'" (September 9, 2013 Opinion ("Op.") (Docket No. 73), at 51 (quoting the contract language).) Under British Columbia law, in the event of an anticipatory repudiation, the innocent party has only two options: (1) it may accept the repudiation and terminate the contract, or (2) it may affirm the contract.

> In the case of an anticipatory breach, if the innocent party elects to keep the contract in being, no cause of action arises until there is an actual breach. If the innocent party wishes to crystallize his rights before the time for performance and elects to accept an anticipatory repudiation as putting an end to the contract, he must so notify the other party and thereupon his rights to damages arise.

*Homestar Indus. Props. Ltd. v. Philps*, 1992 CarswellBC 283, para. 29 (WL), 72 B.C.L.R. 2d 69 (Can. B.C. C.A.). There would be no need for such an election between two options if, after affirming and performing a contract following an anticipatory repudiation, the innocent party could later change its mind retroactively accept the repudiation. If the innocent party does not clearly and affirmatively communicate acceptance of the repudiation, "the contract and all obligations under it remain intact." *Diamond Robinson Building Ltd. v. Conn*, 2010 CarswellBC 115, para. 122, 2010 BCSC 76 (Can.).

        2.        Plaintiffs cite *Homestar* for the proposition that British Columbia courts have adopted a third option of deferred acceptance of an anticipatory repudiation. (Pls.' Br. at 5.) However, that particular section of the *Homestar* opinion mentions the Supreme Court of South Australia's decision in *Holland v. Wiltshire*, (1953) 90 C.L.R. 409 (Austl.), which had been raised for the first time on appeal. *Homestar* merely describes the Australian court's

decision, but does not adopt the principle of deferred acceptance of anticipatory repudiation that the Australian court appears to have applied. *Homestar*, 1992 CarswellBC 283, paras.18-24 (WL). A search of Canadian case law revealed no Canadian case that has adopted the deferred acceptance of an anticipatory repudiation principal.

3. Instead, British Columbia courts rely on and often quote the proposition that an "'unaccepted repudiation is a thing writ in water and of no value to anybody: it confers no legal rights of any sort or kind.'" *Morrison-Knudsen Co. v. British Columbia Hydro & Power Authority*, 1978 CarswellBC 427, para. 120 (WL) (quoting *Howard v. Pickford Tool Co., Ltd.*, [1951] 1 K.B. 417 (C.A.) at 421 (Eng.)); *Fletton Ltd. v. Peat Marwick Ltd.*, 1988 CarswellBC 218, para. 40 (WL), 27 B.C.L.R. 2d 209 (Can. B.C.C.A.). In this case, the Court has already concluded that "upon Ms. Morin's anticipatory repudiation, CCCM chose to preserve its disagreement and continue with performance . . . ." (Op. at 193.) Such a choice is an affirmation of the contract, not an acceptance of the repudiation.

4. CCCM cites *Inmet Mining Corp. v. Homestake Can. Inc.* 2002 CarswellBC 53 (WL), 2002 BCSC 61 (Can.) to argue that British Columbia law uses the date of anticipatory repudiation as the date of damages (Pls.' Br. at 5), but that case does not support that proposition. CCCM's quotation from *Inmet Mining* is a misleading selection. (*Id*. at 5.) The entire paragraph (with the words quoted by CCCM italicized) demonstrates that court rejects the very concept that CCCM proposes:

> The plaintiff urged me to award it the difference between the Contract price of $178,200,000 and the value of the mine as at December 5, 1997, which was between $66,000,000 and $84,000,000. It does not make sense to me why the plaintiff chose December 5, 1997 as the date of assessment of damages. This is the date that the defendant repudiated the Contract, but the plaintiff never accepted the repudiation. *The law is clear that only where an anticipatory breach, or repudiation, is accepted by the plaintiff*

> *that the date of repudiation will be considered to be the date of breach.* Where the repudiation is not accepted, as in the case at bar, the contract remains alive at least until the time fixed for completion which was December 16, 1997.

*Inmet*, 2002 CarswellBC 53, para. 406. Again, this Court has already found that CCCM continued performance, and thus affirmed the contract, following the events of September 26 that the Court found to be an anticipatory repudiation. (Op. at 193) As a result, the date of anticipatory repudiation — whether September 26 or 30, 2008 — cannot be used as the date for valuing damages under British Columbia law.

       5.      In *Triangle RV Centre Ltd. v. Barge Holdings Ltd.*, 2010 CarswellBC 441, 2010 BCSC 247 (Can. (Can. B.C. Sup. Ct.), the British Columbia Supreme Court cited with approval the holding of a Hong Kong case decided by the Privy Council, *Tai Hing Cotton Mill v. Kamsing Knitting Factory*, [1979] A.C. 91 (H.K. P.C.).[2] In *Tai Hing*, the Privy Council rejected the claim that damages for the breach of contract to sell cotton yarn should be based on the market price as of the date of the repudiation of the contract on July 31, 1973. *Id.* at 105. The Privy Council held that, since the date of termination was "the last day upon which the buyers could have given reasonable notice requiring delivery of the yarn," the proper date for measuring damages should be one month afterwards, on December 28, 1973, when the seller would have provided the yarn had the contract not been rescinded. *Id*. Because the market price of cotton yarn had decreased, the court reduced the damages award accordingly. *Id.* at 106. The same principle applies here: CCCM's damages should be measured from the date the contract with the

---

2.    Prior to the return of Hong Kong to China, the Judicial Committee of the Privy Council (made up of Law Lords from the House of Lords) served as the final court of appeal for the Crown Colony of Hong Kong. English law is considered strongly persuasive authority in the common law of Canada. *See* Gerald L. Gall, *The Canadian Legal System* 433 (5th ed. 2004).

RCMP was terminated in November 2008, not from the earlier date of the anticipatory repudiation that CCCM did not accept.

6. The Court's September 9, 2013 Opinion concludes that "[t]he September 26 and September 30 letters from Ms. Morin constituted an anticipatory repudiation" (Op. at 192) and "upon Ms. Morin's anticipatory repudiation, CCCM chose to preserve its disagreement and continue with performance . . . ." (*id*. at 193). As explained in the recently filed Defendants' Response to Plaintiffs' Motion *In Limine* (Docket No. 82), CCCM, in its summary judgment brief, puts the date of termination of the RCMP contract at November 13, 2008.[3] Ms. Morin declared the contract terminated on November 17, 2008. (Pls. Summ. J. Ex. 50 at CAN0001175.) As in *Tai Hing*, the damages for breach, including the exchange rate component, should be calculated as of the date that the contract with the RCMP terminated, not the date of the anticipatory repudiation of a contract that CCCM affirmed and continued to perform.[4] *See also Ansdell v. Crowther*, 1984 CarswellBC 220, para. 38 (WL), 55 B.C.L.R. 216 (Can. B.C.C.A.) (when a contract is affirmed after a repudiation, and specific performance is not available, the date of the termination of the agreement will govern the estimation of damages) (relying on *Horsnail v. Shute*, 1921 CarswellBC 86, para. 28 (WL), 60 D.L.R. 199 (Can. B.C.C.A.)).

---

3. "Cruise Connections' acceptance of the RCMP's repudiation became effective at 5:00 p.m. on November 13, 2008, at which point the contract ended." (Pls.' Mot. Summ. J. at 43.)

4. In any event, the earliest that the date of damages should be set is mid-October, because CCCM could not have obtained the foreign exchange protection before then, notwithstanding its assertions to the contrary. (*See* Defendants' Response to Plaintiffs' Trial Brief Regarding the Duty to Mitigate Under the Contract, filed herewith.)

7. CCCM attempts to portray its own situation as one of grave injustice[5] by asserting that a later exchange rate gives RCMP a "windfall." (Pls.' Br. at 8.) Determining, as a matter of law, the proper date on which CCCM would have fixed the exchange rate is not an "injustice" to CCCM. The RCMP stands to gain no "windfall" if the Court applies a mid-November exchange rate: any damages that may be awarded will remain the lost profits that CCCM reasonably could have expected to have earned from a contract that cost very little in the way of actual expense. When CCCM voluntarily entered into related contacts in different currencies, it knowingly exposed itself to the risk that its profits from the RCMP contract would vary, even significantly, and potentially disappear. Moreover, the RCMP had no control over the form of currency used in the charter party agreements — agreements to which the RCMP was not a party — or over the movement of the Canadian dollar against the United States dollar. CCCM knowingly assumed and should continue to bear that risk of the currency fluctuation.

8. CCCM agreed that the contract with the RCMP "'must be interpreted and governed, and the relations between the parties determined, by the laws in force in British Columbia.'" (Op. at 51 (quoting the contract language).) Now, just days before trial, CCCM spends pages arguing about the application of U.S. law based on Supreme Court decisions from the 1920s. (Pls.' Br. at 8–11.) Given that these arguments were raised by CCCM only two business days before trial, and that the RCMP has had less than 24 hours to respond, the RCMP

---

5. British Columbia courts will alter the date of damages only if "appropriate in the circumstances" and doing otherwise "would give rise to injustice." *Mavretic v. Bowman*, 1993 CarswellBC 16, para. 7 (WL), 76 B.C.L.R. 2d 61 (Can. B.C.C.A.) (citing *Johnson v. Agnew*, [1980] A.C. 367 (H.L.) (appeal from Eng.) at 400–01); *Greenberg v. Shanghai Real Estate Ltd.*, 2010 CarswellBC 3840, para. 22 (WL), 2010 BCSC 1837 (Can. B.C. Sup. Ct.); *Richter v. Simpson*, 1981 Carswell BC 153 para. 4, 37 B.C.L.R. 325 (Can. B.C. Sup. Ct.).

requests that the Court permit briefing following trial if the Court concludes that there is any basis for applying those cases.

## CONCLUSION

For all the foregoing reasons, the Court should reject CCCM's proposal to set the date of damages at the date of the anticipatory repudiation, September 26, 2008. If the Court wishes RCMP to provide additional briefing on any of the issues raised in this response, RCMP requests permission to do so in post-trial briefing.

Dated: November 15, 2013               Respectfully submitted,

                                                                /s/ Scott H. Christensen
John M. Townsend, D.C. Bar No. 422674
Scott H. Christensen, D.C. Bar No. 476439
Corinne O. Lane, D.C. Bar No. 992715
HUGHES HUBBARD & REED LLP
1775 I Street, N.W., Suite 600
Washington, D.C. 20006-2401
Telephone: (202) 721-4600
Facsimile: (202) 721-4646
Email: townsend@hugheshubbard.com
Email: christensen@hugheshubbard.com
Email: laneco@hugheshubbard.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2013, I electronically filed the foregoing with the Clerk of the Court for the District Court for the District of Columbia Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have served the foregoing document by First Class Mail for delivery within 3 calendar days, to the following non-CM/ECF participants:

>David J. Mazza
>WOMBLE, CARLYLE, SANDRIDGE & RICE, PLLC
>One West Fourth Street
>Winston-Salem, NC 27101

Dated:  November 15, 2013        /s/Corinne O. Lane