UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CRUISE CONNECTIONS CHARTER MANAGEMENT 1, LP and CRUISE CONNECTIONS CHARTER MANAGEMENT GP, INC.,<br><br>                          Plaintiffs,<br><br>v.<br><br>ATTORNEY GENERAL OF CANADA, representing the Royal Canadian Mounted Police; ROYAL CANADIAN MOUNTED POLICE, an agency of the Ministry of Public Safety Canada; and HER MAJESTY THE QUEEN IN RIGHT OF CANADA, the Government of Canada, Royal Canadian Mounted Police, representing the Vancouver 2010 Integrated Security Unit,<br><br>                          Defendants. | Case No. 08-CV-02054-RMC |

**DEFENDANTS' OFFER OF PROOF REGARDING NOVEMBER 15, 2013 ORDERS REGARDING CONTRACT VALUATION AND CONTRIBUTORY FAULT**

        Pursuant to Rule 103(a)(2), Defendants Attorney General of Canada, the Royal Canadian Mounted Police and her Majesty the Queen in Right of Canada (together, the "RCMP") submit this offer of proof of evidence that would have been submitted but for the November 15, 2013 Order on contract valuation (Docket No. 88) and the Minute Order grating Plaintiffs' Motion *In Limine* to Exclude Evidence of Contributory Fault. The RCMP submits that the following evidence would have been submitted at trial, with citations to the documents:

        1.     CCCM knowingly put itself into an exchange rate squeeze. CCCM pursued and signed a contract with the RCMP that was to be paid in Canadian dollars. CCCM then pursued and ultimately signed agreements to pay cruise lines in U.S. dollars.

2. CCCM recognized that it was vulnerable to currency fluctuations no later than September 3, 2008, when its Chief Financial Officer contacted the Royal Bank of Canada to ask, "Can you give me the latest on US vs. Canadian dollar?  Do we need to be concerned?" (P. Sloane Dep. Ex. 78 at CCCM003836.)

3. By September 11, 2008, the CFO notified CCCM's partners in an email entitled "Currency Exchange Risk" that "I need to talk with Stevie ASAP.  I want to get the latest on the strategy Bank America is using regarding currency values between US/CAD currency.  This is VERY important!"  (P. Sloane Dep. Ex. 79 at CCCM004231.)

4. On September 11, 2008, the CFO spoke with the Director of Foreign Exchange at RBC Capital Markets and received *six different options* that CCCM could pursue to hedge its foreign exchange vulnerability.  (P. Sloane Dep. Ex. 80 at CCCM005526–27.)

5. On September 15, 2008, CCCM sent the RCMP a "Clarification to Contract" requesting that the RCMP agree that it already had agreed to pay "all taxes of any kind imposed by Canada, a province or municipality thereof" imposed on "the Contractor or the partners thereof (the 'CCCM Tax Costs') in connection with the Contract," in addition to any taxes assessed against the cruise lines.  (CAN0007861.)

6. On September 22, 2008, the Royal Bank of Canada sent CCCM an "Acknowledgement of Satisfaction of condition precedent," the so-called "Conditions Precedent" document, among five other documents that required completion.  (CCCM004959.)

7. The Royal Bank required as a necessary condition for financing that the RCMP review the charter party agreements and (1) agree that CCCM had performed all of its obligations to the RCMP and (2) affirm that the RCMP was legally obligated to make the first payment to the Royal Bank.  (P. Sloane Dep. Ex. 4 at 136–38.)  Having the RCMP sign the

agreement (referred to by CCCM as the "Conditions Precedent" document), was the lynchpin of CCCM's financing scheme.  (*See* Defs.' SJ Ex. 61.)  The Royal Bank would not sign off on the financing without it.  (P. Sloane Dep. Ex. 4 at 140–41; Defs.' SJ Ex. 61.)

8. On September 29, 2008, still with no exchange rate plan in place, one of the CCCM partners, Susan Edwards, sought advice from a financial advisor, hoping to close a deal with Royal Bank of Canada on Friday, October 3, 2008.  (P. Sloane Dep. Ex. 81 at CCCM005196–97.)  Ms. Edwards claimed that CCCM's CFO "has alzheimer's" and that she was starting to "question[] the decisions that the guy was making (is making)."  (*Id.*)

9. In response, CCCM was reminded by a currency trader and advisor that, "The moment you committed to a fixed US$ payment amount to the Cruise lines without a corresponding US$ payment from the CDN govt you took on the FX [foreign exchange] risk."  (*Id.* at CCCM005194.)

10. CCCM was further advised that, "If you have already committed to pay in US currency and you do not already own that currency (or a forward hedge on it) and the rate fluctuates (as it has) your overall profit from the deal can fall, rise or in lower margin deals be wiped out entirely depending on the direction and size of the rate movements . . . ."  (*Id.* at CCCM005194.)

11. CCCM delayed sending the Conditions Precedent document to the RCMP until October 1, 2008.  (Defs.' SJ. Ex. 32 at CCCM005434; Defs.' SJ Ex. 33 at CCCM005464.)

12. On October 1, 2008, CCCM's CFO advised all of the CCCM partners that, with respect to the foreign exchange rate, "We are totally helpless to do anything until we at least have the 'Conditions Precedent' document signed by the appropriate person at the RCMP."  (P. Sloane Dep. Ex. 80 at CCCM005526.)

13. The Conditions Precedent document required review of documents that also were sent to the RCMP for the first time on October 1, 2008. (Defs.' SJ Exs. 32 & 33.) The Conditions Precedent document also included language that the RCMP had agreed to the September 15, 2008 Clarification to Contract, to which the RCMP in fact had not agreed.

14. On October 9, 2008, CCCM complained to Holland America about "the **more than two week** delay on the part of HAL in providing the Charter Party Agreement . . . ." (Coleman Dep. Ex. 25 (email from Tracey Kelly to Rob Coleman dated October 9, 2008) (emphasis in original).) CCCM complained about **"[w]hat has the current delay by HAL meant to CCCM financially**," namely the changes in the "Canadian/US currency exchange rate" caused **"$528,644.48 additional cost to CCCM because of the delay by HAL**." (*Id*. (emphasis in original).)

15. Normande Morin revised and signed a Conditions Precedent document on October 16, 2008 assuring the Royal Bank of Canada that the RCMP had entered into a contract with CCCM and that the initial payment under that contract "will be payable on or before April 30, 2009 if the conditions of the Contract have been satisfied." (CAN0001949.)

16. On October 20, 2008, Normande Morin sent a revised Conditions Precedent document that the RCMP was prepared to sign. (Defs.' SJ Ex. 53 at CCCM013649.)

17. Based on the charter party agreements provided to the RCMP on October 1, 2008, and CCCM's agreement to revise the charter party agreements on October 21, 2008 (Defs.' SJ Ex. 54), Ms. Morin signed another revised Conditions Precedent document on October 24, 2008 at an in-person meeting with CCCM. (*See* Defs.' SJ Ex. 66.) The Conditions Precedent document stated:

> The Crown acknowledges to RBC that it entered into the above-noted Contract with Cruise Connections Charter Management 1,

      LP.  Further the Crown acknowledges that in accordance with the Contract, the initial payment by the Crown, equivalent to 80% of the Contract and currently valued at $44,278,508.00 plus GST, will be payable on or before April 30, 2009 with provisions that the conditions of the Contract have been satisfied.

      The Crown has reviewed the charter party agreements and they satisfy the service requirements of the Contract between the RCMP and Cruise Connections Charter Management 1, LP.

(*See* Defs.' SJ Ex. 66.)

      18.    CCCM submitted the signed Conditions Precedent document to the Royal Bank of Canada after business hours in Toronto on Friday, October 24, 2008.  CCCM stated that "RBC noted to CCCM that since the Conditions Precedent document was 'changed' they would need to get their Risk Management approval," and CCCM did not expect to hear from the Royal Bank the until the end of the day on Monday, October 27, 2008.  (CCCM006597.)

Dated:  November 18, 2013                        Respectfully submitted,

                                                                  /s/ Scott H. Christensen
                                            John M. Townsend, D.C. Bar No. 422674
                                            Scott H. Christensen, D.C. Bar No. 476439
                                            Corinne O. Lane, D.C. Bar No. 992715
                                            HUGHES HUBBARD & REED LLP
                                            1775 I Street, N.W., Suite 600
                                            Washington, D.C. 20006-2401
                                            Telephone:  (202) 721-4600
                                            Facsimile:  (202) 721-4646
                                            Email:  townsend@hugheshubbard.com
                                            Email:  christensen@hugheshubbard.com
                                            Email:  laneco@hugheshubbard.com

                                            *Attorneys for Defendants*