```
              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA


CRUISE CONNECTIONS CHARTER    :
MANAGEMENT 1, LP, et al,      :
                              :        Docket No. CA 08-2054
              Plaintiff,      :
                              :          Washington, D.C.
                              :     Thursday, October 24, 2013
                              :            2:15 p.m.
ATTORNEY GENERAL OF CANADA,   :
et al.                        :
              Defendants.     :
---------------------------x



           TRANSCRIPT OF TELEPHONE CONFERENCE
       BEFORE THE HONORABLE ROSEMARY M. COLLYER
             UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiff:       JACK M. STRAUCH, Esquire
                         STANLEY B. GREEN, Esquire
                         JESSIE FONTENOT, JR., Esquire
                         Strauch, Fitzgerald & Green, P.C.
                         118 South Cherry Street
                         Winston-Salem, NC 27101


For the Defendants:      SCOTT H. CHRISTENSEN, Esquire
                         CORINNE O. LANE, Esquire
                         JOHN TOWNSEND, Esquire
                         Hughes Hubbard
                         1775 I Street
                         Washington, DC  20006-2401


Court Reporter:          CRYSTAL M. PILGRIM, RPR
                         Official Court Reporter
                         United States District Court
                         District of Columbia
                         333 Constitution Avenue, NW
                         Washington, DC  20001


Proceedings recorded by machine shorthand, transcript produced
by computer-aided transcription.
```

1                    P-R-O-C-E-E-D-I-N-G-S

2           THE DEPUTY CLERK:  Civil action 08-2054, Cruise

3    Connections Charter Management LP, et al versus Attorney

4    General of Canada, et al.

5           For the plaintiffs, Jack Strauch, Stan Green, and Jessie

6    Fontenot.

7           For the defense, Scott Christensen, Corinne Lane, and

8    John Townsend.

9           THE COURT:  Good afternoon everyone.  It's Judge

10   Collyer.

11          MR. STRAUCH:  Good afternoon, Your Honor.

12          MR. CHRISTENSEN:  Good afternoon.

13          THE COURT:  Do I understand that the question -- oh,

14   I should say this.

15          The question before the Court, isn't that nice, the

16   question is whether the declaration of Robert Coleman and the

17   attachments thereto will be admitted in trial.

18          Is that the question?

19          MR. CHRISTENSEN:  Yes, Your Honor, that's the first

20   question.

21          There's also a related question for some documents that

22   I believe were forwarded to Your Honor from Carnival Cruise

23   Lines.

24          THE COURT:  I'm not sure that I have those, but let's

25   do the first one first.

1          MR. CHRISTENSEN:  Okay.

2          THE COURT:  Okay, so who would be propounding the

3    declaration of Mr. Coleman?  Do I assume it would be Cruise

4    Connections?

5          MR. CHRISTENSEN:  It would be defendants, Your Honor,

6    the Government of Canada.

7          The documents attached were documents that plaintiffs

8    subpoenaed from Holland America and produced to defendants, so

9    it is Plaintiffs' Bates numbers on the bottom and defendants

10   secured the declaration from Mr. Coleman that serves to explain

11   some of the abbreviations from the columns and the structure of

12   the documents.

13         THE COURT:  So is there an objection from Cruise

14   Connections to the authenticity or accuracy of the attachments?

15         MR. STRAUCH:  Yes.

16         THE COURT:  Okay.  And is there an objection -- whoa.

17   Ms. White told me not to hit anything and I just did.

18         Are you all still there?

19         MR. CHRISTENSEN:  Yes, Your Honor.

20         THE COURT:  Okay, we had to jerry rig the phone up

21   here to be able to talk to you.

22         Is there an objection from Cruise Connections that there

23   is, in parts of the documents are incorrect, factually wrong?

24         MR. STRAUCH:  The objection, Your Honor, to the

25   declaration itself is --

1          THE COURT:  No, I'm still talking about the

2  documents.  They're separate things and so I'm trying to figure

3  out if you have an objection to the documents which are just

4  suppose to be business records whether they're --

5          MR. STRAUCH:  We do have an objection to the

6  documents and a number of them.

7          THE COURT:  Okay, you don't object to all but some,

8  is that it?

9          MR. STRAUCH:  No, we have a number of objections to

10  the documents.

11          THE COURT:  Okay, so we have a number of objections

12  to the documents themselves.  Is hearsay one of them?

13          MR. STRAUCH:  Hearsay is one of them.

14          THE COURT:  But do you dispute that they're business

15  records?

16          MR. STRAUCH:  Currently we do not have any evidence

17  in any admissible form that they are business records.

18          THE COURT:  Okay.

19          MR. STRAUCH:  Nor do we have any evidence in an

20  admissible form that they are authentic and accurate, nor do we

21  have any information about the documents that were used to

22  compile these documents which are summary documents.

23          THE COURT:  Right.

24          MR. STRAUCH:  And there's plenty of other objections,

25  but that's the summary of the first few.

1          THE COURT:  Okay, and then do you have an objection

2    to Mr. Coleman's declaration without regard for the moment to

3    the documents themselves?

4          MR. STRAUCH:  Yes.

5          THE COURT:  And what's the nature of that objection?

6          MR. STRAUCH:  The declaration is rope hearsay.  It's

7    a declaration obviously authored by RCMP's counsel that we have

8    not had any opportunity to cross-examine the witness on.

9          And there's also questions about the witness' ability to

10   actually give the information stated in the declaration given

11   his deposition testimony.

12         THE COURT:  Well, that's, that luckily is something

13   that I can't compare and so I'll take your argument noting that

14   fact.

15         We just had something fall to the floor.  If we all get

16   up and run out and you wonder what happened to us, it's just

17   because the ceiling in my courtroom caved in or something.

18   It's an old building, right, gentlemen.  All right, we'll keep

19   going and let someone else worry about the ceiling.

20         So are there similar kinds of non-testifying witnesses

21   for whom Cruise Connections would want to be submitting similar

22   kinds of declarations and exhibits?

23         MR. STRAUCH:  No.

24         THE COURT:  Okay, so what is the defendant's response

25   to the top line arguments that were just made against we'll say

1  first, the documents on the basis of authenticity, correctness,

2  completeness, summaries; therefore not business records, et

3  cetera?

4       The last person to speak was Mr. Strauch, right?

5            MR. STRAUCH:  That's correct.

6            THE COURT:  Thank you.  We're just trying to get it

7  straight for the Court Reporter who can't see you.

8       So what is the -- is it Mr. Chistensen who is going to

9  talk about this?

10           MR. CHRISTENSEN:  Yes, Your Honor, this is Scott

11 Chistensen.

12      Your Honor, the attachments I think are quintessential

13 business records under Rule 803, the records of regularly

14 conducted activity that were made at or near the time by

15 someone with knowledge that they were, our understanding is

16 that they were kept in the regular course of business and

17 produced to Cruise Connections in response to their subpoena.

18 These are the sorts of records that the cruise lines regularly

19 keep.

20      And we've proffered the declaration of Mr. Coleman who

21 has been able to explain and testify about these documents and

22 he says under penalty of perjury from his own personal

23 knowledge.  So there is no reason to doubt the authenticity of

24 the documents themselves because --

25           THE COURT:  Well, the argument --

1      MR. CHRISTENSEN:  -- of Rule 801 are satisfied.

2      And with respect to the declaration itself, Mr. Coleman

3  states in the opening part of his declaration that he is able

4  to explain these documents from his personal knowledge and

5  finds the declaration that is required under penalty of

6  perjury.

7      So there is no more reason to doubt the admissibility of

8  either of these documents than there is any other witness'

9  testimony or declaration.  Mr. Strauch can certainly make

10  whatever argument he likes about the relevance of them, the

11  weight they should be given, but that doesn't go to the

12  question of their admissibility and their authenticity.

13      THE COURT:  Hold on and Mr. Strauch, you can argue

14  for yourself and I won't interfere with that, but the argument

15  because I raised the points essentially that you just did,

16  Mr. Chistensen and the response was well, it has got all of the

17  authenticity and all of that, but the real response is these

18  are just summaries, these are not actually the documents as

19  maintained in the normal course of business.  These are

20  summaries of documents that may be maintained in the normal

21  course of business.

22      Did I have that right, Mr. Strauch?

23      MR. STRAUCH:  Yes, Your Honor.

24      THE COURT:  Is it Strauch -- I'm sorry, sir.  I'm

25  interrupting you because I'm being rude and mispronouncing your

1   name.

2        Can you remind me one more time?

3        MR. STRAUCH:  No problem.  It rhymes with cow,

4   Strauch.

5        THE COURT:  Strauch, okay, thank you.

6        Go ahead, sir.

7        MR. STRAUCH:  What I was saying was is that you are

8   correct that to our understanding these are summary documents

9   compiled from lots of other information but there are many

10  objections beyond that.

11       The only that, the easiest of which is that although

12  Mr. Chistensen says that these are quintessential business

13  records maintained in the ordinary course of business by

14  someone with knowledge at or near the time the knowledge was

15  gained and it's the regular business practice to maintain those

16  records, that's 8036 A through C.  There is no such evidence.

17       That is Mr. Christensen's belief.  Mr. Christensen's

18  belief there is no such statement anywhere in this case that

19  that is in fact how these records were made and maintained.  So

20  they don't even go over the business record exception hurdle

21  and that's just the easy one and then on below that are many

22  other objections.

23       THE COURT:  Before we have a response from

24  Mr. Chistensen, why don't you tell me what all of the

25  objections are.

1       One is they're not business records.  Okay, got that.

2       Another is you don't have sufficient, sufficiently

3  satisfactory statement that they're authentic?

4           MR. STRAUCH:  Right.

5           THE COURT:  Okay.

6           MR. STRAUCH:  Then the third deals with the nature of

7  these documents and what they purport to say.

8       And as the Court will unquestionably recall given all of

9  the work the Court has put into the Cruise Connections --

10  strike that -- after RCMP breached the contract, RCMP entered

11  contracts with the cruise lines, with the cruise lines

12  themselves to put the ships into the harbors for the Olympics.

13          THE COURT:  Right.

14          MR. STRAUCH:  What these documents purport to

15  summarize are the on board sales that were made during those

16  entirely different charters.  We have a grand total of zero

17  evidence about what was done on those ships to make those

18  sales.  What information was used to compile these records,

19  what type of activity that the cruise lines engaged in to try

20  to make sales.  What many of the entries in the documents mean.

21      And Mr. Chistensen apparently is intent on putting those

22  in front of the Court and have everyone speculate about all of

23  those things in an effort to try to convince the Court that the

24  Court could, absent any evidence about what was done with

25  respect to on board sales by the cruise lines themselves, that

1  should somehow be informative of what my client would have done

2  had the RCMP not terminated its contract.  And I can go into

3  that into much greater detail, but that is a summary of that

4  argument.

5        THE COURT:  Okay, so let me make sure that I

6  appreciate where you're driving to.  And the point that you

7  want to make is that your clients had great plans to advertise

8  and entice all of the passengers to engage in significant on

9  board purchasing in order to improve and increase the sales on

10  board and that that couldn't have happened here if these are

11  the correct numbers?

12        MR. STRAUCH:  The first part is right.  We did have

13  such plans.

14        The second part is not right or it's approaching it.

15        But the second part is that absent any evidence, and

16  there is none, about what the cruise lines themselves did to

17  try to pursue on board revenue.

18        Absent any information about costs that were charged for

19  different items on the ship versus the cost that the cruise

20  lines incurred, absent any evidence about the qualifications

21  and expertise of the people who were trying to promote programs

22  for on board sales if there was any attempt to do that, these

23  records become meaningless in terms of what the RCMP wants to

24  offer them for which is try to show what we could have done.

25        You know, if you're going to try to offer something to

1  say, if you are going to try to offer something to show well,

2  the cruise lines only did X dollars.  Cruise Connections

3  contend it could have done Y dollars.  You've got to introduce

4  evidence to show how the two, the efforts of the cruise lines

5  then Cruise Connections compared.  How the incentives of each

6  in order to pursue on board revenue compared.  There's a major

7  difference in incentives between the two.

8          THE COURT:  Well, let me ask you this.  Hold on one

9  second.  I don't mean to interrupt prematurely.  But I'm trying

10 to figure out how we can actually move ahead since this is a

11 bench trial.

12         If you already know, and you know whether or not

13 Mr. Chistensen knows, if you already know that there are

14 significant distinctions between for instance, the incentives

15 that would have been available for people running these ships

16 to increase on board sales, if you, your client had chartered

17 them as opposed to what actually happened, then the argument

18 becomes A, whether or not the information from Mr. Coleman is

19 relevant, material and admissible I guess on your original

20 arguments, but basically also goes to weight.

21         Okay, so this is what they did, and we don't know how

22 they primed it and set it up, but since it's Canada that's

23 making the argument that this is what the Court should use for

24 comparison purposes, if you come forward and say okay, we would

25 have done this and this and this and this and we had these

1  incentives which weren't present at the time of the numbers

2  that are reflected in Canada's documents, well then, Canada

3  hasn't actually shown a whole lot.  I mean, I don't have to

4  worry about confusing a jury.  I can understand the arguments

5  you just made and you're arguing about the weight of this

6  document, these documents.

7      Now I understand there's also arguments about

8  admissibility and are they business records.  I'm not

9  overlooking that, but we don't want the effort to define

10 damages to turn into a major discovery problem which is sort of

11 where you're headed.

12     And so the argument that they just don't have enough

13 evidence to support these documents means well, they're not

14 worth a whole lot but I might take them anyway, they're just

15 not worth a whole lot.  I mean, you know.

16     MR. STRAUCH:  I think it goes more than just weight,

17 Your Honor, and the reason is as the proponent of this evidence

18 RCMP has the obligation to come forward with evidence showing

19 that what was done by the cruise lines was substantially

20 similar to what my folks intended to do with respect to OBR.

21 There isn't any evidence in the record concerning that.

22     THE COURT:  That's absolutely, you are absolutely

23 correct that if your, if you come forward with evidence as to

24 what your clients would have done to increase on board sales

25 and the defense is just these documents without more because

1  all we have is the declaration of Mr. Coleman and the documents

2  that he's presented, then Canada hasn't made out much of a case

3  for decreasing the amount of money that you say you, your

4  client would have made.  They have got some evidence, but it's

5  not worth a whole lot under those circumstances.

6       But I don't, again, that doesn't mean I shouldn't just

7  say this is a bench trial, we'll take it, we'll take all of

8  your evidence and then we'll figure out what's worth what.

9       I'm cutting to the chase.  If we had a jury I would be

10 much more saying of course you're right, you've got to produce

11 a witness, Canada, you can't just rely on this declaration and

12 this pile of documents.  But we don't have a jury and all of

13 the arguments that you make which I don't disagree with

14 particularly, all of the arguments that you make you can make

15 to me.

16      Now Mr. Chistensen now knows well, well geese, maybe I

17 should do something in addition to this.  Well, that's his

18 choice.  But we don't have much time and I really don't want to

19 have to continue the trial.  The case is not new.

20      MR. STRAUCH:  This is Jack Strauch, Your Honor.

21      With respect to the declarations of Robert Coleman, I

22 want to make sure that the Court understands.  This is not a

23 declaration that we have had any cross examination on.

24      It was authored well after his deposition and I can't

25 imagine any circumstance where an out of court declaration that

1  doesn't fit with any hearsay rule ought to be coming in even in

2  a bench trial.

3           THE COURT:  Well, I appreciate that point.  It's an

4  out of court declaration proposed for purposes of the truth of

5  the declaration and it hasn't been subject to cross

6  examination.

7       Now again, in a, according to the Rules of Evidence that

8  makes his declaration hearsay, even though it's sworn, it's

9  still hearsay because the statements that he makes are hearsay.

10      Are they not, Mr. Chistensen?

11           MR. CHRISTENSEN:  As much as any such declaration,

12  Your Honor, which are such portions commonly attached to things

13  like motions for summary judgment.

14           THE COURT:  They are.

15           MR. CHRISTENSEN:  You're correct, Your Honor.  I

16  can't dispute that.

17           THE COURT:  They are indeed attached to motions for

18  summary judgment.

19           MR. CHRISTENSEN:  Your Honor, the declaration makes

20  it clear that you should serve true and correct copies of what

21  Mr. Coleman describes them to be and most all of which are true

22  and correct copies of documents that came from, that are

23  contemporaneous with the events that are described here.

24      Even just turning to the exhibits you'll see the dates

25  in February, January, 2010, March of 2010, so I think it's

1  inaccurate to describe all of these documents as some sort of

2  post hoc summaries that were created by Holland of America.

3        These are documents that, that plaintiff subpoenaed the

4  documents from Holland of America and from Carnival Cruise

5  Lines.  Simply because plaintiffs don't like what they say, it

6  doesn't make them any less relevant.

7        THE COURT:  Well, the issue isn't, the issue is

8  whether they can be found to have any weight and be of any

9  assistance to a fact finder in this proceeding with me being

10 the fact finder.

11       And what we have is an affidavit which as you say, a

12 declaration could be used at summary judgment except we're past

13 summary judgment, but yes, it could be accepted at summary

14 judgment, a declaration with documents that say what, say that

15 this is what they're showing.  Whether they keep their records

16 this way or not, the argument is that this isn't exactly the

17 way they keep their records.  They've just made summaries of

18 their records.  I don't know.

19       But I think that, I mean, my basic point is that

20 Mr. Strauch, Strauch makes legitimate objections but under the

21 circumstances, I don't know that it's worth arguing about.

22 Take this in and what is it worth?  It's not, it's worth

23 exactly what it says and no more.

24       It hasn't been cross examined.  It is not going to be

25 cross examined.  I guess Mr. Coleman is not coming.  I don't

1  know what else to tell you.  I don't see that it's worth a

2  whole lot.  It is what it is.

3      Tell me about the Carnival documents.  This is documents

4  from Carnival Corporation to Mr. Strauch dated December 28,

5  2010.

6      MR. STRAUCH:  Yes.  Documents were produced to us

7  basically only produced to us by plaintiffs as responsive to

8  defendant's request for production number 16.

9      THE COURT:  Okay.  And the objection to these

10  documents is the same?

11      MR. STRAUCH:  It is the same, Your Honor, but it

12  actually goes a little bit deeper.

13      Let me first point out the Court doesn't need me to say

14  that because a document gets subpoenaed by a party it

15  necessarily becomes admissible.

16      THE COURT:  Or it is certainly not that party's

17  document.  But anyway, go ahead, keep going.

18      MR. STRAUCH:  It's all right.

19      And the request 16 wasn't told to you what request 16

20  was.  Request 16 was simply please provide all documents which

21  you obtained pursuant to subpoena.  So we had an obligation to

22  provide that any how.  It's not like a document that we went

23  out and generated, we created, anything like that.

24      But again, with respect to the Carnival documents there

25  is no affidavit, no declaration, nothing authenticating them.

1   Nothing making them a business record.  And the rule is really

2   clear.

3        I mean, 8036 was revised a couple of years ago to tell

4   somebody precisely what they need to do in order to make a

5   document admissible as a business record.  That hasn't been

6   done despite the fact that the documents have been in RCMP's

7   hands for something like two years.  It is the same thing with

8   respect to the other documents, and that is just to get over

9   the hearsay level.

10        But here that hasn't been done.  There is no affidavit,

11  nothing saying that the documents are authentic.  There's been

12  no witness cross examined about them.  We don't know what all

13  of the information on there means and I submit that the Court

14  won't either, and without testimony that RCMP could have gotten

15  over all of these many years or to try to explain what data

16  underlies these documents, what was done by Carnival to go

17  after OBR and how that compares to what my folks would have

18  done had the contract not been terminated.

19        But again, I don't think that they have carried any

20  burden of showing as a proponent of the evidence that A, what

21  these documents mean and how they can be substantially similar

22  to what we were going to do so that they could be informative

23  to the Court and therefore relevant.

24        THE COURT:  My problem in looking at the Carnival,

25  and I follow your argument, but looking at the Carnival

1   documents they seem to have a terrific number of zeros, zero,

2   zero, zero, zero, zeros until you get to about page 12.  Then

3   we finally begin to see a few dollar bills and then you get to

4   page, I have page 12 of 20 and then I have page 9 of 20 and

5   then I have page 2 of 20.  Did I -- is this the order?  This is

6   the order we got it in because it's all stapled.

7          Anyway, I have to say I can't figure out where the

8   beginning and the end of this document is.  Is it, am I correct

9   if I'm reading this right, that it says that on board sales for

10  the Carnival ship totaled $12,223?

11          MR. STRAUCH:  This is Jack Strauch, Your Honor.

12          I'm not sure where the Court is looking.  I have looked

13  at these documents and I have not been able to figure out what

14  the net on board sales were.

15          I have spent some time trying to figure out the

16  documents and I do not understand them.  So I don't think I can

17  answer your question.

18          MR. CHRISTENSEN:  I think the answer to your

19  question, Your Honor, is the page Bates labeled CCCM014097.

20          THE COURT:  Hold on, 097, okay.

21          MR. CHRISTENSEN:  The top of the page it says

22  Carnival Cruise Lines daily vessel revenues report and then a

23  grand total at the bottom of $221,820.

24          THE COURT:  For the day?

25          MR. CHRISTENSEN:  If you see under the, really the

1  second column over under the heading actual and then gross

2  sales.

3          THE COURT:  Right, but that's for the day.

4          MR. CHRISTENSEN:  I think this is the grand total for

5  all of the days.

6          THE COURT:  Then I go back to -- well, it's

7  inconsistent with other things that are in this pile, but I

8  don't know what they mean or where they came from or what they

9  are.

10     This may be a better example of the Carnival documents

11  than the Holland America documents which at least do have an

12  affidavit saying this is what this is and this is what this is.

13          MR. CHRISTENSEN:  The real use of the Carnival

14  documents, Your Honor, for the Government of Canada is for

15  cross examination.

16          THE COURT:  Of whom?

17          MR. CHRISTENSEN:  Of the plaintiffs' witness, expert

18  witness because these documents were never shown to the

19  plaintiffs' expert.

20          THE COURT:  Who is going to explain what they mean so

21  that on cross examination we know you're reading them right?

22          MR. CHRISTENSEN:  We would hope that the expert would

23  be able to explain them.  If he can't, that's also telling.

24          THE COURT:  Why is that telling if he's never seen

25  them?

1    MR. CHRISTENSEN:  Because the expert worked for

2  Carnival and should be able to read them.

3    THE COURT:  So you want to have these admitted so you

4  can use them to see if the Cruise Connections' expert is smart

5  enough to explain to us what the Carnival documents say and if

6  he is, that's okay because they don't say much, they only go to

7  a hundred thousand dollars and if he can't, then we say well,

8  he's not very smart.

9    Is that it?

10    MR. CHRISTENSEN:  I will go with the way you

11  articulated it, Your Honor, yes.

12    THE COURT:  Well, gentlemen, I have to say that I

13  didn't understand what this was about until oh, maybe late this

14  morning when I got Mr. Coleman's declaration which we had

15  received earlier but couldn't find and then the attachment and

16  so now I understand what the argument is.

17    So I'm going to go back and read the rule myself, all

18  right.  And then we'll either call you back or set up another

19  telephone call or I'll issue just a ruling, all right.

20    MR. STRAUCH:  Thank you, Your Honor.

21    MR. CHRISTENSEN:  I note that the reason we were

22  bothering you with this now in advance of motions in limine is

23  because Your Honor had invited us in the event we had problems

24  scheduling depositions in advance of trial to flag that for

25  Your Honor and so if anything like depositions are necessary,

1  we wanted to bring this to your attention and get a resolution

2  as soon as possible --

3          THE COURT:  Absolutely.

4          MR. CHRISTENSEN:  -- so it would have minimal effect

5  on the schedule.

6          THE COURT:  Absolutely and I appreciate the call.

7      Because hearing from you I now understand both how you

8  want to use them and for why and then I can go back and read

9  the rule as Mr. Strauch urges me and then decide what to do or

10 call you back.

11     But I will decide quickly so if you need to depose

12 either -- I doubt it would be Loly Deschamps, but somebody for

13 Carnival and/or somebody for Holland America, you can move

14 ahead to the purpose.

15     Thanks a lot guys, good luck.

16         MR. STRAUCH:  Thank you, Your Honor.

17         MR. CHRISTENSEN:  Thank you.

18         (Proceedings concluded at 2:50 p.m.)

19                        -oOo-

20

21

22

23

24

25

1                          CERTIFICATE

2        I certify that the foregoing is a true and correct

3   transcript, to the best of my ability, of the above pages, of

4   the stenographic notes provided to me by the United States

5   District Court, of the proceedings taken on the date and time

6   previously stated in the above matter.

7        I further certify that I am neither counsel for, related

8   to, nor employed by any of the parties to the action in which

9   this hearing was taken, and further that I am not financially

10  nor otherwise interested in the outcome of the action.

11

12  _____        _____

    /s/Crystal M. Pilgrim, RPR            Date: November 18, 2013
13

14

15

16

17

18

19

20

21

22

23

24

25

$
Case 1:08-cv-02054-RMC Document 34 Filed 12/30/13 Page 23 of 29

$12,223 [1]   18/10
$221,820 [1]   18/23

**-**

--------------------------

1/8
-oOo [1]   21/19

**/**

/s/Crystal [1]   22/12

**0**

08-2054 [2]   1/4 2/2
097 [1]   18/20

**1**

118 [1]   1/16
12 [2]   18/2 18/4
16 [4]   16/8 16/19 16/19
 16/20
1775 [1]   1/19
18 [1]   22/12

**2**

20 [3]   18/4 18/4 18/5
20001 [1]   1/23
20006-2401 [1]   1/20
2010 [3]   14/25 14/25 16/5
2013 [2]   1/5 22/12
2054 [2]   1/4 2/2
24 [1]   1/5
2401 [1]   1/20
27101 [1]   1/16
28 [1]   16/4
2:15 [1]   1/6
2:50 [1]   21/18

**3**

333 [1]   1/23

**8**

801 [1]   7/1
803 [1]   6/13
8036 [2]   8/16 17/3

**A**

abbreviations [1]   3/11
ability [2]   5/9 22/3
able [6]   3/21 6/21 7/3
 18/13 19/23 20/2
about [21]   4/1 4/21 5/9
 5/19 6/9 6/21 7/10 9/17
 9/22 9/24 10/16 10/18
 10/20 12/4 12/5 12/7
 15/21 16/3 17/12 18/2
 20/13
above [2]   22/3 22/6
absent [4]   9/24 10/15
 10/18 10/20
absolutely [4]   12/22
 12/22 21/3 21/6
accepted [1]   15/13
according [1]   14/7
accuracy [1]   3/14
accurate [1]   4/20
action [3]   2/2 22/8 22/10
activity [2]   6/14 9/19
actual [1]   19/1
actually [6]   5/10 7/18
 11/10 11/17 12/3 16/12

addition [1]   12/17
admissibility [5]   7/7
 7/12 12/8
admissible [5]   4/17 4/20
 11/19 16/15 17/5
admitted [2]   2/17 20/3
advance [2]   20/22 20/24
advertise [1]   10/7
affidavit [4]   15/11 16/25
 17/10 19/12
after [3]   9/10 13/24
 17/17
afternoon [3]   2/9 2/11
 2/12
again [4]   13/6 14/7 16/24
 17/19
against [1]   5/25
ago [1]   17/3
ahead [4]   8/6 11/10 16/17
 21/14
aided [1]   1/25
al [4]   1/3 1/7 2/3 2/4
all [24]
already [2]   11/12 11/13
also [5]   2/21 5/9 11/20
 12/7 19/23
although [1]   8/11
am [3]   18/8 22/7 22/9
America [5]   3/8 15/2 15/4
 19/11 21/13
amount [1]   13/3
and/or [1]   21/13
another [2]   9/2 20/18
answer [2]   18/17 18/18
any [22]   4/16 4/17 4/19
 4/21 5/8 7/8 9/24 10/15
 10/18 10/20 10/22 12/21
 13/23 13/25 14/1 14/11
 15/6 15/8 15/8 16/22
 17/19 22/8
anything [3]   3/17 16/23
 20/25
anyway [3]   12/14 16/17
 18/7
anywhere [1]   8/18
apparently [1]   9/21
APPEARANCES [1]   1/13
appreciate [3]   10/6 14/3
 21/6
approaching [1]   10/14
are [39]
argue [1]   7/13
arguing [2]   12/5 15/21
argument [11]   5/13 6/25
 7/10 7/14 10/4 11/17
 11/23 12/12 15/16 17/25
 20/16
arguments [6]   5/25 11/20
 12/4 12/7 13/13 13/14
articulated [1]   20/11
as [15]   7/18 9/8 11/17
 12/17 12/23 14/11 14/11
 15/1 15/11 16/7 17/5
 17/20 21/2 21/2 21/9
ask [1]   11/8
assistance [1]   15/9
assume [1]   3/3
attached [3]   3/7 14/12
 14/17
attachment [1]   20/15
attachments [3]   2/17 3/14

6/12
attempt [1]   10/22
attention [1]   21/1
ATTORNEY [2]   1/6 2/3
authentic [3]   4/20 9/3
 17/11
authenticating [1]   16/25
authenticity [5]   3/14 6/1
 6/23 7/12 7/17
authored [2]   5/7 13/24
available [1]   11/15
Avenue [1]   1/23

**B**

back [5]   19/6 20/17 20/18
 21/8 21/10
basic [1]   15/19
basically [2]   11/20 16/7
basis [1]   6/1
Bates [2]   3/9 18/19
be [24]
because [14]   5/17 6/24
 7/15 7/25 12/25 14/9 15/5
 16/14 18/6 19/18 20/1
 20/6 20/23 21/7
become [1]   10/23
becomes [2]   11/18 16/15
been [10]   6/21 11/15 14/5
 15/24 17/5 17/6 17/10
 17/11 17/18 18/13
before [3]   1/10 2/15 8/23
begin [1]   18/3
beginning [1]   18/8
being [2]   7/25 15/9
belief [2]   8/17 8/18
believe [1]   2/22
below [1]   8/21
bench [3]   11/11 13/7 14/2
best [1]   22/3
better [1]   19/10
between [2]   11/7 11/14
beyond [1]   8/10
bills [1]   18/3
bit [1]   16/12
board [11]   9/15 9/25 10/9
 10/10 10/17 10/22 11/6
 11/16 12/24 18/9 18/14
both [1]   21/7
bothering [1]   20/22
bottom [2]   3/9 18/23
breached [1]   9/10
bring [1]   21/1
building [1]   5/18
burden [1]   17/20
business [16]   4/4 4/14
 4/17 6/2 6/13 6/16 7/19
 7/21 8/12 8/13 8/15 8/20
 9/1 12/8 17/1 17/5

**C**

CA [1]   1/4
call [4]   20/18 20/19 21/6
 21/10
came [2]   14/22 19/8
can [13]   7/9 7/13 8/2
 10/2 11/10 12/4 13/14
 15/8 17/21 18/16 20/4
 21/8 21/13
can't [8]   5/13 6/7 13/11
 13/24 14/16 18/7 19/23
 20/7

**C**

CANADA [8]   1/6  2/4  3/6  11/22  12/2  13/2  13/11  19/14
Canada's [1]   12/2
Carnival [15]   2/22  15/4  16/3  16/4  16/24  17/16  17/24  17/25  18/10  18/22  19/10  19/13  20/2  20/5  21/13
carried [1]   17/19
case [3]   8/18  13/2  13/19
caved [1]   5/17
CCCM014097 [1]   18/19
ceiling [2]   5/17  5/19
certainly [2]   7/9  16/16
CERTIFICATE [1]   22/1
certify [2]   22/2  22/7
cetera [1]   6/3
charged [1]   10/18
CHARTER [2]   1/3  2/3
chartered [1]   11/16
charters [1]   9/16
chase [1]   13/9
Cherry [1]   1/16
Chistensen [9]   6/8  6/11  7/16  8/12  8/24  9/21  11/13  13/16  14/10
choice [1]   13/18
CHRISTENSEN [2]   1/17  2/7
Christensen's [2]   8/17  8/17
circumstance [1]   13/25
circumstances [2]   13/5  15/21
Civil [1]   2/2
clear [2]   14/20  17/2
client [3]   10/1  11/16  13/4
clients [2]   10/7  12/24
Coleman [10]   2/16  3/3  3/10  6/20  7/2  11/18  13/1  13/21  14/21  15/25
Coleman's [2]   5/2  20/14
COLLYER [2]   1/10  2/10
COLUMBIA [2]   1/1  1/22
column [1]   19/1
columns [1]   3/11
come [3]   11/24  12/18  12/23
coming [2]   14/1  15/25
commonly [1]   14/12
compare [1]   5/13
compared [2]   11/5  11/6
compares [1]   17/17
comparison [1]   11/24
compile [2]   4/22  9/18
compiled [1]   8/9
completeness [1]   6/2
computer [1]   1/25
computer-aided [1]   1/25
concerning [1]   12/21
concluded [1]   21/18
conducted [1]   6/14
CONFERENCE [1]   1/10
confusing [1]   12/4
CONNECTIONS [10]   1/3  2/3  3/4  3/14  3/22  5/21  6/17  9/9  11/2  11/5
Connections' [1]   20/4

Constitution [1]   1/23
contemporaneous [1]   14/23
contend [1]   11/3
continue [1]   13/19
contract [3]   9/10  10/2  17/18
contracts [1]   9/11
convince [1]   9/23
copies [2]   14/20  14/22
CORINNE [2]   1/18  2/7
Corporation [1]   16/4
correct [9]   6/5  8/8  10/11  12/23  14/15  14/20  14/22  18/8  22/2
correctness [1]   6/1
cost [1]   10/19
costs [1]   10/18
could [7]   9/24  10/24  11/3  15/12  15/13  17/14  17/22
couldn't [2]   10/10  20/15
counsel [2]   5/7  22/7
couple [1]   17/3
course [5]   6/16  7/19  7/21  8/13  13/10
court [20]   1/1  1/21  1/21  1/22  2/15  6/7  9/8  9/9  9/22  9/23  9/24  11/23  13/22  13/25  14/4  16/13  17/13  17/23  18/12  22/5
courtroom [1]   5/17
cow [1]   8/3
created [2]   15/2  16/23
cross [8]   5/8  13/23  14/5  15/24  15/25  17/12  19/15  19/21
cross-examine [1]   5/8
cruise [24]
CRYSTAL [2]   1/21  22/12
Currently [1]   4/16
cutting [1]   13/9

**D**

D.C [1]   1/5
daily [1]   18/22
damages [1]   12/10
data [1]   17/15
date [2]   22/5  22/12
dated [1]   16/4
dates [1]   14/24
day [2]   18/24  19/3
days [1]   19/5
DC [2]   1/20  1/23
deals [1]   9/6
December [1]   16/4
decide [2]   21/9  21/11
declaration [26]
declarations [2]   5/22  13/21
decreasing [1]   13/3
deeper [1]   16/12
defendant's [2]   5/24  16/8
defendants [5]   1/7  1/17  3/5  3/8  3/9
defense [2]   2/7  12/25
define [1]   12/9
depose [1]   21/11
deposition [2]   5/11  13/24
depositions [2]   20/24  20/25
Deschamps [1]   21/12
describe [1]   15/1

described [1]   14/23
describes [1]   14/21
despite [1]   17/6
detail [1]   10/3
did [8]   3/17  7/15  7/22  10/12  10/16  11/2  11/21  18/5
didn't [1]   20/13
difference [1]   11/7
different [2]   9/16  10/19
disagree [1]   13/13
discovery [1]   12/10
dispute [2]   4/14  14/16
distinctions [1]   11/14
DISTRICT [6]   1/1  1/1  1/11  1/22  1/22  22/5
do [17]   2/13  2/25  3/3  4/5  4/14  4/16  4/19  4/20  5/1  10/22  12/20  13/17  17/4  17/22  18/16  19/11  21/9
Docket [1]   1/4
document [6]   12/6  16/14  16/17  16/22  17/5  18/8
documents [55]
doesn't [5]   7/11  13/6  14/1  15/6  16/13
dollar [1]   18/3
dollars [3]   11/2  11/3  20/7
don't [24]
done [12]   9/17  9/24  10/1  10/24  11/3  11/25  12/19  12/24  17/6  17/10  17/16  17/18
doubt [3]   6/23  7/7  21/12
driving [1]   10/6
during [1]   9/15

**E**

each [1]   11/5
earlier [1]   20/15
easiest [1]   8/11
easy [1]   8/21
effect [1]   21/4
effort [2]   9/23  12/9
efforts [1]   11/4
either [4]   7/8  17/14  20/18  21/12
else [2]   5/19  16/1
employed [1]   22/8
end [1]   18/8
engage [1]   10/8
engaged [1]   9/19
enough [2]   12/12  20/5
entered [1]   9/10
entice [1]   10/8
entirely [1]   9/16
entries [1]   9/20
Esquire [6]   1/14  1/14  1/15  1/17  1/18  1/18
essentially [1]   7/15
et [5]   1/3  1/7  2/3  2/4  6/2
even [4]   8/20  14/1  14/8  14/24
event [1]   20/23
events [1]   14/23
everyone [2]   2/9  9/22
evidence [17]   4/16  4/19  8/16  9/17  9/24  10/15  10/20  11/4  12/13  12/17

evidence... [7]   12/18
  12/21 12/23 13/4 13/8
  14/7 17/20
exactly [2]   15/16 15/23
examination [4]   13/23
  14/6 19/15 19/21
examine [1]   5/8
examined [3]   15/24 15/25
  17/12
example [1]   19/10
except [1]   15/12
exception [1]   8/20
exhibits [2]   5/22 14/24
expert [5]   19/17 19/19
  19/22 20/1 20/4
expertise [1]   10/21
explain [7]   3/10 6/21 7/4
  17/15 19/20 19/23 20/5

F

fact [5]   5/14 8/19 15/9
  15/10 17/6
factually [1]   3/23
fall [1]   5/15
February [1]   14/25
few [2]   4/25 18/3
figure [6]   4/2 11/10 13/8
  18/7 18/13 18/15
finally [1]   18/3
financially [1]   22/9
find [1]   20/15
finder [2]   15/9 15/10
finds [1]   7/5
first [7]   2/19 2/25 2/25
  4/25 6/1 10/12 16/13
fit [1]   14/1
Fitzgerald [1]   1/15
flag [1]   20/24
floor [1]   5/15
folks [2]   12/20 17/17
follow [1]   17/25
FONTENOT [2]   1/15 2/6
foregoing [1]   22/2
form [2]   4/17 4/20
forward [3]   11/24 12/18
  12/23
forwarded [1]   2/22
found [1]   15/8
front [1]   9/22
further [2]   22/7 22/9

G

gained [1]   8/15
geese [1]   13/16
GENERAL [2]   1/6 2/4
generated [1]   16/23
gentlemen [2]   5/18 20/12
get [6]   5/15 6/6 17/8
  18/2 18/3 21/1
gets [1]   16/14
give [1]   5/10
given [3]   5/10 7/11 9/8
go [11]   7/11 8/6 8/20
  10/2 16/17 17/16 19/6
  20/6 20/10 20/17 21/8
goes [3]   11/20 12/16
  16/12
going [9]   5/19 6/8 10/25
  11/1 15/24 16/17 17/22

19/20, 20/17
good [4]   2/9 2/11 2/12
  21/15
got [7]   7/16 9/1 11/3
  13/4 13/10 18/6 20/14
gotten [1]   17/14
Government [2]   3/6 19/14
grand [3]   9/16 18/23 19/4
great [1]   10/7
greater [1]   10/3
Green [3]   1/14 1/15 2/5
gross [1]   19/1
guess [2]   11/19 15/25
guys [1]   21/15

H

had [14]   3/20 5/8 5/15
  10/2 10/7 11/16 11/25
  13/9 13/23 16/21 17/18
  20/14 20/23 20/23
hands [1]   17/7
happened [3]   5/16 10/10
  11/17
harbors [1]   9/12
has [4]   6/21 7/16 9/9
  12/18
hasn't [6]   12/3 13/2 14/5
  15/24 17/5 17/10
have [50]
he [7]   6/22 7/3 7/10 14/9
  19/23 20/6 20/7
he's [3]   13/2 19/24 20/8
headed [1]   12/11
heading [1]   19/1
hearing [2]   21/7 22/9
hearsay [8]   4/12 4/13 5/6
  14/1 14/8 14/9 14/9 17/9
here [4]   3/21 10/10 14/23
  17/10
his [7]   5/11 6/22 7/3 7/4
  13/17 13/24 14/8
hit [1]   3/17
hoc [1]   15/2
Hold [3]   7/13 11/8 18/20
Holland [5]   3/8 15/2 15/4
  19/11 21/13
Honor [23]
HONORABLE [1]   1/10
hope [1]   19/22
how [9]   8/19 11/4 11/5
  11/10 11/21 16/22 17/17
  17/21 21/7
Hubbard [1]   1/19
Hughes [1]   1/19
hundred [1]   20/7
hurdle [1]   8/20

I

I'll [2]   5/13 20/19
I'm [12]   2/24 4/1 4/2
  7/24 7/24 7/25 11/9 12/8
  13/9 18/9 18/12 20/17
imagine [1]   13/25
improve [1]   10/9
inaccurate [1]   15/1
incentives [4]   11/5 11/7
  11/14 12/1
inconsistent [1]   19/7
incorrect [1]   3/23
increase [3]   10/9 11/16
  12/24

incurred [1]   10/20
indeed [1]   14/17
information [7]   4/21 5/10
  8/9 9/18 10/18 11/18
  17/13
informative [2]   10/1
  17/22
instance [1]   11/14
intended [1]   12/20
intent [1]   9/21
interested [1]   22/10
interfere [1]   7/14
interrupt [1]   11/9
interrupting [1]   7/25
introduce [1]   11/3
invited [1]   20/23
is [94]
isn't [4]   2/15 12/21 15/7
  15/16
issue [3]   15/7 15/7 20/19
it [39]
it's [20]   2/9 5/6 5/16
  5/18 8/15 10/14 11/22
  13/4 14/3 14/8 14/8 14/25
  15/21 15/22 15/22 16/1
  16/18 16/22 18/6 19/6
items [1]   10/19
its [1]   10/2
itself [2]   3/25 7/2

J

JACK [4]   1/14 2/5 13/20
  18/11
January [1]   14/25
jerry [1]   3/20
JESSIE [2]   1/15 2/5
JOHN [2]   1/18 2/8
JR [1]   1/15
JUDGE [2]   1/11 2/9
judgment [5]   14/13 14/18
  15/12 15/13 15/14
jury [3]   12/4 13/9 13/12
just [20]   3/17 4/3 5/15
  5/16 5/25 6/6 7/15 7/18
  8/21 12/5 12/12 12/14
  12/16 12/25 13/6 13/11
  14/24 15/17 17/8 20/19

K

keep [5]   5/18 6/19 15/15
  15/17 16/17
kept [1]   6/16
kinds [2]   5/20 5/22
know [12]   10/25 11/12
  11/12 11/13 11/21 12/15
  15/18 15/21 16/1 17/12
  19/8 19/21
knowledge [5]   6/15 6/23
  7/4 8/14 8/14
knows [2]   11/13 13/16

L

labeled [1]   18/19
LANE [2]   1/18 2/7
last [1]   6/4
late [1]   20/13
least [1]   19/11
legitimate [1]   15/20
less [1]   15/6
let [4]   5/19 10/5 11/8
  16/13

## L

let's [1]   2/24
level [1]   17/9
like [6]   14/13 15/5 16/22
  16/23 17/7 20/25
likes [1]   7/10
limine [1]   20/22
line [1]   5/25
lines [13]   2/23 6/18 9/11
  9/11 9/19 9/25 10/16
  10/20 11/2 11/4 12/19
  15/5 18/22
little [1]   16/12
Loly [1]   21/12
looked [1]   18/12
looking [3]   17/24 17/25
  18/12
lot [6]   12/3 12/14 12/15
  13/5 16/2 21/15
lots [1]   8/9
LP [2]   1/3 2/3
luck [1]   21/15
luckily [1]   5/12

## M

machine [1]   1/24
made [8]   5/25 6/14 8/19
  9/15 12/5 13/2 13/4 15/17
maintain [1]   8/15
maintained [4]   7/19 7/20
  8/13 8/19
major [2]   11/6 12/10
make [11]   7/9 9/17 9/20
  10/5 10/7 13/13 13/14
  13/14 13/22 15/6 17/4
makes [4]   14/8 14/9 14/19
  15/20
making [2]   11/23 17/1
MANAGEMENT [2]   1/3 2/3
many [4]   8/9 8/21 9/20
  17/15
March [1]   14/25
material [1]   11/19
matter [1]   22/6
may [2]   7/20 19/10
maybe [2]   13/16 20/13
me [12]   3/17 8/2 8/24
  10/5 11/8 13/15 15/9 16/3
  16/13 16/13 21/9 22/4
mean [10]   9/20 11/9 12/3
  12/15 13/6 15/19 17/3
  17/21 19/8 19/20
meaningless [1]   10/23
means [2]   12/13 17/13
might [1]   12/14
minimal [1]   21/4
mispronouncing [1]   7/25
moment [1]   5/2
money [1]   13/3
more [6]   7/7 8/2 12/16
  12/25 13/10 15/23
morning [1]   20/14
most [1]   14/21
motions [3]   14/13 14/17
  20/22
move [2]   11/10 21/13
Mr [1]   15/25
Mr. [26]
Mr. Chistensen [8]   6/8
  7/16 8/12 8/24 9/21 11/13

Mr. Chrestensen's [2]
  8/17 8/17
Mr. Coleman [7]   3/3 3/10
  6/20 7/2 11/18 13/1 14/21
Mr. Coleman's [2]   5/2
  20/14
Mr. Strauch [7]   6/4 7/9
  7/13 7/22 15/20 16/4 21/9
Ms [1]   3/17
much [6]   10/3 13/2 13/10
  13/18 14/11 20/6
my [7]   5/17 10/1 12/20
  15/19 17/17 17/24 22/3
myself [1]   20/17

## N

name [1]   8/1
nature [2]   5/5 9/6
NC [1]   1/16
near [2]   6/14 8/14
necessarily [1]   16/15
necessary [1]   20/25
need [3]   16/13 17/4 21/11
neither [1]   22/7
net [1]   18/14
never [2]   19/18 19/24
new [1]   13/19
nice [1]   2/15
no [14]   1/4 4/1 4/9 5/23
  6/23 7/7 8/3 8/16 8/18
  15/23 16/25 16/25 17/10
  17/12
non [1]   5/20
non-testifying [1]   5/20
none [1]   10/16
normal [2]   7/19 7/20
not [30]
note [1]   20/21
notes [1]   22/4
nothing [3]   16/25 17/1
  17/11
noting [1]   5/13
November [1]   22/12
now [7]   12/7 13/16 13/16
  14/7 20/16 20/22 21/7
number [5]   4/6 4/9 4/11
  16/8 18/1
numbers [3]   3/9 10/11
  12/1
NW [1]   1/23

## O

object [1]   4/7
objection [9]   3/13 3/16
  3/22 3/24 4/3 4/5 5/1 5/5
  16/9
objections [7]   4/9 4/11
  4/24 8/10 8/22 8/25 15/20
obligation [2]   12/18
  16/21
OBR [2]   12/20 17/17
obtained [1]   16/21
obviously [1]   5/7
October [1]   1/5
offer [3]   10/24 10/25
  11/1
official [1]   1/21
oh [2]   2/13 20/13
okay [18]   3/1 3/2 3/16
  3/20 4/7 4/11 4/18 5/1

old [1]   5/18
Olympics [1]   9/12
one [7]   2/25 4/12 4/13
  8/2 8/21 9/1 11/8
only [4]   8/11 11/2 16/7
  20/6
oOo [1]   21/19
opening [1]   7/3
opportunity [1]   5/8
opposed [1]   11/17
order [5]   10/9 11/6 17/4
  18/5 18/6
ordinary [1]   8/13
original [1]   11/19
other [6]   4/24 7/8 8/9
  8/22 17/8 19/7
otherwise [1]   22/10
ought [1]   14/1
our [2]   6/15 8/8
out [12]   4/3 5/16 11/10
  13/2 13/8 13/25 14/4
  16/13 16/23 18/7 18/13
  18/15
outcome [1]   22/10
over [4]   8/20 17/8 17/15
  19/1
overlooking [1]   12/9
own [1]   6/22

## P

P-R-O-C-E-E-D-I-N-G-S [1]
  2/1
P.C [1]   1/15
p.m [2]   1/6 21/18
page [7]   18/2 18/4 18/4
  18/4 18/5 18/19 18/21
pages [1]   22/3
part [4]   7/3 10/12 10/14
  10/15
particularly [1]   13/14
parties [1]   22/8
parts [1]   3/23
party [1]   16/14
party's [1]   16/16
passengers [1]   10/8
past [1]   15/12
penalty [2]   6/22 7/5
people [2]   10/21 11/15
perjury [2]   6/22 7/6
person [1]   6/4
personal [2]   6/22 7/4
phone [1]   3/20
pile [2]   13/12 19/7
PILGRIM [2]   1/21 22/12
plaintiff [3]   1/4 1/14
  15/3
plaintiffs [4]   2/5 3/7
  15/5 16/7
plaintiffs' [3]   3/9 19/17
  19/19
plans [2]   10/7 10/13
please [1]   16/20
plenty [1]   4/24
point [4]   10/6 14/3 15/19
  16/13
points [1]   7/15
portions [1]   14/12
possible [1]   21/2

**P**

post [1]   15/2
practice [1]   8/15
precisely [1]   17/4
prematurely [1]   11/9
present [1]   12/1
presented [1]   13/2
previously [1]   22/6
primed [1]   11/22
problem [3]   8/3 12/10
  17/24
problems [1]   20/23
proceeding [1]   15/9
proceedings [3]   1/24
  21/18 22/5
produce [1]   13/10
produced [5]   1/24 3/8
  6/17 16/6 16/7
production [1]   16/8
proffered [1]   6/20
programs [1]   10/21
promote [1]   10/21
proponent [2]   12/17 17/20
proposed [1]   14/4
propounding [1]   3/2
provide [2]   16/20 16/22
provided [1]   22/4
purchasing [1]   10/9
purport [2]   9/7 9/14
purpose [1]   21/14
purposes [2]   11/24 14/4
pursuant [1]   16/21
pursue [2]   10/17 11/6
put [2]   9/9 9/12
putting [1]   9/21

**Q**

qualifications [1]   10/20
question [9]   2/13 2/15
  2/16 2/18 2/20 2/21 7/12
  18/17 18/19
questions [1]   5/9
quickly [1]   21/11
quintessential [2]   6/12
  8/12

**R**

raised [1]   7/15
RCMP [6]   9/10 9/10 10/2
  10/23 12/18 17/14
RCMP's [2]   5/7 17/6
read [3]   20/2 20/17 21/8
reading [2]   18/9 19/21
real [2]   7/17 19/13
really [3]   13/18 17/1
  18/25
reason [4]   6/23 7/7 12/17
  20/21
recall [1]   9/8
received [1]   20/15
record [4]   8/20 12/21
  17/1 17/5
recorded [1]   1/24
records [17]   4/4 4/15
  4/17 6/2 6/13 6/13 6/18
  8/13 8/16 8/19 9/1 9/18
  10/23 12/8 15/15 15/17
  15/18
reflected [1]   12/2
regard [1]   5/2

regular [2]   6/16 8/15
regulation [2]   6/15 6/16
related [2]   2/21 22/7
relevance [1]   7/10
relevant [3]   11/19 15/6
  17/23
rely [1]   13/11
remind [1]   8/2
report [1]   18/22
Reporter [3]   1/21 1/21
  6/7
request [4]   16/8 16/19
  16/19 16/20
required [1]   7/5
resolution [1]   21/1
respect [6]   7/2 9/25
  12/20 13/21 16/24 17/8
response [5]   5/24 6/17
  7/16 7/17 8/23
responsive [1]   16/7
revenue [2]   10/17 11/6
revenues [1]   18/22
revised [1]   17/3
rhymes [1]   8/3
rig [1]   3/20
right [16]   4/23 5/18 5/18
  6/4 7/22 9/4 9/13 10/12
  10/14 13/10 16/18 18/9
  19/3 19/21 20/18 20/19
Robert [2]   2/16 13/21
rope [1]   5/6
ROSEMARY [1]   1/10
RPR [2]   1/21 22/12
rude [1]   7/25
rule [6]   6/13 7/1 14/1
  17/1 20/17 21/9
Rules [1]   14/7
ruling [1]   20/19
run [1]   5/16
running [1]   11/15

**S**

Salem [1]   1/16
sales [11]   9/15 9/18 9/20
  9/25 10/9 10/22 11/16
  12/24 18/9 18/14 19/2
same [3]   16/10 16/11 17/7
satisfactory [1]   9/3
satisfied [1]   7/1
say [17]   2/14 5/25 9/7
  11/1 11/24 13/3 13/7 15/5
  15/11 15/14 15/14 16/13
  18/7 20/5 20/6 20/7 20/12
saying [4]   8/7 13/10
  17/11 19/12
says [5]   6/22 8/12 15/23
  18/9 18/21
schedule [1]   21/5
scheduling [1]   20/24
SCOTT [3]   1/17 2/7 6/10
second [4]   10/14 10/15
  11/9 19/1
secured [1]   3/10
see [5]   6/7 14/24 16/1
  18/3 18/25 20/4
seem [1]   18/1
seen [1]   19/24
separate [1]   4/2
serve [1]   14/20
serves [1]   3/10
set [2]   11/22 20/18

ship [2]   10/19 18/10
ships [3]   9/12 9/17 11/15
shorthand [1]   1/24
should [7]   2/14 7/11 10/1
  11/23 13/17 14/20 20/2
shouldn't [1]   13/6
show [3]   10/24 11/1 11/4
showing [3]   12/18 15/15
  17/20
shown [2]   12/3 19/18
significant [2]   10/8
  11/14
similar [4]   5/20 5/21
  12/20 17/21
simply [2]   15/5 16/20
since [2]   11/10 11/22
sir [2]   7/24 8/6
smart [2]   20/4 20/8
so [27]
some [6]   2/21 3/11 4/7
  13/4 15/1 18/15
somebody [3]   17/4 21/12
  21/13
somehow [1]   10/1
someone [3]   5/19 6/15
  8/14
something [7]   5/12 5/15
  5/17 10/25 11/1 13/17
  17/7
soon [1]   21/2
sorry [1]   7/24
sort [2]   12/10 15/1
sorts [1]   6/18
South [1]   1/16
speak [1]   6/4
speculate [1]   9/22
spent [1]   18/15
Stan [1]   2/5
STANLEY [1]   1/14
stapled [1]   18/6
stated [2]   5/10 22/6
statement [2]   8/18 9/3
statements [1]   14/9
states [5]   1/1 1/11 1/22
  7/3 22/4
stenographic [1]   22/4
still [3]   3/18 4/1 14/9
straight [1]   6/7
STRAUCH [16]   1/14 1/15
  2/5 6/4 7/9 7/13 7/22
  7/24 8/4 8/5 13/20 15/20
  15/20 16/4 18/11 21/9
Street [2]   1/16 1/19
strike [1]   9/10
structure [1]   3/11
subject [1]   14/5
submit [1]   17/13
submitting [1]   5/21
subpoena [2]   6/17 16/21
subpoenaed [3]   3/8 15/3
  16/14
substantially [2]   12/19
  17/21
such [5]   8/16 8/18 10/13
  14/11 14/12
sufficient [1]   9/2
sufficiently [1]   9/2
summaries [5]   6/2 7/18
  7/20 15/2 15/17
summarize [1]   9/15
summary [9]   4/22 4/25 8/8

summary... [6]   10/3 14/13
 14/18 15/12 15/13 15/13
support [1]   12/13
suppose [1]   4/4
sure [4]   2/24 10/5 13/22
 18/12
sworn [1]   14/8

**T**

take [5]   5/13 12/14 13/7
 13/7 15/22
taken [2]   22/5 22/9
talk [2]   3/21 6/9
talking [1]   4/1
telephone [2]   1/10 20/19
tell [4]   8/24 16/1 16/3
 17/3
telling [2]   19/23 19/24
terminated [2]   10/2 17/18
terms [1]   10/23
terrific [1]   18/1
testify [1]   6/21
testifying [1]   5/20
testimony [3]   5/11 7/9
 17/14
than [3]   7/8 12/16 19/11
thank [5]   6/6 8/5 20/20
 21/16 21/17
Thanks [1]   21/15
that [124]
that's [12]   2/19 4/25
 5/12 6/5 8/16 8/21 11/22
 12/22 13/17 19/3 19/23
 20/6
their [6]   6/17 7/12 7/12
 15/15 15/17 15/18
them [19]   4/6 4/12 4/13
 7/10 10/24 11/17 12/14
 14/21 15/6 16/25 17/1
 17/12 18/16 19/21 19/23
 19/25 20/2 20/4 21/8
themselves [6]   4/12 5/3
 6/24 9/12 9/25 10/16
then [20]   5/1 8/21 9/6
 11/5 11/17 12/2 13/2 13/8
 18/2 18/3 18/4 18/5 18/22
 19/1 19/6 20/7 20/15
 20/18 21/8 21/9
there [19]   3/13 3/16 3/18
 3/22 3/22 5/20 6/23 7/7
 7/8 8/9 8/16 8/18 10/16
 10/22 11/13 12/21 16/24
 17/10 17/13
there's [6]   2/21 4/24 5/9
 11/6 12/7 17/11
therefore [2]   6/2 17/23
thereto [1]   2/17
these [30]
they [30]
they're [8]   4/2 4/4 4/14
 9/1 9/3 12/13 12/14 15/15
They've [1]   15/17
thing [1]   17/7
things [4]   4/2 9/23 14/12
 19/7
think [8]   6/12 12/16
 14/25 15/19 17/19 18/16
 18/18 19/4
third [1]   9/6

this [43]
those [8]   2/24 8/15 9/15
 9/17 9/17 9/21 9/23 13/5
though [1]   14/8
thousand [1]   20/7
through [1]   8/16
Thursday [1]   1/5
time [7]   6/14 8/2 8/14
 12/1 13/18 18/15 22/5
told [2]   3/17 16/19
top [2]   5/25 18/21
total [3]   9/16 18/23 19/4
totaled [1]   18/10
TOWNSEND [2]   1/18 18/7
transcript [3]   1/10 1/24
 22/3
transcription [1]   1/25
trial [6]   2/17 11/11 13/7
 13/19 14/2 20/24
true [3]   14/20 14/21 22/2
truth [1]   14/4
try [7]   9/19 9/23 10/17
 10/24 10/25 11/1 17/15
trying [5]   4/2 6/6 10/21
 11/9 18/15
turn [1]   12/10
turning [1]   14/24
two [3]   11/4 11/7 17/7
type [1]   9/19

**U**

under [7]   6/13 6/22 7/5
 13/5 15/20 18/25 19/1
underlies [1]   17/16
understand [7]   2/13 12/4
 12/7 18/16 20/13 20/16
 21/7
understanding [2]   6/15
 8/8
understands [1]   13/22
UNITED [4]   1/1 1/11 1/22
 22/4
unquestionably [1]   9/8
until [2]   18/2 20/13
up [4]   3/20 5/16 11/22
 20/18
urges [1]   21/9
us [5]   5/16 16/6 16/7
 20/5 20/23
use [4]   11/23 19/13 20/4
 21/8
used [3]   4/21 9/18 15/12

**V**

versus [2]   2/3 10/19
very [1]   20/8
vessel [1]   18/22

**W**

want [7]   5/21 10/7 12/9
 13/18 13/22 20/3 21/8
wanted [1]   21/1
wants [1]   10/23
was [18]   6/4 7/16 8/7 8/7
 8/14 9/17 9/18 9/24 10/22
 12/19 12/19 13/24 16/20
 16/20 17/3 17/16 22/9
Washington [3]   1/5 1/20
 1/23
wasn't [1]   16/19

way [3]   15/16 15/17 20/10
we [39]
we'll [6]   5/18 5/25 13/7
 13/7 13/8 20/18
we're [2]   6/6 15/12
we've [1]   6/20
weight [5]   7/11 11/20
 12/5 12/16 15/8
well [16]   5/12 6/25 7/16
 11/1 11/8 12/2 12/13
 13/16 13/16 13/17 13/24
 14/3 15/7 19/6 20/7 20/12
went [1]   16/22
were [17]   2/22 3/7 4/21
 5/25 6/14 6/15 6/16 8/19
 9/15 10/18 10/21 15/2
 16/6 17/22 18/14 19/18
 20/21
weren't [1]   12/1
what [50]
what's [2]   5/5 13/8
whatever [1]   7/10
when [1]   20/14
where [6]   10/6 12/11
 13/25 18/7 18/12 19/8
whether [6]   2/16 4/4
 11/12 11/18 15/8 15/15
which [14]   4/3 4/22 8/11
 10/24 12/1 12/10 13/13
 14/12 14/21 15/11 16/20
 19/11 20/14 22/8
White [1]   3/17
who [6]   3/2 6/7 6/8 6/20
 10/21 19/20
whoa [1]   3/16
whole [5]   12/3 12/14
 12/15 13/5 16/2
whom [2]   5/21 19/16
why [3]   8/24 19/24 21/8
will [4]   2/17 9/8 20/10
 21/11
Winston [1]   1/16
Winston-Salem [1]   1/16
without [3]   5/2 12/25
 17/14
witness [5]   5/8 13/11
 17/12 19/17 19/18
witness' [2]   5/9 7/8
witnesses [1]   5/20
won't [2]   7/14 17/14
wonder [1]   5/16
work [1]   9/9
worked [1]   20/1
worry [2]   5/19 12/4
worth [8]   12/14 12/15
 13/5 13/8 15/21 15/22
 15/22 16/1
would [15]   3/2 3/3 3/5
 5/21 10/1 11/15 11/24
 12/24 13/4 13/9 17/17
 19/22 19/22 21/4 21/12
wrong [1]   3/23

**Y**

years [3]   17/3 17/7 17/15
yes [9]   2/19 3/15 3/19
 5/4 6/10 7/23 15/13 16/6
 20/11
you [57]
you'll [1]   14/24
you're [7]   10/6 10/25

**Y**

you're... [5]   12/5 12/11
 13/10 14/15 19/21
you've [2]   11/3 13/10
your [36]
yourself [1]   7/14

**Z**

zero [5]   9/16 18/1 18/2
 18/2 18/2
zeros [2]   18/1 18/2